1 | SEYFARTH SHAW LLP
Sheryl L. Skibbe (SBN 199441)
2 | sskibbe@seyfarth.com
2029 Century Park East, Suite 3500
3 | Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
4 | Facsimile:   (310) 201-5219

5 | SEYFARTH SHAW LLP
Brian P. Long (SBN 232746)
6 | bplong@seyfarth.com
John H. Dolan (SBN 244668)
7 | jdolan@seyfarth.com
333 South Hope Street, Suite 3900
8 | Los Angeles, California 90071-1406
Telephone:  (213) 270-9600
9 | Facsimile:   (213) 270-9601

10 | Attorneys for Defendants
RANDSTAD US, LP
11 | (erroneously sued as "RANDSTAD US")

12 |                    UNITED STATES DISTRICT COURT

13 |                   CENTRAL DISTRICT OF CALIFORNIA

14 | JUSTIN WRIGHT; JEAN-LAURENT          Case No.  SACV13-00815 CJC (AGRx)
POULIOT; and VINCENT UBERTI; on
15 | behalf of themselves and all others       **DEFENDANT RANDSTAD US,
similarly situated,                        LP'S NOTICE OF REMOVAL**
16 |
                 Plaintiffs,              *[Filed concurrently with Civil Cover
17 |                                       Sheet; Certification of Interested
          v.                              Parties; Disclosure Statement;
18 |                                       Declaration of Calabro; and
RANDSTAD US; ROBERT HALF            Declaration of Troupe]*
19 | INTERNATIONAL; PROMONTORY
FINANCIAL GROUP; and DOES 1          Date Action Filed:  April 19, 2013
20 | through 100, inclusive,

21 |                 Defendants.

22 |

23 |

24 |

25 |

26 |

27 |

28 |
                                                    NOTICE OF REMOVAL
                                        CASE NO. _____

15654925v.4

1  **TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL**

2  **DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS**

3  **OF RECORD:**

4        **PLEASE TAKE NOTICE** that Defendant Randstad US, LP (erroneously sued

5  as "Randstad US") ("Randstad") hereby removes the above-referenced action from the

6  Superior Court of the State of California for the County of Orange, to the United States

7  District Court for the Central District of California, asserting original jurisdiction

8  under 28 U.S.C. §§ 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), and

9  (c), and removal jurisdiction under 28 U.S.C. §§1441(a) and 1446, and states that

10  removal is proper for the following reasons.[1]

11  <div align="center">**BACKGROUND**</div>

12      1.    Plaintiffs Justin Wright, Jean-Laurent Pouliot, and Vincent Uberti

13  (collectively, "Plaintiffs") filed this action against Randstad, Robert Half International

14  ("RHI"), and Promontory Financial Group ("Promontory") on April 19, 2013, in the

15  Superior Court for the County of Orange, case entitled: <u>Justin Wright; Jean-Laurent</u>

16  <u>Pouliot; and Vincent Uberti; on behalf of themselves and all others similarly situated,</u>

17  <u>Plaintiffs, v. Randstad US, Robert Half International, Promontory Financial Group;</u>

18  <u>and Does 1 through 100 inclusive, Defendants,</u> Orange County Superior Court Case

19  No. 30-2013-00644746-CU-OE-CXC (the "Complaint").  On April 24, 2013, Plaintiff

20  served the Summons and Complaint on Defendant's counsel with a notice of

21  acknowledgement.  A true and correct copy of the Summons and Complaint, Civil

22  Cover Sheet, ADR packet and Notice of Service of Process in this action are attached

23  hereto as Exhibit "A."

24      2.    In their Complaint, Plaintiffs purport to bring claims on behalf of

25  themselves and "two proposed Plaintiff Classes, the proposed RANDSTAD Class and

26  —————————————

27  [1] Although not required for removal by CAFA, both Robert Half International and
Promontory Financial Group consent to the removal of this action.

28

the proposed ROBERT HALF Class." (Comp., ¶ 2.)  The "proposed RANDSTAD Class" consists of "Defendant Randstad's employees working in California from four years prior to the filing of this complaint through the date of trial." (Comp., ¶ 3.) Plaintiffs' define "Class period" as April 19, 2009 through the date of this removal. Plaintiffs allege that Randstad treated all putative class members as non-exempt during the Class Period.  (Comp., ¶¶  51-54.)

3.      Plaintiffs also seek to certify several subclasses within the proposed Randstad Class, which, as pleaded, include:

1)      **Proposed Randstad Unpaid Interview Subclass:** "all members of the Randstad Class who were not compensated for their wages earned while interviewing with Defendant Randstad's current and potential clients during the Class Period."  (Comp., ¶ 5.)

2)      **Proposed Randstad PFG Subclasses:** "all members of the Randstad Class hired as "Analyst I" and "Analyst II" to work on the Independent Foreclosure Review (the "Project") in Orange, CA, during the relevant Class Period."  (Comp., ¶ 6.)

3)      **Proposed Randstad Waiting Time Subclass:** "all Proposed Randstad Class Members who voluntarily or involuntarily terminated their employment during the Class Period, and to whom Defendant Randstad failed to timely pay all wages due as required by Cal. Lab. Code sections 201-203 and applicable IWC Wage Orders."  (Comp., ¶ 31.);

4)      **Proposed Randstad Wage Statement Subclass:** "all Proposed Randstad Class Members for whom, during the Class Period, Defendant Randstad provided with inaccurate itemized wage statements, or failed to provide itemized wage statements, in violation of Cal. Lab. Code section 226, et seq., and applicable IWC Wage Orders."  (Comp., ¶ 32.);

3

15654925v.4

5)    **Proposed Randstad Meal Break Subclass**: "all Proposed Randstad Class Members working on the Project that, during the Class Period, worked days in excess of ten hours, but were denied their right to a second thirty minute meal break for which all work was relieved, due to Defendants Randstad's and PFG's concealment from the Meal Break Subclass Members' their right to take their second meal break." (Comp., ¶ 33.);

6)    **Proposed Randstad Weighted Overtime Subclass**: "all Randstad Class Members who were underpaid due to Defendant Randstad's unlawful scheme of paying its employees $4.00 for their initial interview, but intentionally waiting over a month to pay that amount so as to be able to "weight" the $8.00 per hour earned at the interview with the Weighted Overtime Subclass Members' regular rate of pay when calculating the overtime rate of pay." (Comp., ¶ 34.);

7)    **Proposed Randstad Weekend Bonus Subclass**: "all Proposed Randstad Class Members employed on the Project that fulfilled the requirements of the $200.00 weekend bonus by working at least sixteen hours over the last three weekends of December, 2012, but were not paid the $200.00 because of Defendants PFG's and Randstad's unlawful unilateral modification of the terms of the Weekend Bonus." (Comp., ¶ 35.);

8)    **Proposed Randstad Completion Bonus Subclass**: "all Proposed Randstad Class Members working on the Project who fulfilled the requirements of the $4000.00 completion bonus by remaining on the project until its completion, but were paid an amount less than $4,000.00 because of Defendants PFG's and Randstad's unilateral modification of the terms of the Completion Bonus to add a one-year requirement for earning the entire Completion Bonus." (Comp., ¶ 36.);

9)    **Proposed Randstad Incentive Bonus Subclass**: "all Proposed Randstad Class Members working on the Project who were paid an amount less than that

4

which they actually earned per the terms of the Incentive Bonus because of Defendants PFG's and Randstad's systematic lack of good faith in intentionally failing to keep accurate records and abide by the terms of the Incentive Bonus, in an effort to retain bonus wages earned for their own financial gain." (Comp., ¶ 37.);

10)    **Proposed Randstad Adjusted Overtime Subclass**: "all Proposed Randstad Class Members working on the Project that Defendants PFG and Randstad intentionally paid an amount less than what the proposed Subclass Members earned in adjusted overtime wages attributable to the Weekend, Completion, and Incentive Bonuses." (Comp., ¶ 38.);

11)    **Proposed Randstad Time Rounding Subclass**: "all Proposed Randstad Class Members that were denied full compensation for all wages earned due to Defendant Randstad's unlawful time rounding scheme during the Class Period." (Comp., ¶ 39.);

4.    In their Complaint, Plaintiffs purport to assert claims against Randstad on behalf of the putative class and subclasses for Violation of Labor Code §§ 510, 1194 & 1198 (Failure to Pay Overtime Wage); Violation of Labor Code §§ 1194, 1194.2, 1197 & 1197.1 (Failure to Pay Minimum Wage); Violation of Labor Code § 203 (Waiting Time Penalties); Violation of Labor Code §§ 510 and 226.7 (Failure to Pay Wages for Missed Meal Breaks); Violation of Labor Code § 226 *et seq.* (Failure to Provide Lawful Wage Statements); Breach of Contract - Weekend Bonus; Breach of Contract - Incentive Bonus; Breach of Contract - Completion Bonus; Unfair Competition: Cal. Bus. & Prof. Code § 17200 *et seq.* (Comp., ¶¶ 123-344.)  Plaintiffs Wright and Pouliot also allege class and individual claims against Promontory.  A different plaintiff, Vincent Uberti, alleges individual and class claims against Robert Half and Promontory.  Uberti's claims are not asserted against Randstad.

5

5.     On May 22, 2013, Randstad filed an Answer to the Complaint in the Orange County Superior Court.  A true and correct conformed copy of the Answer filed in the Orange County Superior Court is attached as Exhibit B.  Exhibit A and B constitute all pleadings, process, and orders served on Randstad and filed by Randstad in this action.

## CLASS ACTION FAIRNESS ACT ("CAFA")

### A.     Putative California Class

6.     This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d)(2).  CAFA's minimum diversity require: (1) at least one plaintiff and one defendant are citizens of different states; (2) at least 100 class members; and (3) in excess of $5 million in controversy, in the aggregate, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. § 1441(a), in that the district court has original jurisdiction over the action, because the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of Randstad.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  (Comp., ¶ 45 ("The quantity of members of the Class and Subclasses is unknown to Plaintiffs at this time; however, it is estimated that each of the Classes and Subclasses are in excess of 100 individuals.").); *see also*, Declaration of Bruce Troupe ("Troupe Dec.") ¶ 3, 28 U.S.C. § 1332(d)(5)(B).

### B.     Citizenship of the Parties

7. ·   Plaintiffs' Citizenship.  Plaintiffs allege and Randstad is informed and believes, and on that basis alleges, that Plaintiffs currently are residents of the State of California.  (Comp., ¶ 17 ("At all times herein mentioned, the Plaintiffs and proposed Randstad and Robert Half Class Members were residents of the State of California.").).  To establish citizenship for diversity purposes, a natural person must be both (a) a

6

15654925v.4

citizen of the U.S., and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994). Plaintiffs allege and Randstad is informed and believes, and on that basis alleges, that Plaintiffs were domiciled in California while they worked in California, as alleged in the Complaint, and, therefore, Plaintiffs are, or were at the institution of this civil action, citizens of California.

8.     The Complaint alleges that at all relevant times, Plaintiffs Justin Wright and Jean-Laurent Pouliot were each employees of Randstad "during the proposed Class Period" and further alleges that they are "entitled to unpaid wages, including overtime compensation, unpaid bonuses, wage statement penalties, waiting time penalties, compensation for being denied meal and rest periods, back wages pursuant to CA Lab. Code § 558, and various penalties as provided for in the Cal. Lab. Code." (Comp., ¶ 18.) Plaintiffs Wright and Pouliot "regularly performed the functions of 'Analyst I' and 'Analyst II' while employed on the Project during the Class Period." (Comp., ¶ 18.) Plaintiff Wright worked as a "Quality Control Analyst" and was paid $35.00 per hour during the Class period. (Comp., ¶ 226.) Plaintiff Jean-Laurent Pouliot also worked as a "Quality Control Analyst" and was paid $37.00 per hour. (Comp., ¶ 226.) Plaintiff Jean-Laurent Pouliot's overtime rate of pay was $55.50 per hour. (Comp., ¶ 129.) Plaintiff Wright alleges that he worked in excess of ten hours on "twenty (20) occasions." (Comp., ¶ 58.) Plaintiff Jean-Laurent Pouliot alleges that he worked in excess of ten hours on "ninety-six (96) occasions." (Comp., ¶ 58.)

9.     <u>Randstad's Citizenship</u>. Randstad is a limited partnership ("LP"). An LP is an unincorporated association. *Johnson v. Columbia Props. Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006). For the purposes of CAFA's minimal diversity requirement, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is

NOTICE OF REMOVAL
CASE NO. _____

15654925v.4

organized." 28 U.S.C. §1332(d)(10); *See Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes ...."). Randstad is now, and ever since this action commenced has been, organized under the laws of the State of Delaware, with its principal place of business in Georgia. (*See* Declaration of Robert Calabro ("Calabro Dec.") ¶ 2.) Randstad's corporate headquarters is Atlanta, Georgia. (Calabro Dec., ¶ 3. *See also*, Comp., ¶ 25.) Thus, under the "nerve center" test, Randstad's principal place of business is Georgia. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Because Atlanta, Georgia is the site of Randstad's corporate headquarters and executive offices, where Randstad's high level officers direct, control, and coordinate the Company's activities, Randstad's "nerve center" is in Georgia. (Calabro Dec., ¶ 3.) As a result, Randstad is not now, and was not at the time of the filing of the Complaint, a citizen of the state of California for removal purposes. 28 U.S.C. §1332(d)(10).

10.   <u>Doe Defendants</u>. Pursuant to 28 U.S.C. §1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. §1332. *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants one through 100 does not deprive this Court of jurisdiction.

**C.   <u>Amount in Controversy Exceeds $5,000,000.</u>**

11.   The claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, even when considering the state law claims only. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff

NOTICE OF REMOVAL

15654925v.4

or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14, at 49.  Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. REP. 109-14, at 49 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant").

12.    Although Plaintiffs have not alleged the amount of their individual damages, or alleged the damages of the putative class in their Complaint, based on Plaintiffs' allegations, the alleged amount in controversy in this putative class action exceeds, in the aggregate, $5,000,000.  The Complaint alleges a putative class of all persons who are or were "Randstad's employees working in California from four years prior to the filing of this complaint through the date of trial." (Comp., ¶¶ 3, 30.) Plaintiffs assert all of the following class claims against Randstad:  Violation of Labor Code §§ 510, 1194 & 1198 (Failure to Pay Overtime Wage); Violation of Labor Code §§ 1194, 1194.2, 1197 & 1197.1 (Failure to Pay Minimum Wage); Violation of Labor Code § 203 (Waiting Time Penalties); Violation of Labor Code §§ 510 and 226.7 (Failure to Pay Wages for Missed Meal Breaks); Violation of Labor Code § 226 *et seq.* (Failure to Provide Lawful Wage Statements); Breach of Contract - Weekend Bonus; Breach of Contract - Incentive Bonus; Breach of Contract - Completion Bonus; Unfair Competition: Cal. Bus. & Prof. Code § 17200 *et seq.*  (Comp., ¶¶ 123-344.)

NOTICE OF REMOVAL
CASE NO. _____

15654925v.4

13.     Plaintiffs allege that they and other Randstad's employees were hired to work as an "Analyst I" or "Analyst II" on the Independent Foreclosure Review Project (the "Project")." (Comp., ¶ 6.)  During the period from September 12, 2011 through January 7, 2013, the start and end dates of the "Project", Randstad employed approximately 357 persons who performed work on the Project in California, including Plaintiff Justin Wright and Plaintiff Jean-Laurent Pouliot, as Analysts.  (Comp., ¶ 87; Declaration of Bruce Troupe "Troupe Dec.", ¶ 3.)  Of the approximately 357 Randstad employees who worked on the Project as Analysts, 281 are active Randstad employees and 76 are inactive or former Randstad employees.  (Troupe Dec., ¶ 4.)  These employees worked a total of 9,921 individual workweeks during the one year and 33 days prior to the filing of Plaintiffs' Complaint through the end of the project.  Of those workweeks, 9,115 were worked by active Randstad employees and 806 were worked by inactive or former Randstad employees. (Troupe Dec., ¶ 5.)  In addition, the 357 employees worked approximately 45,649 shifts that lasted at least 8 hours.  (Troupe Dec., ¶ 6.)  The average hourly rate of pay for Randstad's approximately 281 active employees was $32.93 per hour during the time that they worked as Analysts on the Project.  The average hourly rate of pay for Randstad's approximately 76 inactive or former employees was $27.74 per hour during the time that they worked as Analysts on the Project.  (Troupe Dec., ¶ 7.)

14.     Randstad denies that Plaintiffs or the proposed California Class are entitled to anything by the Complaint, as Plaintiffs' claims rest on faulty assumptions and erroneous legal conclusions.  Nevertheless, the amount in controversy is dictated by Plaintiffs' claims in the Complaint, not the merits.  All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission, the truth of the facts alleged and assuming liability is established.  Plaintiffs allege multiple sources of state law potential remedies in the Complaint including:  1) failure to pay overtime wages; 2) failure to pay minimum wages; 3)

10

waiting time penalties; 4) failure to pay wages for missed meal breaks; 5) failure to provide lawful wage statements; 6) breach of contract - weekend bonus; 7) breach of contract - incentive bonus; 8) breach of contract - completion bonus; and 9) unfair business practices. (Comp., ¶¶ 123-344.) In addition, Plaintiffs claim they are entitled to restitution, liquidated damages, interest, attorneys' fees, costs, injunctive relief, compensatory damages, penalties, and "[a]ny other relief deemed appropriate by this Court." (Comp., Prayer ¶¶ 336-357, 382-385 (erroneously listed as "339-341").)

15.     As is set forth below, based on the number of Analyst putative class members in the proposed California Class, the number of weeks worked by the Analyst putative class members during the putative class period, and Plaintiffs' claims in the Complaint, the amount in controversy for unpaid wages as alleged in the Complaint exceeds $5,000,000. As Plaintiffs have not alleged their particular damages, reasonable estimates of the alleged amount in controversy are appropriate. *See Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 688-90 (9th Cir. 2006) (the preponderance of evidence standard applies where a plaintiff "seeks no specific amount in damages," and a court will consider facts in the removal petition to determine whether the jurisdictional requirements are met).

### 1.   Labor Code § 203 Penalties Exceed $500,000

16.     Plaintiffs allege in their eighth cause of action that "[a]t the time of discharge, Defendants PFG and Randstad owed Plaintiffs WRIGHT and POULIOT and Randstad Waiting Time Subclass Members all earned wages, bonuses, and adjusted OT Wages." (Comp., ¶ 205.) Plaintiffs also allege: "At the time of discharge, Defendants PFG and Randstad owed undisputed wages to Plaintiffs WRIGHT and POULIOT and Randstad Waiting Time Subclass members by the statutory due date of January 18, 2013." (Comp., ¶ 206.) Plaintiffs claim, on behalf of themselves and the putative class members, they "are entitled to and seek penalties provided by Cal. Lab. Code Section 203" of thirty days of pay as a penalty for not

11

15654925v.4

paying all wages due at the time of termination for all employees who terminated during the class period. (Comp., ¶ 209.) In their Prayer, Plaintiffs request "[w]aiting time penalties pursuant to Cal. Lab. Code § 203, according to proof." (Comp., Prayer ¶ 351.) Therefore, pursuant to the allegations in the Complaint, Plaintiffs seek 30 days' wages for each employee whose employment terminated more than 30 days ago for the Randstad Waiting Time Subclass.

17.     There is a three year statute of limitations for claims seeking waiting time penalties for unpaid wages under Labor Code Section 203. *See* Cal. Lab. Code § 203 and Civ. Proc. Code § 338(a).

18.     Based on Plaintiffs' allegations, the potential section 203 penalties were calculated using the relevant time period covering the alleged Project, which extends from September 12, 2011 to January 7, 2013, and by using the average hourly rate for Ranstad's 76 inactive of former employees who worked as Analysts on the Project ($27.74) multiplied by eight hours multiplied by 30 days. [76 employees * $27.74 average rate of pay * 8 hours * 30 days = $505,978.00]. Accordingly, the amount in controversy for section 203 penalties is $505,978.00.

## 2.     Plaintiffs Seek Labor Code § 226 Penalties in Excess of $906,000

19.     The Complaint alleges in the third cause of action that Randstad "failed to provide Plaintiffs WRIGHT and POULIOT and members of the Randstad Wage Statement Subclass with accurate wage statements for all hours worked, as required by Cal. Lab. Code § 226(a)." (Comp., ¶ 149.) Plaintiffs allege that Defendants were required to issue a pay statement "semimonthly" under California Labor Code section 226(a). (Comp., ¶ 147.) But Plaintiffs also allege that Randstad was required to pay Plaintiffs and the Randstad Class members on a weekly basis because "Cal. Lab. Code Section 201.3(b) clarifies that '…if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less

12

frequently than weekly." (Comp., ¶ 201.)  Plaintiffs allege that "Plaintiffs WRIGHT and POULIOT and Members of the Randstad Wage Statement Subclass have all suffered injury as defined in Cal. Lab. Code 226(e)(2)(B)(i)...." (Comp., ¶ 164.) Plaintiffs further allege that the members of the Randstad Wage Statement Subclass were harmed by "Randstad's intentional failure to pay...." (Comp., ¶ 161.) Specifically, Plaintiffs allege that "Plaintiffs WRIGHT and POULIOT and Members of the Randstad Time Rounding Subclass were provided inaccurate wage statements for each pay period that they were subject to [Randstad's] unlawful time rounding scheme. Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege, that [Randstad] utilized their unlawful time rounding scheme from the beginning of the project in 2011 through December of 2012." (Comp., ¶ 163.)

20.    Labor Code § 226(e) permits an employee to recover the greater of actual damages or $50 for the initial pay period in which a wage statement violation occurs, and $100 for each subsequent pay period, not to exceed an aggregate penalty of $4,000.  (Comp., ¶ 166, Prayer ¶ 340.)  The statute of limitations for this claim is one year.  Cal. Civ. Proc. Code § 340(a).

21.    The Project began on September 12, 2011 and continued through January 7, 2013. (Troupe Dec., ¶ 4.); (Comp., ¶ 163.)  With a one-year statute of limitations, Plaintiffs seek to recover penalties on behalf of the class from April 19, 2012, to January 7, 2013.  The potential section 226(e) penalties were calculated using this statute of limitations period, and by determining the number of pay periods worked by each individual during this period of time.  Pursuant to Labor Code § 226(e), a $50 penalty is attributed to the first pay period each individual worked, and a $100 penalty for each subsequent pay period they worked, up to a maximum of a $4,000 penalty per employee.  This calculation reveals that the amount in controversy for section 226(e) penalties is $906,250.00 [325 workweeks * $50 + 8,900 workweeks * $100 = $906,250.00.] (Troupe Dec., ¶ 5.)

1

### 3. Private Attorneys' General Act Penalties Exceed $4,885,000

2    22.    Plaintiffs seek penalties under the California Labor Code Private

3 Attorneys General Act of 2004 (Labor Code § 2698, *et seq.*) ("PAGA").  For those

4 specified Labor Code provisions in which a civil penalty is not specifically provided,

5 PAGA provides for penalties of $100.00 for an initial violation in a pay period and

6 $200.00 per pay period for each later violation, with a one-year limitations period.  *See*

7 Cal. Labor Code § 2699(f)(2).  The statute of limitation is tolled and extended by a

8 maximum of 33 days when a plaintiff served a letter on the California Labor &

9 Workforce Development Agency.  *See* Labor Code § 2699.3(d).  Plaintiffs served a

10 letter dated February 14, 2013 to the California Labor and Workforce Development

11 Agency. ( Complaint, Ex. A).  Plaintiffs allege recovery of PAGA penalties for each

12 putative class member for the same violations alleged elsewhere in the Complaint.

13 (Comp., ¶¶ 338-344).[2]

14      The amount in controversy on the PAGA claim would therefore be calculated as

15 follows:

16      (a)    Labor Code § 226(a)—based on the statute of limitations, there are a total

17 of 9,921 workweeks.  (Troupe. Decl. ¶5).  Of the approximately 357 employees who

18 worked on the Project, 331 worked at least one week between March 17, 2012, and

19 January 7, 2013.  (Troupe. Decl. ¶4).  As a result, 331 workweeks would be subject to

20 the initial penalty of $100.00, and the remainder of the workweeks would be subject to

21

22

---

[2] Although PAGA pays a bounty of only twenty-five percent (25%) of total penalties
to the aggrieved employee(s), while diverting 75% to the state Labor and Workforce
Development Agency ("LWDA"), Lab. Code § 2699(i), the LWDA recovery-sharing
is irrelevant to the amount in controversy.  *See Schiller v. David's Bridal, Inc.*, 2010
U.S. Dist. LEXIS 81128 (E.D. Cal. July 14, 2010) ("question is not how much Plaintiff
or the class will ultimately recover; the amount in controversy is calculated based upon
the amount put into controversy by the complaint, regardless of how the recovery is
divided.  Thus, it makes little difference whether the LWDA shares in the recovery—
Plaintiff, by alleging PAGA penalties, has put 100% of the PAGA penalties in
controversy").

14

15654925v.4

the $200.00 penalty, resulting in a total penalty of $1,951,100.00 [331 workweeks * $100 + 9590 workweeks * $200 = $1,951,100.00].

(b)    Labor Code § 204—based on the one year statute of limitations, there are a total of 9,921 workweeks.  As with the calculation of penalties under § 226(a), 331 workweeks would be subject to the initial penalty of $100.00, and the remainder of the workweeks would be subject to the $200.00 penalty, resulting in a total penalty of $1,951,100.00 [331 workweeks * $100 + 9590 workweeks * $200 = $1,951,100.00].

(c)    Labor Code § 558—based on the statute of limitations, there are a total of 9,921 workweeks.  Similar to the calculation of penalties under §§ 204 and 226(a), 331 workweeks would be subject to the initial penalty of $50.00, and the remainder of the workweeks would be subject to the $100.00 penalty, resulting in a total penalty of $975,550.00 [331 workweeks * $50 + 9590 workweeks * $100 = $975,550.00].

(d)    Labor Code §§ 201 and 202—based on the statute of limitations, there are a total of 76 inactive or former employees.  A $100 penalty is attributed to each of these employees for a total of $7,600 in potential liability.

Therefore, the total amount in controversy as to Plaintiff's PAGA claim would be $4,885,350.00 [$1,951,100 penalties for §226(a) + $1,951,100 penalties for §201 + $975,550 penalties for §558 + $7,600 penalties for §§ 201 and 202 = $4,885,350.00]

### 4.    <u>Overtime, Minimum Wage Damages Exceed $221,000</u>

23.    The Complaint also alleges that when Randstad calculated the regular rate of pay in order to pay overtime, Plaintiffs and the class members were subject to "Randstad's systematic underpayment of wages earned pursuant to the Weekend Completion and Incentive Bonuses, their failure to accurately calculate the overtime attributable to the Bonuses at the lawful overtime rate of one and a half times the regular rate of pay, and the perpetuation of their weighted overtime scheme and unlawful time-rounding scheme has resulted in the Plaintiffs WRIGHT and POULIOT and Members of the Weighted Overtime, Adjusted Overtime, and Time-Rounding

15

Subclasses receiving compensation at less than the lawful rate." (Comp., ¶ 128.)
Plaintiffs request recovery of all unpaid overtime wages. (Comp., ¶ 138.)

24.     Plaintiffs also allege that "Plaintiffs WRIGHT and POULIOT and
Members of the Randstad Unpaid Interview Subclass all went and interviewed for
potential employment with Defendant Randstad's current and potential clients."
(Comp., ¶ 141.)  Plaintiffs allege that they and the putative class were not properly
compensated for this time spent.  (Comp., ¶¶ 141-143.)  Plaintiffs allege these
interviews lasted 30 minutes.  (Comp., ¶ 67a)

25.     Plaintiffs also allege that "[o]nce Plaintiffs WRIGHT and POULIOT and
Time Rounding Subclass members working on the Project entered Defendant PFG's
controlled-access door, they had to retrieve their confidential binder from the 'vault,'
walk to their supervisors workstation, walk to their assigned work station, 'boot' their
computer, enter log-in credentials for the Randstad Workstation and finally click on
'start time.'  Plaintiff's WRIGHT and POULIOT are informed and believe, and based
there on allege that it took a minimum of seven minutes from the time they entered
Defendant's controlled access door until they were able to access the time keeping
system to 'clock-in.'"  (Comp., ¶¶ 115-116.)

26.     Without even attributing any exposure to weighted overtime, adjusted
overtime, and time-rounding allegations, the potential exposure for this claim exceeds
$221,603.07 .  This is calculated by multiplying 7 minutes of time for each shift
worked by Randstad's approximately 356 employees by the lower average overtime
rate of pay for the smaller group of inactive or former employees [(.12 hours (7
minutes) * 45,649 shifts of at least 8 hours * $41.61 overtime rate of pay ($27.74
average rate of pay for inactive employees * 1.5)) = $221,603.07]

### 5.   <u>Second Meal Period Violation</u>

27.     Plaintiffs also allege that "Plaintiffs WRIGHT and POULIOT and
Members of the Randstad Meal Break Subclass were entitled under Cal. Lab. Code §

16

15654925v.4

512…to a second 30 minute unpaid meal break….." (Comp., ¶ 171.)  Plaintiffs further allege that "[b]y failing to post or provide to the Plaintiffs WRIGHT and POULIOT and Randstad Meal Break Subclass Members timely and accurate meal-break information, [Randstad has] violated Lab. Code § 226.7(a).   (Comp., ¶ 174.)  Plaintiffs, therefore, allege that "Plaintiffs WRIGHT and POULIOT and Randstad Meal Break Subclass Members are entitled to and seek wages pursuant to Lab. Code 227.6(b)…." (Comp., ¶ 176.)  According to the Complaint, "Plaintiff WRIGHT estimates that he worked in excess of ten hours on twenty (20) occasions; and Plaintiff POULIOT estimates ninety-six (96) occasions." (Comp., ¶ 58.)

### 6.   Attorney Fees Increase the Potential Amount in Controversy

28.   The Complaint also seeks attorneys' fees under the first through ninth causes of action.  (Comp., Prayer ¶¶ 339, 342, 346, 352, 357 [erroneously listed as the second 336].)  Requests for attorneys' fees must be taken into account in ascertaining the amount in controversy. *See Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether award is discretionary or mandatory).  Moreover, the potential for an award of mandatory attorneys' fees is included in the amount in controversy analysis for the purposes of removal under CAFA. *Lowdermilk v. U.S. Bank National Ass'n,* 479 F.3d 994, 1000 (9th Cir. 2007).  Attorneys' fees may be awarded based on the lodestar method (calculated by applying counsel's hourly rates to the time spent and a risk multiplier where appropriate). *Staton v. Boeing Co.,* 327 F.3d 938, 968 (9th Cir. 2003).  Alternatively, the court may simply award counsel a percentage of the fund recovered. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998).  The Ninth Circuit has awarded attorneys' fees of up to 25 percent of the recovery, although fees may be adjusted or replaced by a lodestar calculation "when specific circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."

17

CASE NO. _____

15654925v.4

*Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F. 2d 1301, 1311 (9th Cir. 1990). Given the allegations contained on the face of the Complaint, which Randstad disputes, calculating 25% of the alleged damages ($6,519,181.07) for attorneys' fees would equal $1,629,795.27. This calculation excludes any potential liability based on Plaintiffs' claims for missed meal breaks or their claims for improper rounding, breach of contract, or weighted overtime claims.

### 7.    The Amount In Controversy Exceeds $5,000,000

29.    As shown above, based solely on the allegations of Plaintiffs under Labor Code § 203 ($505,978.00), § 226(a) ($906,250.00), PAGA ($4,885,350.00), and off the clock claims ($221,603.07), the amount in controversy exceeds $6,519,181.07. Assuming an award of attorneys' fees calculated at 25% ($1,629,795.27), the amount in controversy equals $8,148,976.34. As set forth above, this calculation excludes any potential exposure for Plaintiffs' rounding claims, bonus and contract claims, meal break, or weighted overtime claims. Plaintiffs also seek additional interest and costs. (Comp., Prayer.) Moreover, this excludes any potential damages sought against the other two defendants, Promontory and Robert Half. Consequently, the amount in controversy in this class action, as pleaded by Plaintiffs, far exceeds $5,000,000.

30.    Neither the "home state exception" nor the "local controversy" exception to CAFA apply or compel the Court to decline jurisdiction. 28 U.S.C. § 1332(d)(4)(B); 28 U.S.C. § 1332(d)(4)(A). Although Plaintiffs allege that Robert Half is a California resident, they allege no other facts to meet either exception. Specifically, the allegations in Plaintiffs' Complaint do not meet their burden to show that Robert Half is a primary defendant or that Robert Half is a defendant from whom they seek "significant" relief. (Comp., ¶¶ 123-344.)

31.    Because diversity of citizenship exists—the Plaintiffs, being citizens of the State of California, and Randstad, being a citizen of the State of Georgia—and because the amount in controversy exceeds Five Million Dollars ($5,000,000), this

18

Court has original jurisdiction of the action pursuant to 28 U.S.C. § 1332(d)(2). This action is therefore a proper one for removal to this Court.

## VENUE

32.    Venue lies in the Central District of this Court pursuant to 28 U.S.C. §§ 1441 and 1446(a) because this action is being removed from the Superior Court of the State of California, County of Orange. (Comp., ¶¶ 28-29.) Randstad therefore removes this action to the United States District Court for the Central District of California.

## TIMELINESS OF REMOVAL

33.    Plaintiffs served by Notice of Acknowledgement the Summons and Complaint in this action to Randstad on April 23, 2013. (Exh. A.) This Notice of Removal is timely as it is filed within thirty (30) days of the purported service on Randstad of a copy of the Summons and Complaint. 28 U.S.C. § 1446(b). *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

## NOTICE OF REMOVAL

34.    This Notice of Removal will be promptly served on Plaintiffs and the other Defendants as well as filed with the Clerk of the Superior Court of the State of California in and for the County of Orange.

35.    In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders served" upon Randstad in the action are attached hereto as Exhibit A.

WHEREFORE, Randstad requests that the above action pending before the Superior Court of the State of California for the County of Orange be removed to the United States District Court for the Central District of California.

NOTICE OF REMOVAL
CASE NO. _____

15654925v.4

1    DATED: May 23, 2013                    SEYFARTH SHAW LLP

2

3                                           By: _____

4                                               Sheryl L. Skibbe
                                                Brian P. Long
5                                               John H. Dolan
                                                Attorneys for Defendants
6                                               RANDSTAD US, LP

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                      NOTICE OF REMOVAL
                                              CASE NO. _____

15654925v.4

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>RANDSTAD US; ROBERT HALF INTERNATIONAL;<br>PROMONTORY FINANCIAL GROUP; and DOES 1-100, inclusive,<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>JUSTIN WRIGHT; JEAN-LAURENT POULIOT; and VINCENT<br>UBERTI; on behalf of themselves and all others similarly situated, | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**04/19/2013** at 03:27:28 PM<br>Clerk of the Superior Court<br>By Irma Cook, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Orange County Superior Court<br>751 West Santa Ana Blvd.<br>Santa Ana, CA 92701 | CASE NUMBER<br>*(Número)*<br>30-2013-00644746-CU-OE-CXC |

Judge Steven L. Perk

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:<br>*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*<br>Brett Szmanda, 2030 Main Street Suite 1040, Irvine CA 92614; 818-291-3790

| | | | | |
|---|---|---|---|---|
| DATE: April 19th, 2013<br>*(Fecha)* | Alan Carlson | Clerk, by<br>*(Secretario)* | *[signature]* | , Deputy<br>*(Adjunto)* |

Irma Cook

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*<br>*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Randstad US; Promontory Fin. Group; Robert Half Int.

under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov

Brett Szmanda, Esq.   Cal. Bar No.: 288688
John C. Rarick, Esq.   Cal. Bar No.: 285862
Simon Panczyk, Esq.   Cal. Bar No.: 287053
Steven L. Stem, Esq.   Cal. Bar No.: 43729

2030 Main Street Suite 1040
Irvine, CA 92614
Tel:818-291-3790; Fax: 949-553-7732

Attorneys for Plaintiffs

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**04/19/2013** at 03:27:28 PM
Clerk of the Superior Court
By Irma Cook, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

JUSTIN WRIGHT; JEAN-LAURENT POULIOT; and VINCENT UBERTI; on behalf of themselves and all others similarly situated,

      Plaintiffs,

      v.

RANDSTAD US;
ROBERT HALF INTERNATIONAL;
PROMONTORY FINANCIAL GROUP; and DOES 1-100, inclusive,

      Defendants

Case No.: 30-2013-00644746-CU-OE-CXC   Judge Steven L. Perk

**CLASS ACTION COMPLAINT FOR UNPAID WAGES, DAMAGES, RESTITUTION, INJUNCTIVE AND DECLARATORY RELIEF**

Class Allegations:

1. Failure to Pay Overtime Wage: Cal. Lab. Code §§ 510, 1194 & 1198;
2. Failure to Pay Minimum Wage: Cal. Cal. Lab. Code §§ 1194, 1194.2, 1197 & 1197.1
3. Waiting Penalties: Cal. Lab. Code § 203;
4. Failure to Pay Wages for Missed Meal Beaks: Cal. Lab. Code §§ 510 & 226.7;
5. Failure to Provide Lawful Wage Statements: Cal. Lab. Code §226et seq.;
6. Breach of Contract - Weekend Bonus;
7. Breach of Contract - Incentive Bonus;
8. Breach of Contract - Completion Bonus;
9. Unfair Competition: Cal. Bus. & Prof. Code § 17200 et. seq.;

Individual Allegations:

10. Failure to Provide Equal Pay: Cal. Lab. Code § 1197.5 ;
11. Failure to Provide Records: Cal. Lab. Code §226(c);
12. Retaliation: Cal. Lab. Code §1102.5(a);
13. Retaliation: Cal. Lab. Code §1102.5(a);
14. Retaliation: Cal. Lab. Code §1102.5(b);
15. Retaliation: Cal. Lab. Code §98.6;
16. Violation of Public Policy – 1102.5(a);
17. Violation of Public Policy – 1102.5(a);
18. Violation of Public Policy – 1102.5(b);
19. Violation of Public Policy – 98.6;
20. Failure to Pay Wages in Violation of Lab. Code § 510 &1194;
21. Unfair Competition: Cal. Bus. & Prof. Code § 17200 et. seq.;
22. Penalties: Cal. Lab. Code § 2698, et seq.

Trial by Jury Demanded by Plaintiffs

## CLASS ACTION COMPLAINT FOR UNPAID WAGES, PENALTIES, DAMAGES, RESTITUTION, INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff WRIGHT, Plaintiff POULIOT and Plaintiff UBERTI (Collectively "Plaintiffs") on behalf of themselves and all others similarly situated, and as representatives of the public, as allowed under the Private Attorney Generals Act ("PAGA"), allege and complain of Defendants herein named, and each of them, as follows:

## I.     SUMMARY OF CAUSES OF ACTION

1.     This action arises out of harm suffered by the Plaintiffs and proposed class members caused by the Defendants' intentional and systematic disregard of California's Wage and Hour Laws, as codified in the Cal. Lab. Code and the Industrial Welfare Commission's Wage Orders.

2.     This action is filed on behalf of the Plaintiffs and the two proposed Plaintiff Classes, the proposed RANDSTAD Class and the proposed ROBERT HALF Class.

**As to Plaintiffs WRIGHT and POULIOT and Members of the Proposed Randstad Class:**

3.     The proposed RANDSTAD CLASS consists of Defendant Randstad's employees working in California from four years prior to the filing of this complaint through the date of trial.

4.     The Plaintiffs, WRIGHT and POULIOT, are the proposed named Randstad Class representatives; the term "Proposed Randstad Class" includes the Plaintiffs WRIGHT and POULIOT and all members of the proposed Class of all current and former employees of Defendant Randstad working in California during the Class Period of four years prior to the filing of this complaint through the date of trial.

5.     The proposed Randstad Unpaid Interview Subclass includes all members of the Randstad Class who were not compensated for their wages earned while interviewing with Defendant Randstad's current and potential clients during the Class Period.

6. The proposed Randstad PFG Subclasses includes Plaintiffs WRIGHT and POULIOT, and all members of the Randstad Class hired as "Analyst I" and "Analyst II" to work on the Independent Foreclosure Review (the "Project") in Orange, CA, during the relevant Class Period. Subclass Members performed jobs which include, but are not limited to, those job positions related to the Input, Validation and Quality Control of client complaints, as well as job positions related to Quality Assurance, including members of the "QA Pass-back Team". These employees exclusively performed non-exempt repetitive and routine functions without any significant degree of discretion and/or independent judgment.

7. In executing and completing the Project and discharging the Plaintiffs WRIGHT and POULIOT and Proposed Randstad PFG Subclass Members, the Defendants Randstad and PFG failed to provide mandatory rest and meal breaks; to provide accurate wage statements and keep accurate payroll records as proscribed by law; to pay undisputed wages on time and in the full amount owed; to pay discharged employees all of their wages in accordance with the Cal. Lab. Code; as well as numerous other violations of the Cal. Lab. Code and IWC Wage Orders pertaining to wages, practices and mandatory working conditions.

8. Plaintiffs WRIGHT and POULIOT and proposed Randstad Class Members have suffered financial harm because the Defendants failed to follow the Cal. Lab. Code and IWC Wage Orders pertaining to wages and mandatory working conditions.

9. Randstad Class members are entitled to compensation pursuant to Cal. Lab. Code section 558 for Defendants' intentional underpayment of wages.

10. Plaintiffs WRIGHT and POULIOT seek declaratory relief, restitution and compensation for work performed and monies due themselves and the Proposed Randstad Class Members during the Class Period, based upon information and belief that the Defendants PFG and Randstad are continuing, and will continue, their unlawful practices as described herein.

11. Plaintiffs WRIGHT and POULIOT also seek to serve as representatives of the general public to enforce and uphold California's wage and hour laws as private attorney generals

as expressly permitted by Cal. Lab. Code § 2698 et seq., pursuant to the Private Attorneys General Act of 2004 ("PAGA").

12. Plaintiffs WRIGHT and POULIOT have complied with all notice provisions of the PAGA and are deemed aggrieved employees as required by the Act to serve as private attorney generals in a representative capacity on behalf of the general public, and recover all penalties and damages that otherwise are reserved for the DLSE, the California DIR, and/or the Labor Commissioner of the State of California.

13. On or about February 16th, 2013, Plaintiffs WRIGHT and POULIOT gave written notice to Defendants Randstad and PFG, and to the California Labor and Workforce Development Agency ("LWDA") by certified mail. Plaintiffs waited in excess of 33 days for either Defendants to take remedial action or for the LWDA to intervene in accordance with Cal. Lab. Code §2699.3(c). True and correct copies of the certified letter and proof of mailing are attached hereto as Exhibit "A". Accordingly, Plaintiffs WRIGHT and POULIOT file this Class Action Complaint as provided by California Code of Civil Procedure §382 and as specifically permitted by Cal. Lab. Code §2699.3(a)(2)(C).

**As to Plaintiff UBERTI and Members of the Proposed Robert Half Class:**

14. The Plaintiff UBERTI is the proposed named Robert Half Class representative; the term "Proposed Robert Half Class" includes the Plaintiff UBERTI and all members of the proposed Class of all current and former employees of Defendant Robert Half International working in California during the relevant Class Period of four years prior to the filing of this complaint through the date of trial, and who were not paid their wages earned while interviewing for employment with clients of Defendant Robert Half.

15. Plaintiff UBERTI and proposed Robert Half Class Members have suffered financial harm because of the Defendant Robert Half's systematic failure to follow the Cal. Lab. Code and IWC Wage Orders pertaining to the timely payment of wages and mandatory working conditions.

16. Plaintiff UBERTI and Proposed Robert Half Class Members seek declaratory relief, restitution, penalties and full compensation for all work performed and wages earned by himself and the Proposed Robert Half Class Members during the Class Period, based

-4-

upon information and belief that the Defendant Robert Half is continuing, and will continue, their unlawful practices as described herein.

## II.   PARTIES

**THE PLAINTIFFS:**

17.   At all times herein mentioned, the Plaintiffs and proposed Randstad and Robert Half Class Members were residents of the State of California.

18.   Plaintiffs WRIGHT and POULIOT were both employees of the Defendants Randstad and PFG during the proposed Class Period and are entitled to unpaid wages, including overtime compensation, unpaid bonuses, wage statement penalties, waiting time penalties, compensation for being denied meal and rest periods, back wages pursuant to CA Lab. Code § 558, and various penalties as provided for in the Cal. Lab. Code. Plaintiffs both regularly performed the functions of "Analyst I" and "Analyst II" while employed on the Project during the Class Period.

19.   Plaintiff UBERTI was an employee of the Defendant Robert Half during the proposed Class Period and is entitled to unpaid wages, wage statement penalties, waiting time penalties, and back pay and penalties pursuant to Cal. Lab. Code § 558.  Plaintiff was hired as a Quality Assurance Analyst by Defendant PFG through Defendant Robert Half.

20.   All positions described herein are uniformly and systematically deemed "non-exempt."

21.   All of the Proposed Randstad Class Members are identifiable persons who are or were employed in the State of California by Defendant Randstad during the relevant Class period of four years prior to the filing of this complaint through the date of trial.

22.   All of the Proposed Robert Half Class Members are identifiable persons who are or were employed in the State of California by Defendant Robert Half during the relevant Class period of four years prior to the filing of this complaint through the date of trial.

**THE DEFENDANTS:**

23.   Defendant PFG is "a global consulting firm that advises clients on a variety of financial services matters, including regulatory issues, compliance, risk management, liquidity, restructuring, acquisitions, due diligence and internal investigations."  At all times herein mentioned, Defendant PFG conducted business within the state of California, and

maintains its corporate headquarters at 801 17th Street, NW, Suite 1100, Washington, DC 20006.

24.  Defendant RANDSTAD US provides office, industrial, technical, creative, and professional staffing services through more than 500 branches across the US and Canada. At all times herein mentioned, Defendant RANDSTAD US transacted business through several of its branches throughout the state of California and within this County, and maintains their corporate headquarters in Atlanta, GA United States.

25.  At all times herein mentioned Defendant RANDSTAD ("RANDSTAD") was a corporation, incorporated in the State of Georgia and having offices for the purposes of conducting business located within this state.

26.  Defendant Robert Half International ("Robert Half") is the world's largest temporary specialized staffing firm, with 350 locations worldwide.  Plaintiff URBETI is informed and believes, and alleges based thereon that Defendant Robert Half's corporate headquarters  is located at 2884 Sand Hill Road # 200, Menlo Park, CA 94025-7059.

27.  Plaintiff is informed and believes and, based thereon alleges, that at all times herein mentioned, Defendants named herein as defendants DOES 1 through 100; inclusive, resided in  the State of California.  Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 100; inclusive, and therefore sue those defendants using said fictitious names, but will amend this Complaint to set forth their true names and capacities when the same has been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants herein is now, and at all times herein was, acting as the agent or employee, or both, of each and every one of the other Defendants herein named, whether by their true name or their fictitious names, and was at all times herein mentioned acting within the scope of the authority granted to such Defendant as such agent and/or employee.

### III. JURISDICTION AND VENUE

28.  Venue is proper in this Judicial District and the County of Orange because, upon information and belief, Defendants reside and/or are domiciled in this county and maintain offices and transact business in this county, and work was performed by a

substantial portion of the Members of the Randstad and Robert Half Classes made the subject of this action exclusively in the County of Orange, California.

29.   On information and belief, the California Superior Court has jurisdiction in this matter because there is no federal question at issue as the issues herein are based solely on California statutes and laws including the Cal. Lab. Code, Industrial Welfare Commission Wage Orders, Code of Civil Procedure, Rules of Court, and Business and Professions Code. Furthermore, due to the fact that Defendant Robert Half is a corporate citizen of California, the substantial operations of PFG and Randstad in California, and by virtue of the fact that all of the Plaintiffs and Class Members worked exclusively in the State of California during the entire Class Period, this matter falls into the local case/controversy exception to the CAFA and was never intended to be litigated within the original Article III jurisdiction of the federal courts. Because this case solely involves California employees under California's unique wage and hour laws, federal jurisdiction is not implicated whatsoever.

## IV. CLASS ALLEGATIONS

30.   Plaintiffs WRIGHT and POULIOT bring this action on behalf of themselves and all other similarly situated persons, as a class action pursuant to California Code of Civil Procedure section 382. The Class and Subclasses which Plaintiffs WRIGHT and POULIOT seek to represent are composed of and defined as follows:

> Proposed Randstad Class:
> The Plaintiffs and all other similarly situated current and former employees of Defendant Randstad working in California during the relevant Class Period of four years prior to the filing of this complaint through the final resolution of this matter.

31.   Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify a "Waiting Time Subclass" that is currently composed of and defined as follows:

> Proposed Randstad "Waiting Time Subclass":
> Plaintiffs WRIGHT and POULIOT and all Proposed Randstad Class Members who voluntarily or involuntarily terminated their employment during the Class Period, and to whom Defendant Randstad failed to timely pay all wages due as required by Cal. Lab. Code sections 201-203 and applicable IWC Wage Orders.

32.   Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify a "Wage Statement Subclass" that is currently composed of and defined as follows:

> **Proposed Randstad "Wage Statement Subclass"**
> Plaintiffs WRIGHT and POULIOT and all Proposed Randstad Class Members for whom, during the Class Period, Defendant Randstad provided with inaccurate itemized wage statements, or failed to provide itemized wage statements, in violation of Cal. Lab. Code section 226, et seq., and applicable IWC Wage Orders.

33.   Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify a "Meal Break Subclass" that is currently composed of and defined as follows:

> **Proposed Randstad "Meal Break Subclass":**
> Plaintiffs WRIGHT and POULIOT and all Proposed Randstad Class Members working on the Project that, during the Class Period, worked days in excess of ten hours, but were denied their right to a second thirty minute meal break for which all work was relieved, due to Defendants Randstad's and PFG's concealment from the Meal Break Subclass Members' their right to take their second meal break.

34.   Plaintiff POULIOT, on behalf of himself and all others similarly situated, will also seek to certify a "Weighted Overtime Subclass" that is currently composed of and defined as follows:

> **Proposed Randstad "Weighted Overtime Subclass"**
> Plaintiff POULIOT and all Proposed Randstad Class Members who were underpaid due to Defendant Randstad's unlawful scheme of paying its employees $4.00 for their initial interview, but intentionally waiting over a month to pay that amount so as to be able to "weight" the $8.00 per hour earned at the interview with the Weighted Overtime Subclass Members' regular rate of pay when calculating the overtime rate of pay.

35.   Plaintiff POULIOT, on behalf of himself and all others similarly situated, will also seek to certify a "Weekend Bonus Subclass" that is currently composed of and defined as follows:

> **Proposed Randstad "Weekend Bonus Subclass"**
> Plaintiff POULIOT and all Proposed Randstad Class Members employed on the Project that fulfilled the requirements of the $200.00 weekend bonus by working at least sixteen hours over the last three weekends of December, 2012, but were

not paid the $200.00 because of Defendants PFG's and Randstad's unlawful unilateral modification of the terms of the Weekend Bonus.

36.     Plaintiff POULIOT, on behalf of himself and all others similarly situated, will also seek to certify a "Completion Bonus Subclass" that is currently composed of and defined as follows:

> Proposed Randstad "Completion Bonus Subclass"
> Plaintiff POULIOT and all Proposed Randstad Class Members working on the Project who fulfilled the requirements of the $4000.00 completion bonus by remaining on the project until its completion, but were paid an amount less than $4,000.00 because of Defendants PFG's and Randstad's unilateral modification of the terms of the Completion Bonus to add a one-year requirement for earning the entire Completion Bonus.

37.     Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify an "Incentive Bonus Subclass" that is currently composed of and defined as follows:

> Proposed Randstad "Incentive Bonus Subclass"
> Plaintiffs WRIGHT and POULIOT, and all Proposed Randstad Class Members working on the Project who were paid an amount less than that which they actually earned per the terms of the Incentive Bonus because of Defendants PFG's and Randstad's systematic lack of good faith in intentionally failing to keep accurate records and abide by the terms of the Incentive Bonus, in an effort to retain bonus wages earned for their own financial gain.

38.     Plaintiffs Wright and Pouliot, on behalf of themselves and all others similarly situated, will also seek to certify an "Adjusted Overtime Subclass" that is currently composed of and defined as follows:

> Proposed Randstad "Adjusted Overtime Subclass"
> Plaintiffs WRIGHT and POULIOT ,and all Proposed Randstad Class Members working on the Project that Defendants PFG and Randstad intentionally paid an amount less than what the proposed Subclass Members earned in adjusted overtime wages attributable to the Weekend, Completion, and Incentive Bonuses.

39.     Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify a "Time Rounding Subclass" that is currently composed of and defined as follows:

> Proposed Randstad "Time Rounding Subclass"
> Plaintiffs WRIGHT and POULIOT, and all Proposed Randstad Class Members that were denied full compensation for all wages earned due to Defendant Randstad's unlawful time rounding scheme during the Class Period.

WRIGHT, POULIOT & LIBERTI v RANDSTAD, PFG & RH et. al

40. Plaintiff WRIGHT, on behalf of himself and all others similarly situated, will also seek to certify an "Unpaid Interview Wage Subclass" that is currently composed of and defined as follows:

> Proposed Randstad "Unpaid Interview Wage Subclass":
> Plaintiffs WRIGHT and all Proposed Randstad Class Members that were not provided with compensation for the time spent interviewing with Defendant Randstad's Clients for potential employment during the relevant Class Period.

41. Plaintiff UBERTI brings this action on behalf of himself and all others similarly situated, as a class action pursuant to California Code of Civil Procedure section 382. The Proposed Class and Subclasses which Plaintiff UBERTI seeks to represent are composed of and defined as follows:

> Proposed Robert Half Class:
> Plaintiff UBERTI and all other similarly situated current and former employees of Defendant Robert Half working in California, who were denied compensation for the time they spent interviewing with current and potential clients of Robert Half, during the relevant Class Period of four years prior to the filing of this complaint through the date which trial commences.

42. Plaintiff UBERTI, on behalf of himself and all others similarly situated, will also seek to certify a "Waiting Time Subclass" that is currently composed of and defined as follows:

> Proposed Robert Half "Waiting Time Subclass":
> Plaintiff UBERTI and all Proposed Robert Half Class Members who voluntarily or involuntarily terminated their employment during the Class Period, and to whom Defendant Robert Half failed to timely pay all wages due as required by Cal. Lab. Code sections 201-203 and applicable IWC Wage Orders.

43. Plaintiff UBERTI, on behalf of himself and all others similarly situated, will also seek to certify a "Wage Statement Subclass", that is currently composed of and defined as follows:

> Proposed Robert Half "Wage Statement Subclass"
> All Proposed Robert Half Class Members that, during the Class Period, were not provided with itemized wage statements for the wages earned while interviewing with current and potential clients of Defendant Robert Half, in violation of Cal. Lab. Code section 226, et seq., and applicable IWC Wage Orders.

44.  **Ascertainable Class**: The proposed Class and each proposed Subclass are ascertainable in that their members can be identified and located using information contained in Defendants' payroll and personnel records.

45.  **Numerosity**: The potential quantity of members of the Class and Subclasses as defined is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The quantity of members of the Class and Subclasses is unknown to Plaintiffs at this time; however, it is estimated that each of the Classes and Subclasses are in excess of 100 individuals. The quantity and identity of such membership is readily ascertainable via inspection of Defendants' records.

46.  **Commonality**:  Common questions of law and fact exist as to members of the Classes and Subclasses, including, but not limited to, the following:

a. Whether Defendants PFG and Randstad failed to timely pay the Plaintiffs WRIGHT and POULIOT and Proposed Randstad Class Members who voluntarily or involuntarily terminated their employment with the Defendants PFG and Randstad during the Class Period all wages due as required by Cal. Lab. Code sections 201-203 and/or applicable IWC Wage Orders.

b. Whether Defendants Randstad and Robert Half provided the Plaintiffs and Proposed Class Members with inaccurate itemized wage statements in violation of Cal. Lab. Code section 226, et seq., and applicable IWC Wage Orders.

c. Whether Defendants Randstad's and PFG's failure to institute any policy on the Project whatsoever governing the Plaintiffs WRIGHT's and POULIOT's and Proposed Randstad Meal Break Subclass Members' right to a second thirty-minute meal break for the days in which over ten hours was worked in a single day constitutes a policy of uniformly denying all employees with their right to a second thirty-minute meal break in violation of Lab. Code § 218.5, 226.7, & 512, and IWC Wage Order No. 4-2001.

d. Whether Defendant Randstad's policy of withholding payment of Plaintiff POULIOT and Randstad Weighted Overtime Subclass Members' initial interview wages until a time that allowed Defendant Randstad to perpetuate their scheme of combining the Plaintiff's and Subclass Members' regular rate of pay with the $8.00 per hour initial interview rate of pay, so as to come up with a "weighted overtime" is in violation of the CA Lab. Code and applicable IWC Wage Orders.

e. Whether Defendants Randstad's and PFG's complete and utter lack of good faith in their administration and payment of the three bonuses at issue (the

completion bonus, the incentive bonus, and the end of the year weekend bonus) was in violation of California Contract and Labor Laws.

f. Whether the Plaintiffs WRIGHT and POULIOT and Proposed Randstad Time Rounding and Meal Break Subclass Members were denied rest and meal breaks, and full compensation for all wages earned as a result of Defendant Randstad's Time Rounding Scheme, in violation of California Labor Laws.

g. Whether the Plaintiffs WRIGHT and POULIOT and Proposed Randstad Time Rounding Subclass Members were denied full compensation for all wages earned due to Defendant Randstad's Time Rounding Scheme.

h. Whether Defendant Randstad's policy and practice of not paying its employees for the time spent interviewing on their behalf and under their control denied Plaintiff Wright and Proposed Randstad Unpaid Initial Interview Subclass Members of compensation for wages earned in violation of Cal. Lab. Code § 1194.

i. Whether Defendant Robert Half's policy and practice of not paying its employees for the time spent interviewing on their behalf and under their control denied Plaintiff UBERTI and Proposed Robert Half Unpaid Initial Interview Subclass Members of compensation for wages earned in violation of Cal. Lab. Code 1194.

j. Whether Defendant Robert Half is precluded from asserting that a good faith dispute existed as to whether they were obligated to provide compensation for time spent interviewing on their behalf and subject to their control, due to recent Federal and State Court decisions interpreting Cal. Lab. Code § 1194.

k. Whether Defendant Robert Half's policy and practice of not providing Plaintiff UBERTI and Proposed Robert Half Unpaid Initial Interview Subclass Members with accurate itemized wage statements for their initial interview wages is in violation of California Labor Laws.

47.     **Typicality**: The claims of Plaintiffs WRIGHT, POULIOT and UBERTI for unpaid wages, penalties, damages, restitution, declaratory and injunctive relief, interest, and attorneys' fees are typical of the claims of all members of the Classes and Subclasses mentioned herein because all members of the Classes and Subclasses were employed in the same capacities and sustained similar injuries and damages arising out of Defendants' common course of conduct in violation of law.  The injuries and damages of all Members of the Classes and Subclasses were caused by Defendants' wrongful conduct in violation of law, as alleged herein.

48. **Adequate Representation**: The Plaintiffs will fairly and adequately represent and protect the interests of the Proposed Plaintiff Class and Subclasses. The Plaintiffs have retained counsel competent and experienced in complex actions and state labor and employment litigation.

49. Class Certification of the First through Ninth Causes of Action for Relief is appropriate because questions of law and fact common to the Plaintiffs and the Proposed Plaintiff Classes predominate over any questions affecting only individual members of the Proposed Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Defendants' common, non-individualized and uniform policies and practices have created unlawful working conditions for the Plaintiffs and Members of the Proposed Classes and Subclasses and has deprived them of receiving full compensation for their earned wages. The damages suffered by individual Proposed Randstad and Robert Half Class and Subclass Members are small in comparison to the expense and burden of individual prosecution of this litigation. Additionally, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments.

50. Plaintiffs request that the Court direct the Defendants Randstad and Robert Half to send notice to all members of the proposed Classes and Subclasses, as Defendants Randstad and Robert Half can readily contact all members of the Proposed Classes all of whom work in California and have regular, marginally-costless (i.e. email) contact with the Defendants.

## V. GENERAL ALLEGATIONS

51. During all, or a portion, of the Class Period, Plaintiffs WRIGHT and POULIOT and each member of the Proposed Randstad Class and Subclasses were employed by Defendant Randstad in the State of California.

52. During all, or a portion, of the Class Period, Plaintiff UBERTI and each member of the Proposed Robert Half Class and Subclasses were employed by Defendant Robert Half in the State of California.

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al

53. Plaintiffs and each of the Proposed Classes and Subclass Members were non-exempt employees covered under one or more Industrial Welfare Commission (IWC) Wage Orders, including Wage Order 4- 2000, 4-2001 ("Wage Orders"), Cal. Lab. Code section 510, and/or other applicable wage orders, regulations and statutes.

54. Each Member of the Proposed Classes and Subclasses were not subject to an exemption for computer, executive, administrative or professional employees, which imposed an obligation on the part of the Defendants to pay Plaintiffs and members of the proposed Classes lawful overtime and provide mandatory meal and rest breaks.

**As to the Randstad Meal Period Subclass:**

55. During the Class Period, Defendants Randstad and PFG were obligated to provide its employees working over ten hours in one day with a second thirty minute meal break for which all work is relieved.

56. Plaintiffs WRIGHT and POULIOT and Members of the Randstad Meal Break Subclass regularly worked in excess of ten hours per day but were denied the opportunity to take their second thirty minute meal break.

57. Plaintiffs WRIGHT and POULIOT have each requested access to their weekly time sheets in order to determine on how many occasions and on what dates they worked in excess of ten hours in one day without being provided with a second thirty minute meal break; however, Defendants Randstad and PFG have refused to grant Plaintiffs such access.

58. Plaintiff WRIGHT estimates that he worked in excess of ten hours on twenty (20) occasions, and Plaintiff POULIOT estimates ninety-six (96) occasions.

59. Defendants PFG and Randstad failed to have any policy whatsoever governing the second thirty-minute meal break; failed to post notice in a conspicuous location informing the Plaintiffs WRIGHT and POULIOT and Randstad Meal Break Subclass Members of their right to a second thirty minute meal break; and to ensure that the Plaintiffs WRIGHT and POULIOT and Randstad Class Members were made aware of their right to a second thirty minute meal break.

53.   Plaintiffs and each of the Proposed Classes and Subclass Members were non-exempt employees covered under one or more Industrial Welfare Commission (IWC) Wage Orders, including Wage Order 4- 2000, 4-2001 ("Wage Orders"), Cal. Lab. Code section 510, and/or other applicable wage orders, regulations and statutes.

54.   Each Member of the Proposed Classes and Subclasses were not subject to an exemption for computer, executive, administrative or professional employees, which imposed an obligation on the part of the Defendants to pay Plaintiffs and members of the proposed Classes lawful overtime and provide mandatory meal and rest breaks.

**As to the Randstad Meal Period Subclass:**

55.   During the Class Period, Defendants Randstad and PFG were obligated to provide its employees working over ten hours in one day with a second thirty minute meal break for which all work is relieved.

56.   Plaintiffs WRIGHT and POULIOT and Members of the Randstad Meal Break Subclass regularly worked in excess of ten hours per day but were denied the opportunity to take their second thirty minute meal break.

57.   Plaintiffs WRIGHT and POULIOT have each requested access to their weekly time sheets in order to determine on how many occasions and on what dates they worked in excess of ten hours in one day without being provided with a second thirty minute meal break; however, Defendants Randstad and PFG have refused to grant Plaintiffs such access.

58.   Plaintiff WRIGHT estimates that he worked in excess of ten hours on twenty (20) occasions, and Plaintiff POULIOT estimates ninety-six (96) occasions.

59.   Defendants PFG and Randstad failed to have any policy whatsoever governing the second thirty-minute meal break; failed to post notice in a conspicuous location informing the Plaintiffs WRIGHT and POULIOT and Randstad Meal Break Subclass Members of their right to a second thirty minute meal break; and to ensure that the Plaintiffs WRIGHT and POULIOT and Randstad Class Members were made aware of their right to a second thirty minute meal break.

60.   Additionally, Plaintiffs WRIGHT and POULIOT and Members of the Randstad Class were required to record their hours on two separate trackers.  One was a handwritten tracker kept by Defendant PFG, and the other was an electronic time keeping tracker located on Defendant Randstad's website.  Neither of the time keeping trackers provided space to record a second thirty-minute meal break, and in fact only provided sufficient space to mark one meal break per day.

61.   Plaintiffs WRIGHT and POULIOT were informed that Defendant PFG's tracker was used to confirm the employees hours.  Defendant PFG and Randstad instructed Plaintiffs WRIGHT and POULIOT that the time written on Defendant PFG's time sheet had to match the time indicated on Defendant Randstad's time keeping system, otherwise delays in payment of wages would result.

62.   Defendants PFG's and Randstad's conduct and omissions concealed from Plaintiffs WRIGHT and POULIOT and Members of the Randstad Meal Break Subclass their right to a second thirty minute meal break for days on which over ten hours were worked.

63.   Defendants PFG's and Randstad's concealment of this right is equivalent to enforcing a uniform policy of denying Plaintiffs WRIGHT and POULIOT and Meal Break Subclass Members their right to take a second thirty minute meal break for days in which over ten hours was worked.

64.   Plaintiffs WRIGHT and POULIOT and Members of the Randstad Meal Break Subclass were also denied their right to a second thirty minute meal break on the days in which over ten hours would have been worked, had it not been for the Defendant Randstad's unnecessary rounding up of the Plaintiffs WRIGHT's and POULIOT's and Randstad Meal Break Subclass Members' "punch-in" time.

**As to the Weighted Overtime Subclass:**

65.   During the Class Period, Defendants Randstad and PFG were obligated by Cal. Lab. Code section 201.3 to provide its employees with payment for wages no later than the pay period following the week in which the wages were earned.

66.   Defendants PFG and Randstad failed to properly account for and pay wages timely on multiple occasions.  Defendants PFG's and Randstad's first  violation of Cal. Lab. Code

section 201.3 affected Plaintiff POULIOT and was the result of a policy enacted by Defendant Randstad to underpay overtime compensation to Plaintiff POULIOT and Members of the Weighted Overtime Subclass.

67.   The scheme was set up and perpetuated in the following manner:

a. Defendant Randstad, without informing Plaintiff POULIOT or Weighted Overtime Subclass Members, provided compensation to them at a rate of $8.00 per hour for the one-half hour spent interviewing for a position on the Project, but only paid those Randstad employees that were hired to work on the project.

b. Defendant Randstad employed a policy of "waiting four to five weeks" before paying the $4.00 earned by Plaintiff POULIOT and the Weighted Overtime Subclass Members for the interview.

c. Defendant Randstad withheld the payment of the $4.00 interview wages until a time when Plaintiff POULIOT and Weighted Overtime Subclass Members were eligible for working almost certain overtime hours.

d. Defendant Randstad used the $4.00 payment to calculate "weighted overtime" by combining Plaintiff POULIOT and Weighted Overtime Subclass Members' pay rates ($8.00 per hour & $37.00 per hour in the case of Plaintiff POULIOT) to calculate a "Weighted Overtime" rate, which was less than the lawful overtime rate of pay.

e. Defendant Randstad then applied the insufficient Weighted Overtime rate to Plaintiff POULIOT's and Weighed Overtime Subclass members' then weekly overtime hours resulting in being paid a lesser amount for that week than they would have if the initial interview wages had been paid during the first pay week, as they should have been pursuant to Cal. Lab. Code § 201.3.

68.   Plaintiff POULIOT received his paycheck for the week ending on August 19th, 2012.

69.   The wage statement indicated that his overtime was being paid at the lower Weighted Overtime rate. Additionally, two employers, one of which was listed as "RNA_CAL_Interview Dummy Acct." with an address of "Dummy Worksite".

70.   On or around August 27th, 2012, Messenger Bruce Troupe came into the office and explained to Plaintiff POULIOT and Members of the Weighted Overtime Subclass the calculation of the Weighted Overtime rate. Their overtime had been weighted because they had been paid at two different rates for that week, $8.00 per hour for the initial interview and their regular rate of pay for the hours worked the previous week.

71.     Messenger Bruce Troupe also informed Plaintiff POULIOT and other Members of the Weighted Overtime Subclass that for this event and pay period alone, forty-two employees were affected by the Weighted Overtime scheme.

**As to the Weekend Bonus Subclass:**

72.     Defendants PFG's and Randstad's  second violation of Cal. Lab. Code section 201.3 occurred when they failed to pay Plaintiff POULIOT and Members of the Weekend Bonus Subclass their bonus wages in the week following that in which it was earned.

73.     On or around December 10th, 2012, Plaintiff WRIGHT attended a managers meeting where he was informed by the Defendants PFG and Randstad that they would be offering a $200.00 bonus to all employees who worked at least sixteen hours over the last three weekends in December 2012, and that the bonus was being offered in an effort to reach end-of-the-year production goals.

74.     Upon information and belief, Defendants PFG and Randstad instituted the Weekend Bonus to increase 'productivity' for the Project to increase year-end goals.

75.     Year-end goals include all productivity for the year that includes the year-end, specifically ending on or right before December 31 of the relevant year.  In the present case, the productivity would include all work during 2012 and completed by December 31, 2012.

76.     Defendants PFG and Randstad did not require any Member of the Weekend Bonus Subclass to work in excess of forty-hours to participate in and earn the Weekend Bonus.

77.     Plaintiff POULIOT and Members of the Weekend Bonus Subclass all worked at least sixteen hours over the last three weekends of December, 2012; however, neither Plaintiff POULIOT nor any Members of the Weekend Bonus Subclass were paid their bonus wages in the first week of January, 2013.

78.     Unilaterally and without notification, Defendants PFG and Randstad changed the terms of the Weekend Bonus incentive, claiming that the sixteen hours had to have been worked over the last two weekends in December, 2012, and the first weekend in January, 2013.

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al

79. Plaintiff POULIOT is informed and believes, and based thereon alleges that Defendants PFG and Randstad unilaterally altered the terms of the $200.00 weekend bonus in an effort to avoid having to pay him and Members of the Weekend Bonus Subclass the bonus that they had earned.

80. On or around January 1st, 2013, Plaintiff POULIOT and Proposed Randstad Class Members were informed via email by Celinda Scollo, Project Co-Manager, that no one could come in to work on Saturday, January 5th, due to a major software update that had just been scheduled; and that only those who were specifically invited could work a half day on Sunday, January 6th, provided the software update was successful.

81. Defendants PFG's and Randstad's conduct as alleged in ¶ 80 prohibited Plaintiff POULIOT and Members of the Weekend Bonus of performing even the Defendants PFG's and Randstad's altered terms of the Weekend Bonus.

82. Plaintiff POULIOT was finally paid his $200.00 bonus on January 22nd, 2013.

83. Plaintiff POULIOT still has not been paid the adjusted overtime attributable to the $200.00 weekend bonus.

**As to the $4000.00 Completion Bonus Subclass:**

84. Defendants PFG's and Randstad's third intentional violation of Cal. Lab. Code section 201.3 occurred when they failed to pay Plaintiffs WRIGHT and POULIOT and Members of the Completion Bonus Subclass their $4000.00 completion bonus the week following that in which it was earned.

85. Plaintiff POULIOT was first told about the $4000 bonus by Messenger Bruce Troupe over the phone on June 20th, 2012. This was again confirmed in person by Messengers Bruce Troupe and John Rappaport on June 27th, 2012 in Randstad's Irvine offices. The only condition placed upon receiving the bonus was that the employee had to remain on the project through its completion. Also, while Plaintiff POULIOT was being offered the position at PFG, he was told that the project was scheduled to go through the end of December, 2012, which was only six months after Plaintiff POULIOT's start date.

86. Members of the Completion Bonus Subclass were informed of the $4,000 Completion Bonus by communications with Defendant Randstad prior to and at the time of

employment and by agents of PFG and Randstad in the course of initiation and training for the Project.

87. On January 7th, 2013, Plaintiffs WRIGHT and POULIOT and Proposed Randstad and Robert Half Class Members were informed via email that the Project was being terminated, but that Defendant PFG was treating the project as if it had been successfully completed.

88. Plaintiffs WRIGHT and POULIOT and Proposed Randstad and Robert Half Class Members were asked to leave the premises, but that they would be getting paid for the remainder of the week.

89. Defendants PFG and Randstad stated that the Project was completed for all discharged employees on January 7th, 2013, invoking the $4,000 Completion Bonus promised to Plaintiffs WRIGHT and POULIOT and Members of the $4,000 Completion Bonus Subclass.

90. The $4000.00 completion bonus should have been paid by January 18th, 2013, which is the week following that in which it was earned.

91. Plaintiff WRIGHT was not paid his completion bonus until January 28th, 2013.

92. On or around January 28, 2013, ten (10) days after it was due, Plaintiff POULIOT was only paid $2071.44 out of the $4,000 Completion Bonus owed to him.

93. At various times after the Completion of the Project, Members of the Completion Bonus Subclass were paid varying amounts for the $4,000 Completion Bonus, but in nearly all cases less than the promised $4,000.

**As to the Incentive Bonus Subclass:**

94. On or around September 28th, 2012, Plaintiffs WRIGHT and POULIOT and Members of the Proposed Randstad Class working on the Project were informed that the Defendant PFG was instituting an Incentive Bonus which would pay Plaintiffs WRIGHT and POULIOT and Members of the Proposed Randstad Class working on the Project a specified amount per 'case' or 'issue' that they completed.

95. For each completed case, fifteen dollars would be paid to the Input Analyst and fifteen dollars would be paid to the Validation Analyst.

96. Quality Control Analysts were to be paid two dollars for each issue they completed. One dollar was to go to the Input QC Analyst and one dollar was to go to the Validation QC Analyst.

97. Quality Assurance Pass-Back Analysts were to receive three dollars for every "exception" they addressed.

98. Defendants PFG and Randstad strictly enforced and alleged they had fired employees for violations of the Confidentiality Agreements signed during the application, initiation and training processes.

99. Defendants PFG and Randstad enforced a policy forbidding Plaintiffs WRIGHT and POULIOT and Proposed Randstad Class Members working on the Project from taking any materials from the Project location, including any personal trackers created to keep track of earned Incentive Bonus wages.

100. Defendants PFG and Randstad were obligated to keep detailed trackers to record each of the Plaintiffs WRIGHT's and POULIOT'S and Subclass Members' Incentive Bonus earnings.

101. Plaintiffs WRIGHT and POULIOT have requested copies of the Trackers upon which Defendants PFG and Randstad relied when calculating their respective incentive bonuses.

102. Defendants PFG and Randstad have failed to provide copies of the Trackers, in any form electronic or otherwise.

103. With the effective discharge date of January 11, 2013, Defendants Robert Half, PFG and Randstad were obligated to pay Plaintiffs and Members of the Proposed Randstad and Robert Half Classes their incentive bonus by January 18th, 2013, which was the week following that in which the Incentive Bonus was earned.

104. Defendants PFG and Randstad did not pay any portion of the incentive bonus until January 25th, 2013.

105. Plaintiff WRIGHT was paid $2,417.00.

106. As a member of the most productive team in the Project, Plaintiff WRIGHT is informed and believes, and based thereon alleges that his Tracker, if it would have been provided,

would document an Incentive Bonus that far exceeds the amount paid, totaling approximately $7,500.

107.   Plaintiff POULIOT was paid a total of $3,197.00.

108.   As a member of the most productive team working on the Project, Plaintiff POULIOT is informed and believes, and based thereon alleges that his Tracker, if it would have been provided, would document an Incentive Bonus that far exceeds the amount paid, totaling approximately $5,200.

**As to the Waiting Time Subclass:**

109.   Plaintiffs WRIGHT, POULIOT and UBERTI and Proposed Randstad and Robert Half Class and Subclass Members ended their employment with the Defendants Randstad, Robert Half and PFG during the Class Period, but they were not paid all of their wages due upon the termination of their employment as required by Cal. Lab. Code sections 201-203.

110.   Plaintiffs are informed and believe, and based thereon allege, that Defendants Robert Half's, PFG's and Randstad's failure to pay its discharged employees all of their wages due was willful and systematic, and that it affected all Members of the Proposed Randstad and Robert Half Classes working on the Project, entitling them to penalties as provided by Cal. Lab. Code section 203.

**As to the "Time Rounding Subclass":**

111.   For the duration of the Class Period, the Defendants Randstad and PFG utilized a computer time system for wage-payment purposes until approximately December 1, 2012, that would round the time entered by the employee to the nearest fifteen minutes.

112.   Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege that Defendants Randstad and PFG utilized their Time Rounding System in order to retain wages that were owed to Plaintiff WRIGHT and POULIOT and the Randstad Class Members.

113.   Defendant Randstad's and PFG's Time Rounding Scheme was set up in a manner which resulted in the underpayment of overtime wages to the Plaintiffs WRIGHT and POULIOT and Randstad Class Members.  The Time Rounding System rounded the

punch-in and punch-out times to the nearest quarter hour. However, even if the time keeping system rounded the start-time up the exact number of times that it rounded the start-time down, and rounded the end-time up the exact number of times that it rounded the end-time down, the underpayment of overtime wages would still result. This is because of the fact that rounding the start time down and the end time up resulted in the overpayment of the Plaintiffs WRIGHT's and POULIOT's and Time Rounding Subclass Members' for up to fifteen minutes *at the regular rate of pay*; while rounding the start time up and end time down resulted in the underpayment of the Plaintiffs' and Subclass Members' for up to fifteen minutes *at the overtime rate of pay*.

114.   The Plaintiffs WRIGHT and POULIOT and the Time Rounding Subclass Members have all been denied full compensation for all overtime wages earned, denied mandatory meal and rest breaks and provided with inaccurate wage statements due to Defendants PFG's and Randstad's unlawful time rounding scheme.

115.   Once Plaintiffs WRIGHT and POULIOT and Time Rounding Subclass Members working on the Project entered the Defendant PFG's controlled-access door, they had to retrieve their confidential binder from the 'vault,' walk to their supervisors workstation, walk to their assigned workstation, 'boot' their computer, enter log-in credentials to the network, enter log-in credentials for the system, enter log-in credentials for the Randstad Workstation and finally click on 'start time.'

116.   Plaintiffs WRIGHT and POULIOT are informed and believe, and based there on allege, that it took them a minimum of seven minutes from the time they entered the Defendant's controlled access door until they were able to access the time keeping system to "clock-in".

117.   Defendant Randstad's time keeping system was completely computerized and fully capable of accurately recording and maintaining accurate records of the exact time the Plaintiffs WRIGHT and POULIOT and Time Rounding Subclass Members punched in and punched out for work. Thus, the Defendant Randstad was not hassled with having to manually calculate the Plaintiffs' and Subclass Members' hours and wages.

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al

**As to the Randstad and Robert Half Unpaid Initial Interview Subclasses:**

118.   Plaintiff WRIGHT and Members of the Randstad Unpaid Initial Interview Subclass were and are entitled to compensation for all time spent under Defendants Randstad's control, including the time spent interviewing for employment with Defendant Randstad's current and potential clients.

119.   Plaintiff UBERTI and Members of the Robert Half Unpaid Initial Interview Subclass were and are entitled to compensation for all time spent under Defendants Robert Half's control, including the time spent interviewing for employment with Defendant Robert Half's current and potential clients.

120.   During the Class Period, Plaintiff WRIGHT and Members of the Randstad Unpaid Initial Interview Subclass, and Plaintiff UBERTI and Members of the Robert Half Unpaid Initial Interview Subclass were all denied compensation for their time spent interviewing for potential employment with Defendants Robert Half's and Randstad's clients.

121.   Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege that Defendant Randstad only began paying its employees working on the Project for the time spent interviewing after they came up with their weighted overtime scheme, and that Defendant Randstad immediately ceased paying its employees for the time spent interviewing once their weighted overtime scheme was discovered as described above.

122.   Plaintiff WRIGHT and Members of the Randstad Unpaid Initial Interview Subclass, and Plaintiff UBERTI and Members of the Robert Half Unpaid Initial Interview Subclass are informed and believe, and allege based thereon that Defendants Robert Half and Randstad are continuing to fail to pay their employees compensation for the time spent interviewing on their behalf.

# VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Failure to Pay Lawful Wages in Violation of Lab. Code §§ 510; 1194, 1197 & 1198;
(Against Defendants PFG, Randstad and Does 1-100; and on Behalf of the Plaintiffs
WRIGHT and POULIOT and Members of the Randstad "Time Rounding", "Weighted
Overtime" and "Adjusted Overtime" Subclasses)**

123. Plaintiffs incorporate the allegations contained in paragraphs 1 - 122 of this complaint as if fully alleged herein.

124. Industrial Welfare commission Wage Order 4-2001, § 3 requires an employer to pay an employee "one and one-half (1 ½ ) times the employee's regular rate of pay for work in excess of 8 hours, but not more than 12 hours, per day, and "[d]ouble the employee's regular rate of pay" for all work in excess of 12 hours per day. Cal. Lab. Code § 510 similarly mandates that "...Any work in excess of eight hours in one workday and any work in excess of forty hours in any one workweek and the first eight hours on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."

125. Cal. Lab. Code § 1197 states that The "minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

126. Cal. Lab. Code § 1194(a) provides that "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit, as well as any employee statutory fines associated therewith, pursuant to Cal. Lab. Code.

127. Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege that Defendants PFG's and Randstad's Time Rounding scheme resulted in the Defendants PFG and Randstad keeping inaccurate records and providing the Plaintiffs WRIGHT and POULIOT and Time Rounding Subclass Members with inaccurate wage

statements, and that the Plaintiffs WRIGHT and POULIOT and Time Rounding Subclass Members were denied full and timely compensation for all wages earned.

128.   Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege that Defendants PFG's and Randstad's systematic underpayment of wages earned pursuant to the Weekend, Completion and Incentive Bonuses, their failure to accurately calculate the overtime attributable to the Bonuses at the lawful overtime rate of one and a half times the regular rate of pay, and the perpetuation of their weighted overtime scheme and unlawful time-rounding scheme has resulted in the Plaintiffs WRIGHT and POULIOT and Members of the Weighted Overtime, Adjusted Overtime and Time-Rounding Subclasses receiving overtime compensation at less than the lawful rate.

129.   Plaintiff POULIOT and Members of the Weighted Overtime Subclass were all paid less than the legal overtime rate due to Defendants PFG's and Randstad's unlawful weighted overtime scheme.  Plaintiff POULIOT's hourly rate of pay was $37.00 per hour, which made his overtime rate of pay $55.50 per hour.  However, for the week ending on August 19th, 2013, the Defendants PFG's and Randstad's unlawful weighted overtime scheme resulted in Plaintiff POULIOT only being compensated for overtime at a rate of $55.15 per hour.

130.   Plaintiffs WRIGHT and POULIOT and Members of the Adjusted Overtime Subclass were all entitled to payment of the adjusted overtime attributable to the Weekend, Completion and Incentive Bonuses; based upon the calculation enforced under the Division of Labor Standards Enforcement, Enforcement Policies and Interpretation Manual ("DLSE Manual").

131.   As of the date of the filing of this action Plaintiffs WRIGHT and POULIOT and Members of the Adjusted Overtime Subclass have not been paid the full amount of their adjusted overtime wages calculated in accordance with the DLSE Manual.

132.   Plaintiff WRIGHT, after discharge from the Project, was paid one payment of "overtime earnings" in the amount of $27.23.

133.   Plaintiff WRIGHT has not been paid the full amount of his adjusted overtime wages calculated in accordance with the DLSE Manual.

134. Plaintiff POULIOT received two payments, $212.60 and $373.52, on 02/07/2013 and 02/04/2013, respectively, with no indication of the category of wages nor the basis of the calculation that determined these amounts.

135. Plaintiff POULIOT and WRIGHT and Members of the Weighted Overtime and Adjusted Overtime Subclasses are entitled to compensation for overtime work performed for the Defendants at the lawful rate of one and a half times the regular rate of pay, in an amount according to proof.

136. As a direct and proximate result of defendant Randstad's and PFG's conduct in violation of Cal. Lab. Code sections 510 & 1194, the Plaintiffs WRIGHT and POULIOT and Members of the Weighted Overtime, Adjusted Overtime, and Time Rounding Subclasses have suffered, and continue to suffer, losses related to the use and enjoyment of wages and lost interest on such wages all to their damage in amounts according to proof at trial.

137. As a direct and proximate result of defendants' conduct in violation of Cal. Lab. Code section 1194, Plaintiffs WRIGHT and POULIOT and Members of the Weighted Overtime, Adjusted Overtime, and Time Rounding Subclasses are entitled to recover liquidated damages pursuant to Cal. Lab. Code §1194.2, in an amount equal to the unpaid minimum wages according to proof at trial.

138. Pursuant to Cal. Lab. Code section 1194(a), Plaintiffs WRIGHT and POULIOT seek the payment of all unpaid wages, including overtime compensation, which they earned and accrued, including overtime attributable to the three non-discretionary bonuses, the amount of which will be shown at trial.

## SECOND CAUSE OF ACTION
**Failure to Pay Minimum Wage: Cal. Cal. Lab. Code §§ 1194, 1194.2, 1197 & 1197.1
(Against Defendants Robert Half, Randstad and Does 1-100; and on Behalf of the Plaintiffs
UBERTI, WRIGHT and POULIOT and Members of the Robert Half and Randstad
"Unpaid Interview Subclasses"**

139. Plaintiffs WRIGHT, POULIOT & UBERTI incorporate paragraphs 1-122 & 126-138 of this complaint as if fully alleged herein.

140. Industrial Welfare Commission Wage Order 4-2001, § 4 and Cal. Lab. Code Section 1197 establishes the right of employees to be paid minimum wages for their work, in

amounts set by state law.  Cal. Lab. Code §§ 1194(a) and 1194.2(a) provide that an employee who has not been paid the legal minimum wage as required by Cal. Lab. Code § 1197 may recover the unpaid balance together with attorneys' fees and costs of suit, as well as liquidated damages in an amount equal to the wages unpaid and interest thereon.

141.    Plaintiff WRIGHT and POULIOT and Members of the Randstad Unpaid Interview Subclass all went and interviewed for potential employment with Defendant Randstad's current and potential clients. Plaintiffs WRIGHT and POULIOT and all Members of the Randstad Unpaid Interview Subclass were subject to the control of Defendant Randstad while interviewing on their behalf.  Randstad scheduled all interviews, including the date, time and location of each interview.  Further, Defendant Randstad coached, trained and otherwise prepared Plaintiffs WRIGHT and POULIOT and Members of the Randstad Unpaid Interviews Subclass for their interviews.  Plaintiff WRIGHT spent roughly thirty minutes interviewing for his position on the Project on or around September 15th, 2011; and Plaintiff POULIOT spent roughly thirty minutes interviewing for his position on the Project on or around June 25th, 2012.

142.    Plaintiff UBERTI and Members of the Robert Half Unpaid Interview Subclass all went and interviewed for potential employment with Defendant Robert Half's current and potential clients, but were not compensated for the time they spent subject to and under the control of Defendant Robert Half. Plaintiff UBERTI and all Members of the Robert Half Unpaid Interview Subclass were subject to the control of Defendant Robert Half while interviewing on their behalf.  Robert Half scheduled all interviews, including the date, time and location of each interview.  Further, Defendant Robert Half coached, trained and otherwise prepared Plaintiff UBERTI and Members of the Robert Half Unpaid Interviews Subclass for their interviews. Plaintiff UBERTI spent roughly 30 minutes interviewing for his position on the Project on or around December 20th, 2012.

143.    As a direct and proximate result of defendant Randstad's and Robert Half's conduct in violation of Cal. Lab. Code sections 1194 & 1197, the Plaintiffs WRIGHT and POULIOT and Members of the Randstad Unpaid Interview Subclass; and Plaintiff UBERTI and Members of the Robert Half Unpaid Interview Subclass, have suffered, and continue to suffer, losses related to the use and enjoyment of wages and lost interest on such wages all to their damage in amounts according to proof at trial.

144.   As a direct and proximate result of defendants' conduct in violation of Cal. Lab. Code sections 1194 & 1197, Plaintiffs WRIGHT and POULIOT and Members of the Randstad Unpaid Interview Subclass; and Plaintiff UBERTI and Members of the Robert Half Unpaid Interview Subclass, are entitled to recover liquidated damages pursuant to Cal. Lab. Code §1194.2 & 1197.1, in an amount equal to the unpaid wages, according to proof at trial.

145.   Pursuant to Cal. Lab. Code section 1194(a), Plaintiffs WRIGHT, POULIOT & UBERTI seek attorneys' fees and costs of suit, as well as prejudgment interest, according to proof.

### THIRD CAUSE OF ACTION
**Failure to Provide Accurate Wage Statements:  Cal. Lab. Code § 226 et seq.;**
**(Against Defendants Robert Half, PFG, Randstad and Does 1-100; and on Behalf of**
**Plaintiffs UBERTI and Members of the Robert Half Wage Statement Subclass; and**
**on Behalf of Plaintiffs WRIGHT and POULIOT and Members of the Randstad**
**Wage Statement Subclass)**

146.   Plaintiffs incorporate paragraphs 1-122, 126-33 & 137-39 of this complaint as if fully alleged herein.

147.   Cal. Cal. Lab. Code section 226(a)  provides: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if

the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment..." (Lab. Code § 226(a)).

148.   Defendant Robert Half failed to provide Plaintiff UBERTI and Members of the Robert Half Wage Statement Subclass with accurate wage statements for all hours worked, as required by Cal. Lab. Code § 226(a).

149.   Defendant Randstad failed to provide Plaintiffs WRIGHT and POULIOT and Members of the Randstad Wage Statement Subclass with accurate wage statements for all hours worked, as required by Cal. Lab. Code § 226(a).

150.   Plaintiff UBERTI and Members of the Robert Half Wage Statement Subclass; and Plaintiffs WRIGHT and POULIOT and Members of the Randstad Wage Statement Subclass were entitled to payment of all interview wages and receipt of accurate wage statements no later than one week after the end of the week in which the wage was earned.

151.   As of the date of the filing of this complaint, Plaintiff UBERTI has not been provided with accurate wage statements compliant with Cal. Lab. Code §226(a) for the wages he earned while interviewing with PFG on behalf of Defendant Robert Half.

152.   As of the date of the filing of this complaint, Plaintiff WRIGHT has not been provided with accurate wage statements compliant with Cal. Lab. Code § 226(a) for the wages he earned while interviewing with PFG on behalf of the Defendant Randstad.

153.   Plaintiff POULIOT and affected Randstad Wage Statement Subclass Members were not paid their initial interview wage until August 19th, 2012, which is over six weeks later than when the wages were earned. Further, when Plaintiff POULIOT and affected Randstad Wage Statement Subclass Members were finally provided with compensation for their initial interview wages, the wage statements provided to them were not

compliant with Cal. Lab. Code § 226(a) due to Defendant Randstad Unlawful Weighted Overtime Scheme.

154.   Defendant PFG's and Randstad's payment to Plaintiff POULIOT and affected Members of the Wage Statement Subclass of the initial interview wage on August 19, 2012 had the effect of making all prior wage statements inaccurate for all applicable hourly rates in effect during the pay period(s) and the corresponding number of hours worked at each hourly rate by the employee, as required by Cal. Lab. Code §226(a)(6).

155.   Defendants PFG and Randstad provided to Plaintiff POULIOT and affected Wage Statement Subclass Members for the pay period ending on August 19th, 2013, wage statements that failed to meet the requirements of Cal. Lab. Code 226(a) because it inaccurately reported the employees' overtime rate of pay and other crucial data pertaining to the amount of wages earned for that week and the total amount of wages earned for the year.

156.   Defendants PFG and Randstad failed to correct the inaccuracies on the then current and subsequent wage statements.

157.   Defendants PFG's and Randstad's failure to correct Plaintiff POULIOT and affected Members of the Wage Statement Subclasses' wage statements violates the requirements of Cal. Lab. Code 226(a), because the information on the wage statements did not accurately document, among other wage information, the employees' overtime rate of pay, and total wages earned for the week and year.

158.   As a result of their discharge from the Project, Plaintiffs POULIOT and WRIGHT and Members of the Randstad Wage Statement Subclass were entitled to the payment of all earned, undisputed, and adjusted wages on or before January 18, 2013, including the payment of the three Bonuses and adjusted overtime attributable to each bonus.

159.   The Plaintiffs WRIGHT and POULIOT and Members of the Randstad Wage Statement Subclass received a wage statement for the pay period ending January 13, 2013 that omitted earned and undisputed "adjusted overtime wages."

160.   The wage statements provided by the Defendant Randstad to the Plaintiffs WRIGHT and POULIOT and Members of the Randstad Wage Statement Subclass for the pay period

ending January 13, 2013 were inaccurate because, among other items, the Defendants PFG and Randstad failed to account for and pay the three Bonuses and overtime adjustments in the week following that in which they were earned.

161.   Defendants PFG's and Randstad's intentional failure to pay the three Bonuses and overtime adjustments in the week following that in which they were earned resulted in the Plaintiffs WRIGHT and POULIOT and Members of the Randstad Wage Statement Subclass being provided with wage statements that failed to meet the requirements of Cal. Lab. Code § 226(a).

162.   The wage statements for the bonuses and overtime adjustments that were provided to the Plaintiffs WRIGHT and POULIOT and Members of the Randstad Wage Statement Subclass failed to provide the inclusive dates of the period for which the employee was paid and failed to provide all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee, as required by Cal. Lab. Code §226(a)(6) and §226(a)(9).

163.   Additionally, Plaintiffs WRIGHT and POULIOT and Members of the Randstad Time Rounding Subclass were provided inaccurate wage statements for each pay period that they were subjected to Defendants PFG's and Randstad's unlawful time rounding scheme.  Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege, that Defendants, PFG and Randstad, utilized their unlawful time rounding scheme from the beginning of the Project in 2011 through December of 2012.

164.   Plaintiff UBERTI and Members of the Robert Half Wage Statement Subclass; and Plaintiffs WRIGHT and POULIOT and Members of the Randstad Wage Statement Subclass  have all suffered injury as defined in Cal. Lab. Code 226(e)(2)(B)(i), which provides: An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:

          (i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized

wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).

165.   The full extent of the harm suffered by Plaintiff UBERTI and Members of the Robert Half Wage Statement Subclass; and Plaintiffs WRIGHT and POULIOT and Members of the Randstad Wage Statement Subclass from Defendants PFG's, Robert Half's and Randstad's failure to comply with Cal. Lab. Code § 226 will be shown at the time of trial.

166.   Pursuant to Cal. Lab. Code section 226(e), the Plaintiffs UBERTI and Members of the Robert Half Wage Statement Subclass, and Plaintiffs WRIGHT and POULIOT and Members of the Randstad Subclass are entitled to and seek penalties as follows:

   a. Fifty dollars ($50.00) per employee for the initial pay period in which a violation occurs; and

   b. One hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not to exceed $4000.00

167.   Pursuant to Cal. Lab. Code section 226(g), the Plaintiffs WRIGHT and POULIOT are entitled to injunctive relief to ensure Defendants Randstad's compliance with Cal. Lab. Code section 226.

168.   Pursuant to Cal. Lab. Code section 226(g), Plaintiff UBERTI is entitled to injunctive relief to ensure Defendants Robert Half's compliance with Cal. Lab. Code section 226.

169.   Plaintiffs are also entitled to and seek reasonable attorney's fees and costs as provided for in Cal. Lab. Code §226(h), as well as prejudgment interest, according to proof.

### FOURTH CAUSE OF ACTION
### Failure to Provide Mandatory Meal Beaks Pursuant to Lab. Code §§ 512, 226.7, &  IWC Wage Order No. 4-2001
### (Against Defendants PFG, Randstad and Does 1-100 and on Behalf of the Plaintiffs WRIGHT and POULIOT and Members of the Randstad Meal Break Subclass)

170.   Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-122 of this complaint as if fully alleged herein.

171.   Plaintiffs WRIGHT and POULIOT and Members of the Randstad Meal Break Subclass were entitled under Cal. Lab. Code §512 and IWC Wage Order No. 4-2001 to a second

30 minute unpaid meal break relieving them of all responsibilities for each day in which over ten hours were worked.

172.  Defendants PFG and Randstad failed to post information at the Project site in a place reasonably likely to be seen by the employees, nor informed Plaintiffs WRIGHT and POULIOT and Randstad Meal Break Subclass Members through initiation, training, meetings or other means of communication regarding their rights under Cal. Lab. Code §512 and IWC Wage Order No. 4-2001.

173.  Defendants PFG's and Randstad's time keeping system only provided the Plaintiffs WRIGHT and POULIOT and Meal Break Subclass Members sufficient space on the computerized and hard-copy time-cards to enter one meal break per day.

174.  By failing to post or provide to the Plaintiffs WRIGHT and POULIOT and Randstad Meal Break Subclass Members timely and accurate meal-break information, Defendants, PFG and Randstad, have violated Lab. Code § 226.7(a), which provides: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

175.  Plaintiffs WRIGHT and POULIOT and Members of the Randstad Time Rounding Subclass were also denied mandatory rest period and meal breaks for the days in which over ten hours were worked each time that Defendants PFG's and Randstad's time rounding scheme resulted in the under reporting of the true amount of hours that Plaintiffs WRIGHT and POULIOT and Randstad Time Rounding Subclass Members worked.

176.  Plaintiffs WRIGHT and POULIOT and Randstad Meal Break Subclass Members are entitled to and seek wages pursuant to Lab. Code 226.7(b), which states: "If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

177.  Plaintiffs also seek attorneys' fees, costs of bringing this suit and prejudgment interest, according to proof.

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al

33

## FIFTH CAUSE OF ACTION
### Breach of Weekend Bonus Contract
#### (Against Defendants PFG, Randstad and Does 1-100; and on Behalf of Plaintiff POULIOT and Members of the "Weekend Bonus Subclass")

178. Plaintiff POULIOT incorporates paragraphs 1-122 of this complaint as if fully alleged herein.

179. On or around December 10th 2012, Defendants PFG and Randstad made a valid offer to Plaintiff POULIOT and Members of the Weekend Bonus Subclass, consisting of a $200.00 bonus in consideration for working a minimum of sixteen hours over the last three weekends of December, 2012 ("Weekend Bonus").

180. Commencing on December 16, 2012, Plaintiff POULIOT and Members of the Randstad Weekend Bonus Subclass accepted Defendants PFG's and Randstad's offer when they started accumulating their first hours toward the sixteen hour goal, which created a binding and enforceable unilateral contract.

181. The Weekend Bonus was due and payable to Plaintiff POULIOT and the Randstad Weekend Bonus Subclass no later than Friday January 4, 2012.

182. Defendants PFG and Randstad failed to pay Plaintiff POULIOT and the Members of the Randstad Weekend Bonus Subclass on January 4, 2012.

183. Defendants PFG and Randstad materially breached the terms of the unilateral contract and acted in bad faith when they attempted to unilaterally modify the terms of the weekend bonus by changing the "last three weekends in December, 2012" to "the last two weekends in December 2012 and the first weekend in January 2013."

184. Plaintiff POULIOT and Members of the Randstad Weekend Bonus Subclass have been financially injured by Defendants PFG's and Randstad's bad faith breach of contract, and as such are entitled to compensatory damages to place them in the position they would have been if not for Defendants PFG's and Randstad's, breach, according to proof.

185. Plaintiff POULIOT is also entitled to and seek reasonable attorney's fees and costs as provided for in Cal. Lab. Code §218.5, as well as prejudgment interest as provide for in Cal. Lab. Code § 218.6, according to proof.

## SIXTH CAUSE OF ACTION
### Breach of Completion Bonus Contract
### (Against Defendants PFG, Randstad and Does 1-100; and on Behalf of Plaintiff POULIOT and Members of the Completion Bonus Subclass)

186.   Plaintiff POULIOT incorporates paragraphs 1-122 & of this complaint as if fully alleged herein.

187.   Prior to accepting employment, Plaintiff POULIOT and Members of the Randstad Completion Bonus Subclass were offered a $4,000.00 "Completion Bonus" by the Defendants PFG and Randstad if they were to remain on the Project through its completion ("Completion Bonus").

188.   Plaintiff POULIOT and Members of the Randstad Completion Bonus Subclass accepted Defendants PFG's and Randstad's offer, forming a valid and enforceable unilateral contract, when they accepted and commenced employment on the Project with Defendants PFG and Randstad.

189.   Plaintiff POULIOT and Members of the Randstad Completion Bonus Subclass fulfilled the terms of the unilateral contract by remaining on the Project through its completion.

190.   Defendants PFG and Randstad materially breached the terms of the contract and acted in bad faith when they unilaterally modified the terms of the Completion Bonus by adding a requirement of working on the Project for at least one year in order to earn the entire $4,000.00.

191.   Plaintiff POULIOT and Members of the Randstad Completion Bonus Subclass have suffered financial injury as a result of Defendants PFG's and Randstad's, bad faith breach, and as such are entitled to compensatory damages sufficient to put them in the place they would have been if not for Defendants PFG's and Randstad's material breach of the Completion Bonus contract.

192.   Plaintiff POULIOT is also entitled to and seek reasonable attorney's fees and costs as provided for in Cal. Lab. Code §218.5, as well as prejudgment interest as provided for in Cal. Lab. Code § 218.6, as wells as any statutory penalties under the Cal. Lab. Code, according to proof.

## SEVENTH CAUSE OF ACTION
### Breach of Incentive Bonus Contract
**(Against Defendants PFG, Randstad and Does 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT and Members of the Randstad "Incentive Bonus Subclass")**

193.   Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-122 of this complaint as if fully alleged herein.

194.   On or around September 28th, Defendants PFG and Randstad informed Plaintiffs WRIGHT and POULIOT and Members of the Randstad Incentive Bonus Subclass that, beginning October 1st, 2012, they would be offering an Incentive Bonus that would provide Plaintiffs WRIGHT and POULIOT and Members of the Randstad Incentive Bonus Subclass additional compensation "based on issues worked for cases completed". Thirty dollars would be paid for completed cases containing issues "Q3, Q4, Q9, or Q11"; three dollars would be paid for completed cases containing issue "Q6"; six dollars would be paid for completed cases containing issues "Q7/Q10H"; ten dollars would be paid for completed cases containing "Q10"; and two dollars would be paid for each issue completed by the "QC Review" and two dollars for each "Pass-back" completed.

195.   Plaintiffs WRIGHT and POULIOT and Members of the Randstad Incentive Bonus Subclass accepted Defendants PFG's and Randstad's offer and formed a valid and enforceable contract by completing issues and cases pursuant to the terms of the Incentive Bonus.

196.   Defendants PFG and Randstad materially breached the terms of the Incentive Bonus contract, and acted in bad faith, by failing to keep accurate records of how many issues and cases each employee completed; by forcing Plaintiffs WRIGHT and POULIOT and Members of the Incentive Bonus Subclass to complete issues and cases multiple times without providing compensation to each employee that completed issues and cases; by forbidding Plaintiffs WRIGHT and POULIOT and Randstad Incentive Bonus Subclass Members from keeping copies of their personal trackers to confirm Defendants PFG's and Randstad's calculations; by refusing to inform Plaintiffs WRIGHT and POULIOT and Members of the Randstad Incentive Bonus Subclass how the amount they were paid

was calculated; and by not paying the Plaintiffs WRIGHT and POULIOT and Members of the Randstad Incentive Bonus Subclass on time and in the full amount.

197.   Plaintiffs WRIGHT and POULIOT and Members of the Randstad Incentive Bonus Subclass have suffered financial injury due to Defendants PFG's and Randstad's bad faith breach, and as such are entitled to compensatory damages in an amount sufficient to place them in the position they would have been if not for Defendants PFG's and Randstad's bad faith breach.

198.   Plaintiffs WRIGHT and POULIOT and Members of the Randstad Incentive Bonus Subclass are entitled to an itemized list of each case and issue that they completed, regardless of how many times Defendants PFG and Randstad forced Plaintiffs WRIGHT and POULIOT and Randstad Incentive Bonus Subclass Members to complete each case, and an accounting of how the Incentive Bonuses were finally calculated.

199.   Plaintiffs WRIGHT and POULIOT are also entitled to reasonable attorney's fees and costs of bringing this action, per Cal. Lab. Code § 218.5, to prejudgment interest pursuant to Cal. Lab. Code § 218.6, as well as any statutory penalties and relief available under the Cal. Lab. Code, according to proof.

## EIGHTH CAUSE OF ACTION
### Waiting Time Penalties Pursuant to Cal. Lab. Code § 203
**(Against Defendants PFG, Robert Half, Randstad and Does 1-100; and on Behalf of Plaintiff UBERTI and Members of the Robert Half "Waiting Time Subclass"; and on Behalf of Plaintiffs WRIGHT and POULIOT and Members of the Randstad "Waiting Time Subclass")**

200.   Plaintiffs incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

201.   Pursuant to Cal. Lab. Code Section 201(a): "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately". Cal. Lab. Code Section 201.3(b) clarifies that "…if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed

to have timely paid wages upon completion of an assignment if wages are paid in compliance with this subdivision."

202. Defendants PFG and Randstad have intentionally and systematically failed to provide the Plaintiffs WRIGHT and POULIOT and Members of the Randstad Waiting Time Subclass all of their wages earned. Plaintiffs WRIGHT and POULIOT are informed and believe, and allege based thereon that Defendants PFG and Randstad intentionally acted in this manner in order to secure for themselves a financial gain.

203. Defendant Robert Half has intentionally and systematically failed to provide the Plaintiff UBERTI and Members of the Robert Half Unpaid Interview Subclass with all of their wages earned. Plaintiff UBERTI is informed and believes, and based thereon alleges, that Defendant Robert Half intentionally withheld payment of the Plaintiff UBERTI's and Robert Half Unpaid Interview Subclass Members' wages earned while interviewing with Defendant Robert Half's clients in order to secure for themselves a financial gain.

204. Plaintiff UBERTI is informed and believes, and based thereon alleges that Defendant Robert Half acted in the manner as described in paragraph 196 with full knowledge of their duty to provide its employees with legal compensation under the Cal. Lab. Code for all time spent interviewing for employment with Defendant Robert Half's current and potential clients.

205. At the time of discharge, Defendants PFG and Randstad owed Plaintiffs WRIGHT and POULIOT and Randstad Waiting Time Subclass Members all earned wages, bonuses, and adjusted OT Wages.

206. Defendants PFG and Randstad did not pay all undisputed wages to Plaintiffs WRIGHT and POULIOT and Randstad Waiting Time Subclass Members by the statutory due date of January 18, 2013.

207. Defendants PFG and Randstad have acted in bad faith in conducting their unlawful actions, and as such, are precluded from asserting that a good faith dispute exists that no wages were or are owed to the Plaintiffs WRIGHT and POULIOT and Members of the Randstad Waiting Time Subclass at the time of discharge.

208.   Defendant Robert Half has acted in bad faith in not paying Plaintiff UBERTI and Members of the Robert Half Waiting Time Subclass all of their earned wages upon being discharged from their employment.

209.   Plaintiffs UBERTI, WRIGHT and POULIOT and Members of the Robert Half and Randstad Waiting Time Subclasses are entitled to and seek penalties provided by Cal. Lab. Code Section 203, which provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

210.   Plaintiffs UBERTI, WRIGHT and POULIOT are also entitled to and seek reasonable attorney's fees and costs of this action pursuant to Cal. Lab. Code §218.5, as well as prejudgment interest pursuant to Cal. Lab. Code §218.6, according to proof, as well as any statutory penalties under the Cal. Lab. Code.

### NINTH CAUSE OF ACTION
**Violations of Business and Professions Code §17200 et seq.;**
**(Against All Defendants and on Behalf of Plaintiffs UBERTI and Members of the Robert Half Class, and on Behalf of Plaintiffs WRIGHT and POULIOT and Members of the Randstad Class)**

211.   The Plaintiff UBERTI, on behalf of himself and all members of the Robert Half Class; and the Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all Members of the Randstad Class incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

212.   The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  Section §17200 of the Cal. Bus. & Prof. Code prohibits unfair competition by prohibiting, inter alia, any unlawful, fraudulent or unfair business acts or practices.

213.   Beginning at a date unknown to the Plaintiffs, but at least as long ago as four years before the filing of this action, Defendants PFG, Robert Half and Randstad committed, and continue to commit, acts of unfair competition, as defined by the UCL, by, among other

things, engaging in the acts and practices described herein. Defendants PFG's, Robert Half's and Randstad's conduct as herein alleged has injured the Plaintiffs and Members of the Robert Half and Randstad Classes by wrongfully denying them earned wages, and therefore was substantially injurious to the Plaintiffs and Members of the Robert Half and Randstad Classes.

214. Defendants PFG, Robert Half and Randstad all engaged in unfair competition in violation of the UCL by violating, inter alia, each of the following laws. Violations of each of these laws constitutes an independent and separate violation of the UCL:

a. Failure to pay their employees all earned wages, including overtime and/or double-time on regularly scheduled paydays in violation of Cal. Lab. Code 204;

b. defendants' payment to employees of less than the state required minimum wage in violation of Cal. Lab. Code section 1197, and applicable Industrial Welfare Commission Orders, including Industrial Welfare Commission Wage Order No. 5-2001, subdivision 4;

c. failure to pay employees overtime pay as required by Cal. Lab. Code sections 510 and 1198, and applicable Industrial Welfare Commission Orders, including but not limited to Industrial Welfare Commission Wage Order No. 5-2001, subdivision 3;

d. failure to pay employees earned and owing at the time of their separation from employment as required by Cal. Lab. Code sections 201 and 202;

e. failure to provide employees with itemized wage statements reflecting their gross wages, the number of hours the employee worked, piece-rate earnings, the applicable piece rate, all deductions taken, net wage earned, the inclusive dates of the pay period, the name of the employee and his or her social security number, and the hourly rate in effect during the pay period, as required by Cal. Lab. Code § 226;

f. requiring employees to work during rest periods and meal breaks in violation of Cal. Lab. Code section 226.7 and applicable Industrial Welfare Commission

Orders including but not limited to Industrial Welfare Commission Wage Order No. 52001, subdivisions 11(A) -(C) and 12;

215. Defendants PFG's, Robert Half's and Randstad's course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants PFG's, Robert Half's and Randstad's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

216. The unlawful and unfair business practices and acts of Defendants PFG, Robert Half and Randstad described above, have injured the Plaintiffs UBERTI and Robert Half Class Members; and Plaintiffs WRIGHT and POULIOT and Randstad Class Members in that they were wrongfully denied the payment of earned bonus and overtime wages and denied mandatory meal and rest breaks.

217. Plaintiffs seek injunctive relief, pursuant to Business and Professions Code section 17203, ordering defendants, their successors, agents, representatives, employees and all persons acting in concert with defendants be enjoined from committing acts of unfair competition as alleged in this complaint; enjoining the Defendants from engaging the unlawful, unfair and fraudulent business acts as described herein.

218. The Plaintiffs, on behalf themselves and the Robert Half and Randstad Class Members, seek recovery of attorneys' fees and costs of this action, as well as prejudgment interest, according to proof, to be paid by Defendants PFG, Robert Half and Randstad as provided by the UCL and Cal. Lab. Code §§ 218, 218.5, 1194(a) & 1197.

219. By successfully bringing this action, Plaintiffs have bestowed upon the public a great benefit, and as such are entitled to reasonable attorney's fees as provided under California Code of Civil Procedure section 1021.5

220. The Plaintiffs, on behalf of themselves and the Robert Half and Randstad Class, seek full restitution in the amount of the respective unpaid wages including those earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, or eight hours in a day, and double the regular

rate of pay for work performed in excess of twelve hours per day, for the entire span of the Class Period of four years prior to the filing of this complaint through the date set for trial.

## TENTH CAUSE OF ACTION
### Violations of California's Equal Pay Act: Cal. Lab. Code § 1197.5
### (Against Defendants PFG, Randstad and Does 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT.)

221.  Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-122 of this complaint as if fully alleged herein.

222.  Cal. Lab. Code section 1197.5(a) provides that:
      "No employer shall pay any individual in the employer's employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where the payment is made pursuant to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any bona fide factor other than sex."

223.  Cal. Lab. Code Section 1197.5(b) goes on to further state that:
      "Any employer who violates subdivision (a) is liable to the employee affected in the amount of the wages, and interest thereon, of which the employee is deprived by reason of the violation, and in an additional equal amount as liquidated damages."

224.  Finally, pursuant to Cal. Lab. Code Section 1197.5(g):
      "Any employee receiving less than the wage to which the employee is entitled under this section may recover in a civil action the balance of the wages, including interest thereon, and an equal amount as liquidated damages, together with the costs of the suit and reasonable attorney's fees, notwithstanding any agreement to work for a lesser wage."

225.  Plaintiffs WRIGHT and POULIOT are informed and believe, and based there on allege that they both received lesser wages than similarly-situated employees of the opposite sex.

226.  Plaintiffs WRIGHT and POULIOT both worked as "Quality Control Analysts", and were paid $35.00 per hour and $37.00 per hour, respectively.

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al

227. Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege that multiple Quality Control Analysts of the opposite sex were paid up to $45.50 per hour for working under identical conditions and performing the exact same work which required the same skill, effort, and responsibility as Plaintiffs WRIGHT and POULIOT.

228. Plaintiffs WRIGHT and POULIOT have both been harmed by the Defendants PFG's and Randstad's unlawful violation of California's Equal Pay Act, and as such are entitled to and seek all back wages and liquidated damages, including reasonable attorney's fees and costs, and prejudgment interest, according to proof, as provided for under Cal. Lab. Code 1197.5(g).

## ELEVENTH CAUSE OF ACTION

### Failure to Allow Plaintiffs to Inspect Records after Request: Cal. Lab. Code § 226(c) (Against Defendants PFG, Randstad and Does 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT)

229. Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

230. Cal. Lab. Code 226(c) dictates that:

> "An employer who receives a written or oral request to inspect or copy records pursuant to subdivision (b) pertaining to a current or former employee shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request. A violation of this subdivision is an infraction."

231. Plaintiff POULIOT alerted Defendants PFG and Randstad, through Bruce Troupe to a discrepancy in the amount he was paid on 1/25/2013 and Bruce Troupe, in turn, referred Plaintiff POULIOT directly to Sheri Passerino from Defendant PFG's human resources department. Plaintiff POULIOT asked for an accounting of all earned wages, bonuses and adjusted OT and received a response that same day from Sheri stating that she would look into the matter. Plaintiff POULIOT has sent three follow-up emails without a response, and sent a final request for the basis of Defendants PFG's and Randstad's calculations on 2/11/2013. However, Defendants PFG and Randstad have failed to provide Plaintiff POULIOT with access to how his wages were calculated.

232. Plaintiff WRIGHT requested information pertaining to his progress on the Incentive Bonus on a weekly basis from around the beginning of November, 2012, through the end

of the Project.  Although Defendants PFG and Randstad said that they would give weekly progress reports as to the Incentive Bonus, no information was ever provided to Plaintiff WRIGHT in response to his multiple requests.

233.  Pursuant to Lab. Code 226(f), Plaintiffs are entitled to recover a seven-hundred-fifty-dollar ($750) penalty from the Defendants PFG and Randstad for each failure to allow the Plaintiffs WRIGHT and POULIOT to inspect records after a reasonable request.

234.  Plaintiffs WRIGHT and POULIOT also seek injunctive relief to ensure the Defendants Randstad's and PFG's compliance with Cal. Lab. Code 226, along with reasonable attorney's fees and costs, as provided for in Cal. Lab. Code 226(h).

235.  Plaintiffs are also seek costs of bringing this action  and interest, according to proof.

## TWELFTH CAUSE OF ACTION
### Violation of California's Whistleblower Statute as Codified in Cal. Lab. Code 1102.5(a)
### (Against Defendants PFG, Randstad and Does 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT.)

236.  Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

237.  Pursuant to Lab. Code 1102.5(a),

"An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

238.  On or around August 24th, 2013,  Bruce Troupe was at the worksite analyzing the inaccurate wage statements for  forty-two employees who were inaccurately paid for the previous week, as a result of Defendants PFG's and Randstad's weighted overtime scheme.

239.  Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege that  Bruce Troup was informing the affected employees as described in paragraph 223 that: "Everyone who works for Randstad knows that anyone who complains to Labor Commissioner will never work for us again", and "that's just the way it is in our industry".

240.  Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege that Defendants PFG and Randstad, as a policy and practice, enforced a policy of using threats of termination of employment and intimidation in order to prevent its employees from disclosing Defendants PFG's and Randstad's violations of California's Labor Laws to the California Labor Commissioner.

241.  Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege that Bruce Troupe acted on behalf of Defendants PFG and Randstad as an agent enforcing Defendants PFG's and Randstad's policy of using threats and intimidation in order to prevent any of their employees from reporting Defendants PFG's and Randstad's violations of California Labor Laws to the Labor Commissioner.

242.  Defendants PFG's and Randstad's policy of using threats and intimidation was the motivating factor that prevented the Plaintiffs WRIGHT and POULIOT from disclosing Defendants PFG's and Randstad's Labor Law violations to the Labor Commissioner.

243.  Defendants PFG's and Randstad's intentional act of using threats and intimidation in order to prevent its employees from reporting Defendants PFG's and Randstad's labor law violations to the Labor Commissioner created for the Plaintiffs WRIGHT and POULIOT a hostile work environment, and has caused Plaintiffs WRIGHT and POULIOT to suffer severe emotional distress.

244.  As a direct and foreseeable result of the severe emotional distress and resulting economic hardship from the circumstances surrounding Plaintiffs WRIGHT's and POULIOT's hostile work environment, Plaintiffs WRIGHT and POULIOT have sustained general damages, the amounts of which will be shown at the time of trial herein.

245.  Additionally, the wrongful acts hereinabove set forth were actuated by malice and oppression toward the Plaintiffs WRIGHT and POULIOT, were done with conscious disregard of Plaintiffs' rights, and were the result of the specific intent to inflict both emotional distress and economic hardship upon the Plaintiffs WRIGHT and POULIOT. Moreover, such wrongful acts hereinabove set forth were either engaged in by managing agents of Defendants Randstad and PFG, or were known to and ratified by Defendants Randstad and PFG. Plaintiffs WRIGHT and POULIOT are therefore entitled to punitive

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al

45

and exemplary damages against Defendants Randstad and PFG, in sums sufficient to punish them and set an example in view of their financial condition. In addition, Plaintiffs are entitled to recover a civil penalty against Defendants Randstad and PFG in a sum not in excess of $10,000 pursuant to Cal. Lab. Code Section 1102.5(f).

246.   Plaintiffs WRIGHT and POULIOT  also seek attorney's fees and costs of this action, as well as prejudgment interest, according to proof.

## THIRTEENTH CAUSE OF ACTION
### Violation of California's Whistleblower Statute as Codified in Cal. Lab. Code 1102.5(a)
### (Against Defendants PFG, Randstad and Does 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT)

247.   Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

248.   The purpose of the Project was to determine if there was "Error and Harm" in certain financial servicers' lending, load administration and modification practices.

249.   Plaintiffs WRIGHT and POULIOT performed work evaluating the foreclosure files of borrowers who complained that they were harmed from the "Servicer's" lending, loan administration and modification practices.

250.   The evaluation process, methods, and techniques were authorized by various U.S. Federal Government Agencies, including the OCC.

251.   Plaintiffs WRIGHT and POULIOT were key members of the most accurate and productive team of the Project.

252.   Plaintiffs WRIGHT and POULIOT applied the Defendants PFG's and Randstad's policies and procedures accurately and efficiently which often resulted in conclusions for their case reviews that found that the Servicer had caused "Error and Harm."

253.   After establishing 'case-review' policies and procedures, which reflected the laws of the various states, Defendants PFG and Randstad began altering the terms of such policies and procedures.

254. Plaintiffs WRIGHT and POULIOT, applying the Defendants PFG's and Randstad's 'new' and 'ever-changing' policies and procedures submitted conclusions for their case reviews that significantly reduced the percentage of identifiable "Error and Harm."

255. The reduction in the "Error and Harm" attributable to the Servicer eliminated the likelihood that an aggrieved borrower would receive compensation or restitution for the Servicer's unlawful lending, loan administration and modification practices.

256. As the policy and procedure mechanism unfolded, Plaintiffs WRIGHT and POULIOT continually informed Defendants PFG and Randstad and their agents, that the new procedures were ignoring "Error and Harm" that was previously discovered.

257. Defendants, PFG and Randstad, made continuous assurances to the Plaintiffs WRIGHT and POULIOT that the procedures were approved by the OCC and the relevant financial servicer.

258. On or around October 15th, 2012, the Plaintiffs WRIGHT and POULIOT were moved to the sixteenth floor.

259. Prior to the move, the Defendants PFG and Randstad informed the Plaintiffs WRIGHT and POULIOT that a Compliance Officer from the Office of the Currency Comptroller also had offices on the sixteenth floor.

260. Under threat of discharge, Defendants PFG and Randstad told Plaintiffs WRIGHT and POULIOT "under no circumstances" were they to speak with OCC representatives.

261. On the morning of November 13th, 2012, in response to the effects of a change in the policies and procedures that reduced "Error and Harm" with respect to "Error and Harm" found using the replaced policies and procedures, Plaintiff POULIOT raised to his superiors the glaring differences in found "Error and Harm" in an email eventually forwarded to Project Director Celinda.

262. Plaintiff POULIOT compared the purpose of the Project and the conclusions afforded by the new and ever changing policies and procedures and requested authority for the changes that according to information and belief, "failed to protect the borrower's right to have a full review of impermissible charges and unlawful lending, loan administration and modification practices."

263. From numerous, vigorous debates with colleagues and supervisors, Plaintiff POULIOT, concluded and expressed to his supervisors and Defendants, PFG and Randstad, and its agents, that it "appears to some of us that the process reduces the number of fee validations that are evaluated for potential impermissibility" and that it appeared that the purpose of the change was "to diminish the instances of error and harm on marginal cases," thereby unlawfully withholding from aggrieved borrowers, rightful compensation and restitution.

264. In an effort to discover truthfully whether a borrower suffered "Error and Harm," Plaintiff POULIOT pressed Project Director Celinda for answers to why procedures were being implemented which were designed to result "in a smaller pool of evaluated fee validations that could result in impermissible fees."

265. Plaintiffs are informed and believe, and based thereon allege that the above mentioned conduct was all connected to Defendants PFG's and Randstad's policy of using deceit, threats and intimidation in order to prevent Plaintiffs WRIGHT and POULIOT from reporting the fraudulent and unlawful nature of the procedures to the Office of the Currency Comptroller, in violation of Cal. Lab. Code 1102.5(a).

266. Defendants PFG's and Randstad's policy of using deceit, threats and intimidation in order to prevent Plaintiffs WRIGHT and POULIOT from reporting the Defendants PFG's and Randstad's unlawful conduct created for Plaintiffs WRIGHT and POULIOT a hostile work environment and has caused Plaintiffs WRIGHT and POULIOT to suffer severe emotional distress. As a direct and foreseeable result of the severe emotional distress and resulting economic hardship from the circumstances surrounding the Plaintiffs' hostile work environment, Plaintiffs WRIGHT and POULIOT have sustained general damages, the amounts of which will be shown at the time of trial herein.

267. Additionally, the wrongful acts hereinabove set forth were actuated by malice and oppression toward Plaintiffs WRIGHT and POULIOT, were done with conscious disregard of the Plaintiffs' rights, and were the result of the specific intent to inflict both emotional distress and economic hardship upon the Plaintiffs WRIGHT and POULIOT. Moreover, such wrongful acts hereinabove set forth were either engaged in by managing

agents of Defendants PFG and Randstad, or were known to and ratified by Defendants PFG and Randstad. Plaintiffs WRIGHT and POULIOT are therefore entitled to punitive and exemplary damages against Defendants PFG and Randstad, in sums sufficient to punish it and set an example in view of its financial condition. In addition, Plaintiffs WRIGHT and POULIOT are entitled to recover a civil penalty against Defendants PFG and Randstad in a sum not in excess of $10,000 pursuant to Cal. Lab. Code Section 1102.5(f).

268. Plaintiffs WRIGHT and POULIOT are also entitled to and seek attorney's fees and costs of this action, and prejudgment interest, according to proof.

## FOURTEENTH CAUSE OF ACTION
### Retaliation in Violation of Cal. Lab. Code § 1102.5(b)
### (Against Defendant Randstad and Does 1-100, and on Behalf of Plaintiffs WRIGHT and POULIOT)

269. Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

270. Cal. Lab. Code § 1102.5(b) provides that:

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information dis-closes a violation of state or federal statute, or a violation or non-compliance with a state or federal rule or regulation.

271. Plaintiffs WRIGHT and POULIOT are informed and believe, and based thereon allege that Defendant Randstad has withheld employment opportunities for which the Plaintiffs were qualified in retaliation for the Plaintiffs WRIGHT AND POULIOT filing a complaint pursuant to PAGA and for filing this action.

272. Plaintiffs are informed and believe, and based thereon allege that Defendant Randstad was aggressively recruiting for mortgage processors and underwriters subsequent to the termination of the Project up through the filing of this complaint, but did not present the opportunity to Plaintiffs WRIGHT or POULIOT for retaliatory purposes.

273. Defendant Randstad's retaliatory conduct has caused Plaintiffs WRIGHT and POULIOT to suffer severe emotional distress. As a direct and foreseeable result of the severe emotional distress and resulting economic hardship from the circumstances surrounding

the Defendant Randstad's retaliatory conduct, Plaintiffs WRIGHT and POULIOT have sustained general damages, the amounts of which will be shown at the time of trial herein.

274.   Additionally, the wrongful acts hereinabove set forth were actuated by malice and oppression toward Plaintiffs WRIGHT and POULIOT, were done with conscious disregard of the Plaintiffs' rights, and were the result of the specific intent to inflict both emotional distress and economic hardship upon the Plaintiffs WRIGHT and POULIOT. Moreover, such wrongful acts hereinabove set forth were either engaged in by managing agents of Defendants PFG and Randstad, or were known to and ratified by Defendants PFG and Randstad. Plaintiffs WRIGHT and POULIOT are therefore entitled to punitive and exemplary damages against Defendants PFG and Randstad, in sums sufficient to punish it and set an example in view of its financial condition. In addition, Plaintiffs WRIGHT and POULIOT are entitled to recover a civil penalty against Defendants PFG and Randstad in a sum not in excess of $10,000 pursuant to Cal. Lab. Code Section 1102.5(f).

275.   Plaintiffs WRIGHT and POULIOT also request reasonable attorney's fees and costs of this action, and prejudgment interest, according to proof.

## FIFTEENTH CAUSE OF ACTION
### Retaliation in Violation of Cal. Lab. Code § 98.6
### (Against Defendant Randstad and Does 1-100, and on Behalf of Plaintiffs WRIGHT and POULIOT)

276.   Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

277.   Cal. Lab. Code § 98.6 prohibits retaliation against employees who file a complaint for Cal. Lab. Code violations with the Labor Commissioner or the Dept. of Fair Employment & Housing.

278.   Plaintiffs WRIGHT and POULIOT filed a complaint for Cal. Lab. Code violations with the Labor Commissioner on February 16th, 2013, when they sent notice pursuant to the Private Attorney General Act.

279. Prior to complaining to the Labor Commissioner about Defendant Randstad's Cal. Lab. Code violations, Plaintiff WRIGHT informed Defendant Randstad that he wanted to get into mortgage processing and underwriting, and that, even though he has over ten years of experience, he would even consider a junior role.

280. Plaintiffs are informed and believe, and based thereon allege that Defendant Randstad was aggressively recruiting for mortgage processors and underwriters, and sent out emails to several individuals with substantially less experience than Plaintiff WRIGHT, but that Defendant Randstad has intentionally failed to inform Plaintiffs WRIGHT and POULIOT of the employment opportunities, for which they are qualified, in retaliation for filing a complaint for Cal. Lab. Code violations pursuant to the Private Attorney General Act.

281. Plaintiffs WRIGHT and POULIOT have been financially harmed by Defendant Randstad's retaliatory conduct in the form of lost wages and benefits which they otherwise would have been able to earn, the amount of which will be shown at trial.

282. Additionally, the wrongful acts hereinabove set forth were actuated by malice and oppression toward Plaintiffs WRIGHT and POULIOT, were done with conscious disregard of the Plaintiffs' rights, and were the result of the specific intent to inflict both emotional distress and economic hardship upon the Plaintiffs WRIGHT and POULIOT. Moreover, such wrongful acts hereinabove set forth were either engaged in by managing agents of Defendants PFG and Randstad, or were known to and ratified by Defendants PFG and Randstad. Plaintiffs WRIGHT and POULIOT are therefore entitled to punitive and exemplary damages against Defendants PFG and Randstad, in sums sufficient to punish it and set an example in view of its financial condition.

283. Plaintiffs WRIGHT and POULIOT also request reasonable attorney's fees and costs, as well as prejudgment interest, according to proof.

### SIXTEENTH CAUSE OF ACTION
**Retaliation in Violation of Public Policy as Stated in Cal. Lab. Code 1102.5(a)**
**(Against Defendant Randstad, PFG and Does 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT)**

284.  Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

285.  Defendants Randstad's and PFG's conduct as alleged in paragraphs 231-237 violates California Public Policy, as it has been codified in Cal. Lab. Code § 1102.5(a).

286.  Defendants PFG's and Randstad's intentional act of using threats and intimidation in order to prevent its employees from reporting Defendants PFG's and Randstad's labor law violations to the Labor Commissioner created for the Plaintiffs WRIGHT and POULIOT a hostile work environment, and has caused Plaintiffs WRIGHT and POULIOT to suffer severe emotional distress.

287.  As a direct and foreseeable result of the severe emotional distress and resulting economic hardship from the circumstances surrounding Plaintiffs WRIGHT's and POULIOT's hostile work environment, Plaintiffs WRIGHT and POULIOT have sustained general damages, the amounts of which will be shown at the time of trial herein.

288.  Additionally, the wrongful acts hereinabove set forth were actuated by malice and oppression toward the Plaintiffs WRIGHT and POULIOT, were done with conscious disregard of Plaintiffs' rights, and were the result of the specific intent to inflict both emotional distress and economic hardship upon the Plaintiffs WRIGHT and POULIOT. Moreover, such wrongful acts hereinabove set forth were either engaged in by managing agents of Defendants Randstad and PFG, or were known to and ratified by Defendants Randstad and PFG. Plaintiffs WRIGHT and POULIOT are therefore entitled to punitive and exemplary damages against Defendants Randstad and PFG, in sums sufficient to punish them and set an example in view of their financial condition.

289.  Plaintiffs WRIGHT and POULIOT also seek an award of reasonable attorney's fees and costs, according to proof.

### SEVENTEENTH CAUSE OF ACTION
### Retaliation in Violation of Public Policy as Stated in Cal. Lab. Code 1102.5(a)
### (Against Defendant Randstad, PFG and Does 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT)

290.  Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

291.   Defendants Randstad's and PFG's conduct as alleged in paragraphs 242-60 violates California Public Policy, as it has been codified in Cal. Lab. Code § 1102.5(a).

292.   Defendants PFG's and Randstad's intentional act of using threats and intimidation in order to prevent its employees from reporting Defendants PFG's and Randstad's fraudulent conduct to the Office of the Currency Comptroller created for the Plaintiffs WRIGHT and POULIOT a hostile work environment, and has caused Plaintiffs WRIGHT and POULIOT to suffer severe emotional distress.

293.   As a direct and foreseeable result of the severe emotional distress and resulting economic hardship from the circumstances surrounding Plaintiffs WRIGHT's and POULIOT's hostile work environment, Plaintiffs WRIGHT and POULIOT have sustained general damages, the amounts of which will be shown at the time of trial herein.

294.   Additionally, the wrongful acts hereinabove set forth were actuated by malice and oppression toward the Plaintiffs WRIGHT and POULIOT, were done with conscious disregard of Plaintiffs' rights, and were the result of the specific intent to inflict both emotional distress and economic hardship upon the Plaintiffs WRIGHT and POULIOT. Moreover, such wrongful acts hereinabove set forth were either engaged in by managing agents of Defendants Randstad and PFG, or were known to and ratified by Defendants Randstad and PFG.  Plaintiffs WRIGHT and POULIOT are therefore entitled to punitive and exemplary damages against Defendants Randstad and PFG, in sums sufficient to punish them and set an example in view of their financial condition.

295.   Plaintiffs WRIGHT and POULIOT also seek an award of reasonable attorney's fees and costs, according to proof.

## EIGHTEENTH CAUSE OF ACTION
**Retaliation in Violation of Public Policy as Stated in Cal. Lab. Code § 1102.5(b)**
**(Against Defendant Randstad and Does 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT)**

296.   Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

297. Defendant Randstad's conduct as alleged in paragraphs 264-66 violates California Public Policy, as it has been codified in Cal. Lab. Code § 1102.5(b).

298. Defendant Randstad's intentional retaliation has deprived Plaintiffs WRIGHT and POULIOT of wages and benefits which would normally have been available to them, had it not been for Defendant Randstad's retaliatory conduct; and has caused Plaintiffs WRIGHT and POULIOT to suffer severe emotional distress.

299. As a direct and foreseeable result of the severe emotional distress and resulting economic hardship from the circumstances surrounding Plaintiffs WRIGHT's and POULIOT's retaliatory treatment, Plaintiffs WRIGHT and POULIOT have sustained general damages, the amounts of which will be shown at the time of trial herein.

300. Additionally, the wrongful acts hereinabove set forth were actuated by malice and oppression toward the Plaintiffs WRIGHT and POULIOT, were done with conscious disregard of Plaintiffs' rights, and were the result of the specific intent to inflict both emotional distress and economic hardship upon the Plaintiffs WRIGHT and POULIOT. Moreover, such wrongful acts hereinabove set forth were either engaged in by managing agents of Defendants Randstad, or were known to and ratified by Defendants Randstad and PFG. Plaintiffs WRIGHT and POULIOT are therefore entitled to punitive and exemplary damages against Defendant Randstad, in sums sufficient to punish them and set an example in view of their financial condition.

301. Plaintiffs WRIGHT and POULIOT also seek an award of reasonable attorney's fees and costs, according to proof.

## NINETEENTH CAUSE OF ACTION
### Retaliation in Violation of Public Policy as Stated in Cal. Lab. Code 98.6
### (Against Defendant Randstad and Does 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT)

302. Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

303. Defendant Randstad's conduct as alleged in paragraphs 271-75 violates California Public Policy, as it has been codified in Cal. Lab. Code § 98.6.

304.   Defendant Randstad's intentional retaliation has deprived Plaintiffs WRIGHT and POULIOT of wages and benefits which would normally have been available to them, had it not been for Defendant Randstad's retaliatory conduct, the amount of which will be shown at trial; and has caused Plaintiffs WRIGHT and POULIOT to suffer severe emotional distress.

305.   As a direct and foreseeable result of the severe emotional distress and resulting economic hardship from the circumstances surrounding Plaintiffs WRIGHT's and POULIOT's retaliatory treatment, Plaintiffs WRIGHT and POULIOT have sustained general damages, the amounts of which will be shown at the time of trial herein.

306.   Additionally, the wrongful acts hereinabove set forth were actuated by malice and oppression toward the Plaintiffs WRIGHT and POULIOT, were done with conscious disregard of Plaintiffs' rights, and were the result of the specific intent to inflict both emotional distress and economic hardship upon the Plaintiffs WRIGHT and POULIOT. Moreover, such wrongful acts hereinabove set forth were either engaged in by managing agents of Defendants Randstad, or were known to and ratified by Defendants Randstad and PFG. Plaintiffs WRIGHT and POULIOT are therefore entitled to punitive and exemplary damages against Defendant Randstad, in sums sufficient to punish them and set an example in view of their financial condition.

307.   Plaintiffs WRIGHT and POULIOT also seek an award of reasonable attorney's fees and costs, according to proof.

## TWENTIETH CAUSE OF ACTION
### Failure to Pay Lawful Wages in Violation of Cal. Lab. Code §1194(a)
**(Against Defendant Robert Half and Does 1-100; and on Behalf of Plaintiff UBERTI)**

308.   Plaintiff UBERTI incorporates all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

309.   Plaintiff UBERTI interviewed for an Analyst position on the Project with Defendant PFG, on behalf of Defendant Robert Half, on December 19th, 2012.

310.   Plaintiff UBERTI was offered the position on the same day, which he accepted at an hourly rate of $32.00 per hour.

311.  Plaintiff UBERTI was instructed that his training would begin on January 8th, 2013, at the Executive Towers in Orange, CA.

312.  Plaintiff UBERTI relied upon Defendants PFG's and Robert Half's offer of employment by, among other thing, ceasing to look for other employment opportunities.

313.  Plaintiff UBERTI is informed and believes, and based thereon alleges that on January 7th, 2013, Defendant PFG sent out an email to all employees informing them that the Project was coming to an end, and that most of them would not be coming back the next day.

314.  Plaintiff UBERTI is informed and believes, and based there on alleges that Defendant PFG also informed all employees that, although January 7th would be the last day that they needed to come into work, they would still be getting paid through the end of the week.

315.  As an employee of Defendants PFG and Robert Half hired to work on the Project, Plaintiff UBERTI was entitled to receive compensation for the days of January 8th-11th, 2013.  However, as of the date of the filing of this complaint, Plaintiff UBERTI has still not received compensation for the above mentioned dates.

316.  Plaintiff UBERTI has been financially harmed by not receiving the compensation for the remainder of the week which started on January 7th, 2013.

317.  In addition to full payment of all back wages, Plaintiff UBERTI also seeks reasonable attorney's fees and costs, and prejudgment interest as provided for in Cal. Lab. Code § 1194(a), according to proof.

## TWENTY-FIRST CAUSE OF ACTION
### Unfair Competition:  Cal. Bus. & Prof. Code § 17200 et seq.
### (Against Defendants PFG, Robert Half, Randstad and Does 1-100; and on Behalf of Plaintiffs UBERTI, WRIGHT and POULIOT)

318.  Plaintiffs incorporate all preceding paragraphs of this complaint as if fully alleged herein.

319.  Plaintiffs WRIGHT and POULIOT further allege that, during the month of September, all of Defendant Randstad's employees working on the Project were required to attend a sexual harassment training seminar, which was run by Bruce Troupe on the behalf of Defendants PFG and Randstad. During this seminar, the Plaintiffs were shown a Power Point presentation, which claimed that The Civil Rights Act of 1964 imposes upon

employees an affirmative duty to act when they witness or hear about situations that they knew, or should have known, constituted harassment, by reporting what they saw or heard to directly to Bruce or their supervisor. The "should have known" portion of the slide was emphasized.

320.  Defendant Randstad's Messenger, Bruce Troupe, then told all employees that a failure to report everything that they see or hear that they knew, *or should have known*, to be harassment would result in the employee being subjected to unlimited personal liability for damages.

321.  Bruce Troupe assured Plaintiffs WRIGHT and POULIOT that the "legal department" had confirmed Defendant Randstad's position, and reiterated their assertion that the law requires people to report what they knew, or should have known, to be harassment.

322.  Examples that were given during the seminar that could constitute "harassment" and could lead to unlimited personal liability if not reported included friends hugging, holding hands, and even giving one another high fives. This really concerned Plaintiffs WRIGHT and POULIOT because these types of activities occurred every day, and Plaintiffs WRIGHT and POULIOT would even participate [prior to the seminar] by shaking hands and giving high fives to their fellow employees. This created a hostile work environment for Plaintiffs WRIGHT and POULIOT, because they felt that the only way to avoid being subjected to unlimited personal liability was to face forward, not talk to anyone, and not do anything other than work.

323.  The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. Section §17200 of the Cal. Bus. & Prof. Code prohibits unfair competition by prohibiting, inter alia, any unlawful, fraudulent or unfair business acts or practices.

324.  Beginning at a date unknown to the Plaintiffs WRIGHT and POULIOT, but at least as long ago as four years before the filing of this action, Defendants PFG and Randstad committed, and continue to commit, acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein. Defendants PFG's and Randstad's conduct as herein alleged has injured the Plaintiffs WRIGHT and

POULIOT by fraudulently misleading the Plaintiffs into the believing that the law imposed upon them duties which in fact it does not.

325.   Defendants PFG and Randstad engaged in additional unfair competition in violation of the UCL by violating, inter alia, each of the following laws. Violations of each of these laws constitutes an independent and separate violation of the UCL:

      a. Cal. Lab. Code § 1102.5(a);

      b. Cal. Lab. Code § 1102.5(b);

      b. Cal. Lab. Code § 98.6; and

      c. Cal. Lab. Code § 1197.5

326.   Defendant PFG's fraudulent conduct in conducting the Independent Foreclosure Review so as to exonerate the Servicer of all wrongdoing by instituting procedures which were intentionally designed to disguise all discoverable "Error and Harm" as being "out of scope" constitutes an additional independent and separate violation of the UCL.

327.   Defendants PFG's and Randstad's course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants PFG's and Randstad's conduct described herein violates the policy and spirit of such laws or otherwise significantly threatens or harms competition.

328.   The unlawful and unfair business practices and acts of Defendants PFG and Randstad described above have injured the Plaintiffs by creating for them a hostile work environment.

329.   Plaintiffs WRIGHT and POULIOT seek injunctive relief pursuant to Bus. & Prof. Code § 17203 enjoining the Defendants PFG and Randstad from engaging in each of the unlawful, unfair and fraudulent business acts as described herein.

330.   The Plaintiffs WRIGHT and POULIOT seek recovery of attorneys' fees and costs of this action to be paid by Defendants PFG and Randstad as provided by Cal. Lab. Code §§ 218.5; 1194(a) & 1197.5.

331.   Beginning at a date unknown to Plaintiffs UBERTI, but at least as long ago as four years before the filing of this action, Defendants PFG and Robert Half committed, and

continues to commit, acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein. Defendants PFG's and Robert Half's conduct as herein alleged has injured the Plaintiff UBERTI by unlawfully withholding wages which should have been paid to him.

332. Defendants PFG and Robert Half engaged in additional unfair competition in violation of the UCL by violating each of the following laws.  Violations of each of these laws constitutes an independent and separate violation of the UCL:

     a. Cal. Lab. Code § 1194(a); and

     b. Cal. Lab. Code § 558.

333. Defendants PFG's and Robert Half's course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants PFG's and Robert Half's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

334. The unlawful and unfair business practices and acts of Defendants PFG and Robert Half described above have injured Plaintiff UBERTI by withholding payment of his wages.

335. Plaintiff UBERTI seeks injunctive relief pursuant to Cal. Bus. & Profs. Code § 17203 enjoining the Defendants PFG and Robert Half from engaging the unlawful, unfair and fraudulent business acts as described herein.

336. Plaintiff UBERTI also seeks restitution of all wages owed to him and lawful interest, the amount of which will be shown at trial.

337. Plaintiff UBERTI seeks recovery of attorneys' fees and costs of this action to be paid by Defendants PFG and Robert Half as provided by Cal. Lab. Code  §§ 218.5 & 1194(a).

### TWENTY-SECOND CAUSE OF ACTION
### PENALTIES PURSUANT TO THE PRIVATE ATTORNEY GENERSALS ACT,
### Cal. Lab. Code Section 2698 et seq.
### (Against Defendants PFG and Randstad; and on Behalf of Plaintiffs WRIGHT and POULIOT as Representatives of the General Public)

338. Plaintiffs WRIGHT and POULIOT incorporate all allegations contained in the preceding paragraphs of this complaint as if fully alleged herein.

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al

339.   On or around February 16th, 2013, Plaintiffs WRIGHT and POULIOT complied with PAGA's administrative requirement in the manner proscribed in Cal. Lab. Code section 2699.3, including providing notice as set forth in Cal. Lab. Code section 2699.3(a)(1). Thirty-three days have elapsed since the postmark date of the notice provided by Plaintiffs WRIGHT and POULIOT pursuant to Cal. Lab. Code section 2699.3(a)(1). Evidence of Plaintiff's compliance with Cal. Lab. Code section 2699.3 is attached herein as Exhibit A.

340.   Plaintiffs WRIGHT and POULIOT, by virtue of their employment with Defendants Randstad and PFG and the Defendants' failure to pay all earned wages and unlawful retaliation scheme, are aggrieved employees with standing to bring an action under the PAGA. Plaintiffs WRIGHT and POULIOT by virtue of Exhibit "A", have satisfied all prerequisites to serve as a representative of the general public to enforce California's labor laws, including, without limitation, the penalty provisions identified in Cal. Lab. Code section 2699.5.   Since the LWDA took no steps within the time period required to intervene and because Defendants, PFG and Randstad, took no corrective action to remedy the allegations set forth above Plaintiffs WRIGHT and POULIOT, as representatives of the people of the State of California, will seek any and all penalties otherwise capable of being collected by the Labor Commission and/or the Department of Labor Standards Enforcement (DLSE). This includes, each of the following, as is set forth in Cal. Lab. Code Section 558, which states:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1)For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover under paid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

(b) If upon inspection or investigation the Labor Commissioner determines that a person had paid or caused to be paid a wage for overtime work in violation of any provision of this chapter, or any provision regulating hours and days of work in any order of the Industrial Welfare Commission, the Labor Commissioner may issue a citation. The procedures for issuing, contesting, and enforcing judgments for citations or civil penalties issued by the Labor Commissioner for a violation of this chapter shall be the same as those set out in Section 1197.1.

(c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.

341.   Plaintiffs WRIGHT and POULIOT allege, on behalf of the general public and acting as private attorneys generals, that Defendants, PFG and Randstad, have violated Cal. Lab. Code section 558 and additional provisions of the Cal. Lab. Code which entitle the State of California to a 75% share of the recovery of penalties otherwise only capable of being collected by state agencies. Since the LWDA took no steps within the time period required to intervene and because Defendants, PFG and Randstad, took no corrective action to remedy the allegations set forth above, the Plaintiffs WRIGHT and POULIOT, as representatives of the people of the State of California, will seek any and all penalties otherwise capable of being collected by the Labor Commission and/or the Department of Labor Standards Enforcement (DLSE). This includes any of the applicable statutes as is set forth in Cal. Lab. Code Section 2699.5. and includes the penalty provisions, without limitation, based on the following sections: 201, 201.3, 201.5, 201.7, 202, 203, 203.1, 203.5, 204, 204a, 204b, 204.1, 204.2, 205, 205.5, 206, 206.5, 208, 209, and 212, subdivision (d) of Section 213, Sections 221, 222, 222.5, 223, and 224, subdivision (a) of Section 226, Sections 226.7, 227, 227.3, 230, 230.1, 230.2, 230.3, 230.4, 230.7, 230.8,

and 231, subdivision (c) of Section 232, subdivision (c) of Section 232.5, and Cal. Lab. Code sections 233, 510, 511, 512, & 513.

342. Plaintiffs WRIGHT and POULIOT are informed and believe, and allege based thereon that Defendants, PFG and Randstad, and each of them, have violated and continue to violate provisions of the Cal. Lab. Code related to the payment of overtime wages, the failure to provide meal and rest periods to the affected group of employees, the failure to provide accurate itemized wage statements, for retaliating against employee's in violation of Cal. Lab. Code 1102.5, and has and continues to knowingly and intentionally fail to pay all wages due in a timely fashion for all employees whose employment is or has been terminated during the statutory period. Plaintiffs, as representatives of the general public, seek to recover said penalties, damages, back wages and all relief that, in addition to their individual interests, could only be obtained by the DLSE, the California DIR, the IWC and/or the Labor Commissioner of the State of California.

343. In addition to restitution, the recovery of unpaid back wages and the recovery of premium pay for unpaid overtime, and violations of the applicable Wage Orders relating thereto, Plaintiffs WRIGHT and POULIOT, as personal representatives of the general public, will and do seek to recover any and all penalties for each and every violation shown to exist or to have occurred during the proposed period, in an amount according to proof. Said funds recovered will be distributed in accordance with the PAGA, with at least 75% of said PAGA penalty recovery being reimbursed to the State of California and the LWDA.

344. Plaintiffs WRIGHT and POULIOT also seek reasonable attorneys' fees as provide for in the Private Attorney General Act.

## VII. PRAYER FOR RELIEF

WHEREFORE Plaintiffs prays for judgment against Defendants, and each of them, as follows:

345. That the Court issue an Order pursuant to Code of Civil Procedure §382 certifying the proposed Randstad and Robert Half Classes and Subclasses proposed herein, appointing Plaintiffs WRIGHT and POULIOT as the representatives of all others similarly situated in the Randstad Class and Subclasses; appointing Plaintiff UBERTI as the representatives

of all others similarly situated in the Robert Half Class; and appointing attorneys Szmanda, Rarick, and Panczyk as the named counsel for the members of the Randstad and Robert Half Classes and Subclasses, and that Plaintiffs WRIGHT and POULIOT be appointed as representatives of the general public under the PAGA, and that attorneys Szmanda, Rarick, and Panczyk be appointed class counsel and counsel for the general public in pursing public remedies in addition to individual and class-wide interests;

### As to the First and Second Causes of Action:

336.  For restitution of overtime pay by Defendants and/or disgorgement of unpaid wages, the amount of which will be shown at trial;

337.  For liquidated damages pursuant to Cal. Lab. Code §1194.2 & 1197.1, in an amount equal to the unpaid wages, and interest, according to proof at trial..

338.  For interest as authorized by Cal. Lab. Code §§ 218.6 and 1194(a), according to proof;

339.  For an award of reasonable attorneys' fees and costs as provided for in Cal. Lab. Code § 1194(a) and §218.5;

### As to the Third Cause of Action:

340.  For penalties as authorized by Cal. Lab. Code § 226(e);

341.  For injunctive relief to ensure all Defendants' compliance with Cal. Lab. Code § 226 pursuant to Cal. Lab. Code § 226(g);

342.  For an award of costs, reasonable attorneys' fees and prejudgment interest pursuant to Cal. Lab. Code §226(h), according to proof which will be shown at the time of trial.

### As to the Fourth Cause of Action:

343.  For restitution in the form of one hour's pay at the regular rate of pay for each day that a required thirty minute meal break was not provided, the amount of which will be shown at trial, according to proof.

344.  For liquidated damages pursuant to Cal. Lab. Code §1194.2 & 1197.1, in an amount equal to the unpaid wages, the amount of which will be shown at trial, according to proof.

345.  For interest as authorized by Cal. Lab. Code §§ 218.6 and 1194(a) and Civil Code §§ 3287(b) and 3289;

346.  For an award of costs and reasonable attorneys' fees as authorized by Cal. Lab. Code § 2698 et seq.

**As to the Fifth, Sixth and Seventh Causes of Action:**

347.  For compensatory damages, including all unpaid wages, the amount of which will be shown at trial, according to proof;

348.  For interest as authorized by Cal. Lab. Code §§218.6 and 1194(a) and Civil Code §§ 3287(b) and 3289;

349.  For liquidated damages pursuant to Cal. Lab. Code §1194.2 & 1197.1, in an amount equal to the unpaid wages, the amount of which will be shown at trial, according to proof.

350.  For an award of costs and reasonable attorneys' fees as authorized by Cal. Lab. Code § 218.5 and Cal. Lab. Code § 1194(a).

**As to the Eighth Cause of Action:**

351.  Waiting time penalties pursuant to Cal. Lab. Code § 203, according to proof;

352.  For reasonable attorneys' fees and costs incurred as permitted by statute;

353.  For an interest as authorized by the Cal. Lab. Code.

**As to the Ninth Cause of Action:**

354.  Pursuant to Business and Professions Code section 17203, that all Defendants make full restitution to all employees of Defendants working in California during the Class Period of four years prior to the date which this complaint was filed up through the date of trial, and to restore all monies owing the said employees acquired by all Defendants as a result of the violations of Business and Professions Code section 17200 et seq. alleged in this complaint; the amount of which will be shown at trial, according to proof;

355.  Pursuant to Business and Professions Code section 17203, that all Defendants, their successors, agents, representatives, employees and all persons acting in concert with defendants be enjoined from committing acts of unfair competition as alleged in this complaint;

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al

356.  Pursuant to Business and Professions Code section 17206, that the Court assess a civil penalty of two thousand five hundred dollars ($2,500) against all Defendants and each of them for each violation of Business and Professions Code section 17200 et seq., as proved at trial;

336.  For an award of reasonable attorneys' fees and costs of this action, and interest, according to proof, pursuant to Business and Professions Code § 17200 et seq. and Cal. Lab. Code § 218.5 & Cal. Lab. Code 1194(a); and Cal. Code of Civ. Proc. § 1021.5.

357.  Such other and further relief as the Court deems appropriate and just.

### As to the Tenth Cause of Action:

358.  The balance of the wages, including interest thereon, and an equal amount as liquidated damages, together with the costs of the suit and reasonable attorney's fees, pursuant to Cal. Lab. Code 1197(g), in an amount to be shown at trial, according to proof;

359.  Such other and further relief as the Court deems appropriate and just.

### As to the Eleventh Cause of Action:

360.  For an award of a seven-hundred-fifty-dollar ($750) penalty from the Defendants, PFG and Randstad, for each violation of Cal. Lab. Code § 226(c), pursuant to Lab. Code 226(f);

361.  For an award of costs and reasonable attorneys' fees;

362.  Such other and further relief as the Court deems appropriate and just.

### As to the Twelfth, Thirteenth and Fourteenth Causes of Action:

363.  For an award of general damages, the amount of which will be shown at trial, according to proof;

364.  For an award of costs and reasonable attorneys' fees, and interest, according to proof;

365.  For an award of punitive damages

366.  For an award of a Civil Penalty in the amount of $10,000.00 pursuant to Cal. Lab. Code § 1102.5(f);

367.  Such other and further relief as the Court deems appropriate and just.

### As to the Fifteenth through Nineteenth Causes of Action:

368.   For an award of general damages, the amount of which will be shown at trial, according to proof;

369.   For an award of costs and reasonable attorneys' fees, and interest, according to proof;

370.   For an award of punitive damages;

371.   Such other and further relief as the Court deems appropriate and just.

### As to the Twentieth Cause of Action:

372.   For restitution in the amount of all unpaid wages, the amount of which will be shown at trial, according to proof;

373.   For an award of interest, attorneys' fees and costs pursuant to Cal. Lab. Code §§ 1194, according to proof; and

374.   Such other and further relief as the Court deems appropriate and just.

### As to the Twenty-First Cause of Action:

337.   Pursuant to Business and Professions Code section 17203, that all Defendants make full restitution to all Plaintiffs, and to restore all monies owing the said Plaintiffs acquired by all Defendants as a result of the violations of Business and Professions Code section 17200 et seq. alleged in this complaint; the amount of which will be shown at trial, according to proof;

338.   Pursuant to Business and Professions Code section 17203, that all Defendants, their successors, agents, representatives, employees and all persons acting in concert with defendants be enjoined from committing acts of unfair competition as alleged in this complaint;

339.   Pursuant to Business and Professions Code section 17206, that the Court assess a civil penalty of two thousand five hundred dollars ($2,500) against all Defendants and each of them for each violation of Business and Professions Code section 17200 et seq., as proved at trial;

340.   For an award of reasonable attorneys' fees and costs of this action, and interest, according to proof, pursuant to Business and Professions Code § 17200 et seq. and Cal. Lab. Code § 218.5 & Cal. Lab. Code 1194(a), and Cal. Code of Civ. Proc. § 1021.5.

341.   Such other and further relief as the Court deems appropriate and just.

### As to the Twenty-Second Cause of Action:

336. For all civil penalties which normally would only be able to be pursued by the Labor Commissioner, including all penalties as provided, per violation, under the Private Attorney General Act (PAGA) Cal. Lab. Code § 2698, et seq., and as provided by Cal. Lab. Code § 558, and distributed in accordance with the Act;

337. For an award of costs and reasonable attorneys' fees, and interest as provided for by Cal. Lab. Code 2698, et seq.

338. Such other and further relief as the Court deems appropriate and just.

### As to All Causes of Action:

339. For an award of costs and reasonable attorneys' fees;

340. For an award of interest, according to proof;

341. For any other relief deemed appropriate by this Court.


Dated:  <u>April 19th, 2013</u>                    Respectfully submitted,


                                         <u>/bszmanda/</u>
                                         Brett Szmanda Esq.


                                         <u>/jcrarick/</u>
                                         John Rarick, Esq.


                                         <u>/spanczyk/</u>
                                         Simon Panczyk Esq.


                                         <u>/sstern/</u>
                                         Steven Stern Esq.


                                         Attorneys for Plaintiffs

# EXHIBIT "A"

**Brett Szmanda Esq.**
**401 8th Street Suite C**
**Huntington Beach, CA 92648**
**Tel.: (818)291-3790 · Fax: (949)553-7732**
**[ e-mail:Bszmanda@gmail.com ]**

**February 14th, 2013**

**VIA CERTIFIED MAIL**

California Labor & Workforce Development Agency ("Agency")
800 Capitol Mall, MIC-55
Sacramento, CA 95814

Re:   Notice to pursue civil penalties through civil action under the Private Attorney General
Act.

      Pursuant to the Cal. Lab. Code Private Attorneys General Act of 2004, Cal. Lab. Code §
2698 et. seq. ("PAGA"), Justin Wright and Jean-Laurent Pouliot ("Aggrieved Employees" or
"AEs"), through their legal representatives allege and hereby give notice to the California Labor
& Workforce Development Agency ("Agency") of the alleged Cal. Lab. Code violations and the
facts and theories that support the alleged code violations committed by  Promontory Financial
Group LLC and Randstad USA, (the "Employers").

      This action arises out of harm suffered by the AEs, and the public as a whole, caused by  the
Employers' intentional and systematic disregard of California's Wage and Hour Laws, as codified
in the Cal. Lab. Code and the Industrial Welfare Commission's Wage Orders.  AEs have each
suffered harm as a result of Employers' intentional failure to provide mandatory rest and meal
breaks;  to pay all wages on time and provide accurate wage statements as proscribed by law;
Employers' unlawful conduct against AEs in retaliation for engaging in protected activities, failure
to pay discharged employees all of their wages due in accordance with the Cal. Lab. Code; and
numerous other violations of the provisions of the Cal. Lab. Code and Wage Orders pertaining to
mandatory working conditions.

      AEs were all hired by Promontory Financial Group ("PFG") as temporary workers
through Randstad as "complaint review analysts" for the Independent Foreclosure Review (the
"Project").  PFG was the independent consultant to three of the mortgage servicers under review:
Bank of America, Wells Fargo, and PNC Bank.  The AEs were all hired to work on the review of
Wells Fargo's foreclosure files, which was authorized by the Office of the Currency Comptroller
Consent Order.  The AEs continued to work on the assignment until the program was cancelled
on January 7th, 2013, due to the program's ineffectiveness.

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al

Based upon AE's information and belief, the Employer has unlawfully denied the AEs their full non-discretionary bonus compensation, failed to pay the AEs their full overtime adjustments, failed and continue to fail to pay the AEs all of their earned wages pursuant to Cal. Lab. Code 201.3, failed to provide meal the AEs with a second 30 minute meal break for all work in excess of ten (10) hours in a day pursuant to the Cal. Lab. Code and related Industrial Welfare Commission's Wage Orders, failed to pay wages for all hours worked, failed to pay one hours pay for each day that a meal and/or period was not provided, failed to provide accurate information pursuant to Cal. Lab. Code 226(a) on each and every one of the AEs wage statements, as well as other actions taken by the employer and against AE and similarly situated employees in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq., and the Cal. Lab. Code, the Industrial Welfare Commissions Wage Orders, and other related regulations, which include, at a minimum, Cal. Cal. Lab. Code §§ 201, 202, 203, 204, 226, 510, 1102.5, 1174.5, and 1194, Cal. Wage Order No. 4-2001.

Facts supporting the non-payment of the AEs full non-discretionary bonus compensation include the Employers' failure to honor the terms of promised bonuses. There were three non-discretionary bonuses promised by the Employers. The first bonus was a $4,000.00 completion bonus, which was promised to all AEs upon their hiring. AE Pouliot was hired in the beginning of July, 2012. At the time of his hiring, he was promised a completion bonus in the amount of $4,000.00, and the only requirement was to stay on the project until its completion. An email was sent to all employees on Jan. 7th, 2013, which informed all employees that the project was being terminated, and the PFG was considering the project as being successfully completed. A group meeting was then held by PFG where the employees were all told that they would be getting paid all of the bonuses that were promised to them. However, the following week Randstad unilaterally altered the terms of the bonus by instituting a requirement that, in order to qualify for the full $4,000.00, the employees had to have been working on the project for over one year. Employees working on the project for less than one year would receive a pro-rated bonus. Thus, all employees on the project for less than one year were denied payment of their full compensation.

The second non-discretionary bonus which the Employers failed to pay was an incentive bonus which was implemented on October 1st, 2012. The incentive bonus provided all validation analysts and input analysts with $15.00 for each closed case upon which they worked. The Employers failed to pay the incentive bonus on time, failed to keep accurate records of how many cases each analyst closed and prevented the AEs from keeping personal records of their incentive bonus earned. Employers also failed to provide itemized wage statements to the AEs showing how the incentive bonus was calculated, and refused to provide the AEs with an accounting of how the incentive bonus was calculated when requested by the AEs to do so.

The third non-discretionary bonus which the Employers failed to pay on time and in accordance with its stated terms was a $200.00 "weekend bonus". All PFG employees working on the project were told that if they worked a combined sixteen (16) hours over the weekends of December 15th, 22nd, and 29th, then they would be getting paid an additional $200.00. However, the Employers once again unilaterally altered the terms of the bonus after the AEs had already

fully performed. The Employers changed the three weekends that counted towards the weekend bonus, and now contend that the bonus counted towards the last two weekends in December and the first weekend in January. However, the facts simply do not support the Employers' new contentions for two main reasons. First, the bonus was instituted in an effort for PFG to meet "year-end goals", thus, it makes no sense for the Employers to incentivize the first weekend in January because the production would not count towards PFG's year-end goals. The second reason is because of the fact that PFG was not opened for business on Saturday, January 5th, and only open to a select few analysts that were invited by PFG to come in and work on Sunday, January 6th.

By not honoring the terms of the non-discretionary bonuses, the Employers' have failed to and continue to fail to pay the AEs all of the wages that they are owed, including the adjusted overtime. In addition to triggering the Waiting Time Penalties provided for in Cal. Lab. Code 203, the failure to pay the AEs all of their wages has also resulted in violations of a multitude of other Cal. Lab. Code sections, as listed below.

Facts supporting the Employers' failure to provide accurate information on the AEs' wage statements include the Employers' policy of paying all employees four dollars ($4.00) for their initial interview with PFG, but waiting five weeks until paying the employees. AEs are informed and believe, and allege based thereon, that Employers intentionally withheld payment of the $4.00 interview wages for five weeks because the Employers knew that five weeks is the time that the AEs become eligible to work overtime. By waiting until the AEs are approved for overtime, the Employers believe that they are able to combine the $4.00 with the regular overtime rate to come up with a "weighted overtime" rate. This withholding of wages scheme results in the AEs being paid significantly less in overtime compensation, as well as resulting in each and every one of the AEs wage statements containing inaccurate information. The first four wage statements are inaccurate for not including the ½ hour of pay for the initial interview, and every other wage statement from the fifth week on are inaccurate for containing inaccurate overtime calculations.

Facts supporting the Employers' systematic failure to provide a second thirty (30) minute meal break to all employees who work in excess of ten (10) hours in a single day all pertain to the Employers' failure to have any policy in place whatsoever providing the employees with the second meal break. The AEs have no recollection of ever seeing the required posting anywhere within the PFG offices, neither PFG nor Randstad, or any of their agents, ever informed the AEs of their right to a second thirty (30) minute meal break for all work in excess of ten (10) hours in a day, PFG's internal time keeping sheets only provided space to mark one thirty (30) minute meal break, and Randstad's computerized time keeping system also only provided space for one thirty (30) minute meal break. The Employers' failure to enact any policy providing the AEs with a second thirty (30) minute meal break has the same effect as denying all employees of their right to take their second thirty (30) minute meal break.

Justin Wright and Jean-Laurent Pouliot will pursue violations under Cal. Lab. Code §2698 et. seq., on behalf of themselves and as representatives of the people of the State of California, and will seek any and all penalties otherwise capable of being collected by the Labor Commission and/or the Department of Labor Standards Enforcement (DLSE). This includes the penalty provisions provided in Cal. Lab. Code § 2699(a) and § 2699(f), as well as any of the applicable statutes as is set forth in Cal. Lab. Code Section 2699.5. and includes the penalty provisions, without limitation, based on the following sections: 201, 201.3, 201.5, 201.7, 202, 203, 203.1, 203.5, 204, 204a, 204b, 204.1, 204.2, 205, 205.5, 206, 206.5, 208, 209, and 212, subdivision (d) of Section 213, Sections 221, 222, 222.5, 223, and 224, subdivision (a) of Section 226, Sections 226.3, 226.7, 227, 227.3, 230, 230.1, 230.2, 230.3, 230.4, 230.7, 230.8, and 231, subdivision (c) of Section 232, subdivision (c) of Section 232.5, and Cal. Lab. Code sections 233, 510, 511, 512, 513 & 1102.5., should the Agency not notify the AEs through its legal representative according to Cal. Lab. Code §2698.3.

Kind regards,

Brett Szmanda Esq.
CA State Bar #288688
Attorney for AEs
818-291-3790
Bszmanda@gmail.com

February 14th, 2013

cc

Promontory Financial Group
Randstad USA

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et. al



**SENDER: COMPLETE THIS SECTION** / **COMPLETE THIS SECTION ON DELIVERY**

2. Article Number  7010 0290 0001 9301 9519
PS Form 3811, February 2004   Domestic Return Receipt

---

2. Article Number  7010 0290 0001 9301 9657
PS Form 3811, February 2004   Domestic Return Receipt

---

WRIGHT, POULIOT & UBERTI v RANDSTAD, PFG & RH et al

74

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| BRETT SZMANDA<br>State Bar # 288688,<br>2030 Main Street Suite 1040<br>Irvine, CA 92614<br>TELEPHONE NO.: 818-291-3790    FAX NO.: 9495537732<br>ATTORNEY FOR *(Name)*: Justin Wright, Jean-Laurent Pouliot & Vincent Uberti | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**04/19/2013** at 03:27:28 PM<br>Clerk of the Superior Court<br>By Irma Cook, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 751 W SANTA ANA BLVD.
MAILING ADDRESS: 751 W SANTA ANA BLVD.
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: CIVIL COMPLEX CENTER SANTA ANA

CASE NAME:
Wright, Pouliot & Uberti v. Randstad, Robert Half & Promontory et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 30-2013-00644746-CU-OE-CXC |
| | | | JUDGE: Judge Steven L. Perk |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

**2.** This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
 a. [ ] Large number of separately represented parties
 b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
 c. [✓] Substantial amount of documentary evidence
 d. [ ] Large number of witnesses
 e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
 f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply)*: a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
**4.** Number of causes of action *(specify)*: TWENTY-TWO
**5.** This case [✓] is [ ] is not a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 19th, 2013
Brett Szmanda, Esq.
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**☑ Plaintiff must serve a copy of these Guidelines with the Summons and Complaint.**



# GUIDELINES

## ALL COMPLEX CIVIL DEPARTMENTS

Welcome to the Complex Civil Litigation Program. Orange County Superior Court is one of six courts designated by the California Judicial Council as pilot project courts to handle solely complex civil litigation. These pilot courts were established to apply case management principles to improve the effective administration of justice by reducing the time and expense normally associated with the litigation of complex civil cases. It has been our experience that these principles make it easier to prepare these cases for trial by providing a more orderly framework for the pre-trial phase of the litigation.

The result is a greater opportunity for early case resolution through mediation and settlement, and improving the way complex cases are tried by encouraging the use of technology.

Counsel's familiarity with the applicable *California Rules of Court ["Local Rules"]*, *Local Rules – Superior Court of California, County of Orange*, and these *Guidelines* is expected. The *Guidelines* should answer most procedural questions and assist you in feeling comfortable in our courtrooms.

### COURTROOM DEMEANOR, CONDUCT AND ETIQUETTE

Counsel are expected to adhere to the provisions of the *California Attorney Guidelines of Civility and Professionalism*. (State Bar of the State of California, adopted July 20, 2007, attached to these *Guidelines* as Appendix 1.)

1

## I. GENERAL MATTERS

1. When issued by the court, the provisions of the Case Management Order in the particular action shall govern over these _Guidelines_. Procedural matters not provided for in these _Guidelines_ or in a Case Management Order shall be governed by the pertinent provisions of the California statutes, the California Rules of Court, and the California Standards of Judicial Administration. The purpose of these _Guidelines_ is to supplement but not contradict the law governing civil procedure.

2. The Superior Court of California, County of Orange has established a system for e-filing in accordance with Code of Civil Procedure §1010.6 and California Rules of Court, rule 2.250 _et seq._ All papers filed in complex civil cases must be electronically filed unless a party has been specifically excused by the Court from the requirement, pursuant to the _Local Rules – Superior Court of California, County of Orange_ ("local rules"), rule 308. To register for the program and to obtain additional information, go to: www.occourts.org/complexcivil/ .

3. Cross-complainants must serve a copy of these guidelines and give notice of any scheduled hearings and depositions at the time the cross-complaint is served.

4. Information about filing requirements or fees is available on the court's Internet home page at: http://www.occourts.org, or by telephone at (657) 622-5314. The local rules are available on the court's public internet home page.

5. Telephone appearances are conducted through **CourtCall**, pursuant to the provisions of California Rules of Court, Rule 3.670. Parties are encouraged to seek further information concerning guidelines and protocols from **CourtCall** at (310) 342-0888 or (888) 88-COURT.

## II. Initial Case Management Conference:

The Initial Case Management Conference shall take place in conformance with the requirements set forth in California Rules of Court, rule 3.750. The Initial Case Management Conference is generally scheduled approximately 90 days after the action is filed. Plaintiff is required to give notice of this conference date to all other parties. Thereafter, Status Conferences shall be set in consultation with the Court, according to the needs of the parties.

## III. Case Management Conference and Status Conference Statements:

The judges of the Civil Complex Center have determined that Judicial Council form CM-110, _Civil Case Management Statement_ required by California Rules of Court, Rule 3.725(c) for some civil cases, is inadequate to provide the judges the information they need when determining how a particular complex case should be managed. _Form CM-110 should not be used in any action designated or provisionally designated as_

*complex.*  Instead, the parties shall file with the court either a Case Management Conference Statement or a Status Conference Statement as described below.

Counsel must file an updated Conference Statement for *each* Case Management or Status Conference.  The Conference Statement is due no later than 5 court days prior to the hearing.

A Status Conference Statement may be filed as an alternative to the Case Management Conference Statement when appropriate.  A Status Conference Statement is generally less detailed than a Case Management Conference Statement and is to be used to advise the court of progress or developments in the case which have occurred since the last review hearing.

A joint statement of the parties is preferred by the court whenever possible.

## IV. CASE MANAGEMENT ORDERS:

Case Management Orders are not required in all cases, but they may be helpful in cases where the sequencing and timing of key events is necessary in the management of the litigation and preparation of the case for trial.  However, even if a Case Management Order is not necessary in a particular case, *all complex cases must be managed by counsel, or the court, or both.*

The goal of case management is to bring about a just resolution as speedily and economically as possible.  To be effective, case management should be tailored to the needs of the particular litigation and to the resources available; make-work activity should be avoided.  The parties or the court should develop and monitor an effective plan for the orderly conduct of pretrial and trial proceedings.  A case management plan should prescribe a series of procedural steps, with firm dates, giving direction and order to the case as it progresses through pretrial proceedings to summary disposition or trial. The setting of interim time limits and deadlines is often a necessary part of an effective case management plan.

## V. LAW AND MOTION:

1. **Meet and Confer**: This court adopts the view that pre-filing conferences between counsel may be useful in avoiding useless or unnecessary motions. Therefore, prior to the hearing of any motion, petition or application, except applications to appear *pro hac vice* and motions to withdraw as counsel of record, all counsel and parties appearing in *propria persona* shall confer in a good faith attempt to eliminate the necessity of the hearing or resolve as many disputes as possible.

   Counsel for the moving party shall arrange the conference to meet and confer and, at least 3 calendar days before the hearing, file with the court a statement entitled "Meet and Confer," summarizing the issues remaining in dispute and the respective positions taken.

2. **Tentative Rulings**: Members of the Complex Civil Panel may publish tentative law and motion rulings by any system described in Local Rule 382.

3. **Off Calendars and Continuances:** In order to promote judicial economy and avoid wasting court resources, counsel for moving parties must notify the courtroom clerk as soon as possible if any matter will be taken off calendar. Stipulations between the parties to continue a matter must be approved by the court.

## VI. EX PARTE APPLICATIONS:

1. The court's consideration of an *ex parte* application will not interfere with or delay any trial in progress. The moving party is expected to adhere to the provisions of California Rules of Court, Rule 3.1200 – 3.1207. All papers necessary to the determination of the application, including any proposed pleading, motion or order, must be submitted with the *ex parte* application. Counsel should contact the courtroom clerk to verify any specific deadlines for the submission of moving papers or other preferences applicable to that department. Counsel may also contact the courtroom clerk to inquire if oral argument will be permitted, or if the court will rule based on the application and any written opposition.

2. The application shall include a declaration of Notice of Ex Parte Hearing and a proposed order; and shall state in the notice the irreparable harm, immediate danger or other basis for *ex parte* relief that will result if the requested relief is not granted until a regularly noticed motion may be heard.

## VII. MANDATORY SETTLEMENT CONFERENCES ("MSC's"):

Compliance with Local Rule 316 is required.

All of the judges at the Civil Complex Center are willing to help another judge in the settlement of a complex case depending upon the judge's available calendar. If the parties agree to have a mandatory settlement conference conducted by a judge other than the assigned judge, the parties should first determine the other judge's availability before asking the assigned judge to order the settlement conference. However, it is not presumed that the judge to whom a case is assigned should not conduct the mandatory settlement conferences in his or her cases. If a party objects to the trial judge's participation in the MSC, the party must advise the judge or the courtroom clerk of its objection prior to the setting of the MSC. Counsel are advised to check with the court to determine its preference in this regard.

## VIII. Pre-trial Conferences

1. A Pre-trial Conference may be scheduled 30-90 days before trial for the purpose of determining the readiness of the parties and    resolving procedural issues concerning the trial. The goal of the Pre-trial Conference is to make the trial proceed as predictably and smoothly as possible. **The Pre-trial**

4

**Conference is not a substitute for the Issues Conference required by Local Rule 317.**

2. At the Pre-trial Conference, counsel should be prepared to state whether his or her client will be using the electronic presentation of evidence at the trial. Using electronic equipment to present evidence at trial requires preparation, organization and cooperation by the parties. The court expects that the parties will work together in devising a protocol for the pre-marking of exhibits by using prefixes or a super-numeration system to designate the proponent of the evidence. Where there are multiple pages to a single exhibit, each page should be bates-stamped. Counsel should contact the courtroom clerk to determine if the trial judge has a specific preference for how exhibits should be marked.

3. In a case where it is reasonable to presume voluminous documents will be produced during discovery, counsel are urged to agree upon a protocol for the pre-marking of exhibits at the earliest time possible, preferably before the initiation of discovery and delivery to a document depository. It is less expensive to mark and index voluminous documents as they are deposited than when it is done on the eve of trial.

4. Counsel are required to cooperate throughout the trial so that one party's electronic exhibits are available to the other side to display during cross-examination.

5. The electronic version of documents, photographs, charts or other demonstrative evidence may be substituted for the actual exhibit at trial upon the stipulation of the parties and order of the court. This guideline is not meant to alter the rules of discovery or the obligation of a party to make available the original of a document for inspection by another party through discovery or at the Issues Conference.

6. Physical exhibits and documents are not required to be presented in a digitalized format. However, evidence which has not been presented in electronic form customarily will be ordered by the court returned at the end of the appeal period to the party which offered it. Before trial commences, counsel will be asked to sign a stipulation for the return and maintenance of the exhibits. Plaintiff will maintain joint exhibits unless the court orders otherwise.

## IX. Use of the Court's Evidence Presentation Systems

1. **On-Site Electronic Evidence Presentation Systems:** Every courtroom has the capability of being equipped with court-based evidence presentation systems for use by the parties. Counsel are strongly encouraged to take advantage of the benefits of the electronic presentation of evidence when in trial at the Civil Complex Center to enhance the orderly and effective presentation of evidence, reduce concerns about the custody and security of exhibits, and reduce the work and expense associated with the tagging, storing and transporting of exhibits. In an appropriate case, the court may require the

5

use of an electronic evidence presentation system. Electronic evidence presentation systems must be compatible with the court's infrastructure (video distribution amplifier, wiring, conduit, floor receptacles and connectors).

2. **Electronic Evidence Standard Format:** Counsel presenting evidence that is exclusively electronic in form must present the evidence in PDF file format and stored on CD-R. Whenever evidence is presented electronically, the physical custody of exhibits by the clerk is replaced by the electronic record of the exhibits. Evidence must be in sequential order with the exception of JPEG and MPEG files which shall be stored on separate discs. Counsel may also prepare electronic evidence using alternate non-proprietary formats subject to the approval of the court. The compact discs (CDs) must be labeled as follows:

Case #
Case Name
Exhibits _____ to _____
(Original or Backup copy)

The courtroom clerk will maintain an updated exhibit list. When evidence is electronically presented at the trial, the court may require counsel to periodically submit to the clerk an up-to-date CD containing exhibits received into evidence.

It is counsels' responsibility to identify and track redactions, modifications, and substitution of exhibits. Counsel are expected to be prepared to submit an up-to-date evidence CD with all redactions, modifications, and substitutions, as well as impeachment documents used, upon the courtroom clerk's request.

Impeachment exhibits are not pre-marked. However, counsel are responsible for having the document electronically recorded upon being offered into evidence (exhibit numbers may be reserved for this purpose).

If the jury will be provided the evidence in electronic format for its deliberation, the parties are required to meet and confer and submit the final joint exhibit list containing only those exhibits received into evidence. The CD used by the jurors must include the joint exhibit list and the electronically stored exhibits which have been entered into evidence. Submission of the joint evidence CD also serves as a stipulation that all exhibits presented in electronic form to the jury are complete and correct. Any disagreement must be brought to the attention of the court at the earliest reasonable time. Counsel must lodge two (2) evidence CDs of all exhibits received into evidence.

## X. TRIALS – MOTIONS IN LIMINE

Counsel should attempt to resolve evidentiary disputes at the Local Rule 317 Issues Conference before resorting to filing a motion *in limine*. It is frequently more productive of court time, and the client's money for counsel to informally address at the Issues Conference the issues which could be raised in motions *in limine* and, instead of a motion, present a stipulation to the court on uncontested issues. Matters of day-to-day

6

trial logistics and common professional courtesy should not be the subject of motions *in limine*. These are matters of common professional courtesy that should be accorded counsel in all trials. See, <u>Kelly v. New West Federal Savings</u> (1996) 49 Cal.App.4th 659,671.

APPENDIX 1

**California Attorney Guidelines of Civility and Professionalism**
(Abbreviated, adopted July 20, 2007)

INTRODUCTION. As officers of the court with responsibilities to the administration of justice, attorneys have an obligation to be professional with clients, other parties and counsel, the courts and the public. This obligation includes civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, and cooperation, all of which are essential to the fair administration of justice and conflict resolution.

These are guidelines for civility. The Guidelines are offered because civility in the practice of Law promotes both the effectiveness and the enjoyment of the practice and economical client representation. The legal profession must strive for the highest standards of attorney behavior to elevate and enhance our service to justice. Uncivil or unprofessional conduct not only disserves the individual involved, it demeans the profession as a whole and our system of justice.

These voluntary Guidelines foster a level of civility and professionalism that exceed the minimum requirements of the mandated Rules of Professional Conduct as the best practices of civility in the practice of law in California. The Guidelines are not intended to supplant these or any other rules or laws that govern attorney conduct. Since the Guidelines are not mandatory rules of professional conduct, nor rules of practice, nor standards of care, they are not to be used as an independent basis for disciplinary charges by the State Bar or claims of professional negligence.

The Guidelines are intended to complement codes of professionalism adopted by bar associations in California. Individual attorneys are encouraged to make these guidelines their personal standards by taking the pledge that appears at the end. The Guidelines can be applicable to all lawyers regardless of practice area. Attorneys are encouraged to comply with both the spirit and letter of these guidelines, recognizing that complying with these guidelines does not in any way denigrate the attorney's duty of zealous representation.

SECTION 1. The dignity, decorum and courtesy that have traditionally characterized the courts and legal profession of civilized nations are not empty formalities. They are essential to an atmosphere that promotes justice and to an attorney's responsibility for the fair and impartial administration of justice.

SECTION 2. An attorney should be mindful that, as individual circumstances permit, the goals of the profession include improving the administration of justice and contributing time to persons and organizations that cannot afford legal assistance.

An attorney should encourage new members of the bar to adopt these guidelines of civility and professionalism and mentor them in applying the guidelines.

SECTION 3. An attorney should treat clients with courtesy and respect, and represent them in a civil and professional manner. An attorney should advise current and potential clients that it is not acceptable for an attorney to engage in abusive behavior or other conduct unbecoming a member of the bar and an officer of the court.

As an officer of the court, an attorney should not allow clients to prevail upon the attorney to engage in uncivil behavior.

An attorney should not compromise the guidelines of civility and professionalism to achieve an advantage.

SECTION 4. An attorney's communications about the legal system should at all times reflect civility, professional integrity, personal dignity, and respect for the legal system. An attorney should not engage in conduct that is unbecoming a member of the Bar and an officer of the court.

Nothing above shall be construed as discouraging the reporting of conduct that fails to comply with the Rules of Professional Conduct.

SECTION 5. An attorney should be punctual in appearing at trials, hearings, meetings, depositions and other scheduled appearances.

SECTION 6. An attorney should advise clients that civility and courtesy in scheduling meetings, hearings and discovery are expected as professional conduct.

In considering requests for an extension of time, an attorney should consider the client's interests and need to promptly resolve matters, the schedules and willingness of others to grant reciprocal extensions, the time needed for a task, and other relevant factors.

Consistent with existing law and court orders, an attorney should agree to reasonable requests for extensions of time that are not adverse to a client's interests.

7

SECTION 7. The timing and manner of service of papers should not be used to the disadvantage of the party receiving the papers.

SECTION 8. Written materials directed to counsel, third parties or a court should be factual and concise and focused on the issue to be decided.

8

SECTION 9. Attorneys are encouraged to meet and confer early in order to explore voluntary disclosure, which includes identification of issues, identification of persons with knowledge of such issues, and exchange of documents.

Attorneys are encouraged to propound and respond to formal discovery in a manner designed to fully implement the purposes of the California Discovery Act.

An attorney should not use discovery to harass an opposing counsel, parties or witnesses. An attorney should not use discovery to delay the resolution of a dispute.

SECTION 10. An attorney should consider whether, before filing or pursuing a motion, to contact opposing counsel to attempt to informally resolve or limit the dispute.

SECTION 11. It is important to promote high regard for the profession and the legal system among those who are neither attorneys nor litigants. An attorney's conduct in dealings with nonparty witnesses should exhibit the highest standards of civility.

SECTION 12. In a social setting or otherwise, an attorney should not communicate ex parte with a judicial officer on the substance of a case pending before the court, unless permitted by law.

SECTION 13. An attorney should raise and explore with the client and, if the client consents, with opposing counsel, the possibility of settlement and alternative dispute resolution in every case as soon possible and, when appropriate, during the course of litigation.

SECTION 14. To promote a positive image of the profession, an attorney should always act respectfully and with dignity in court and assist the court in proper handling of a case.

SECTION 15. An attorney should not take the default of an opposing party known to be represented by counsel without giving the party advance warning.

SECTION 16. An attorney should avoid even the appearance of bias by notifying opposing counselor an unrepresented opposing party of any close, personal relationships between the attorney and a judicial officer, arbitrator, mediator or court-appointed expert and allowing a reasonable opportunity to object.

SECTION 17. An attorney should respect the privacy rights of parties and non-parties.

SECTION 18. An attorney should negotiate and conclude written agreements in a cooperative manner and with informed authority of the client.

In addition to other applicable Sections of these Guidelines, attorneys engaged in a transactional practice have unique responsibilities because much of the practice is conducted without judicial supervision.

SECTION 19. In addition to other applicable Sections of these Guidelines, in family law proceedings an attorney should seek to reduce emotional tension and trauma and encourage the parties and attorneys to interact in a cooperative atmosphere, and keep the best interests of the children in mind.

SECTION 20. In addition to other applicable Sections of these Guidelines, criminal law practitioners have unique responsibilities. Prosecutors are charged with seeking justice, while defenders must zealously represent their clients even in the face of seemingly overwhelming evidence of guilt. In practicing criminal law, an attorney should appreciate these roles.

SECTION 21. Judges are encouraged to become familiar with these Guidelines and to support and promote them where appropriate in court proceedings.

---

ATTORNEY'S PLEDGE. I commit to these Guidelines of Civility and Professionalism and will be guided by a sense of integrity, cooperation and fair play.

I will abstain from rude, disruptive, disrespectful, and abusive behavior, and will act with dignity, decency, courtesy, and candor with opposing counsel, the courts and the public.

As part of my responsibility for the fair administration of justice, I will inform my clients of this commitment and, in an effort to help promote the responsible practice of law, I will encourage other attorneys to observe these Guidelines.

9

(Rev. May 4, 2010)

THE LAW OFFICES OF BRETT SZMANDA
2030 MAIN STREET SUITE 1040
Irvine, CA 92614
Tel: 818-291-3790 - Fax: 949-553-7732
Bszmanda@gmail.com

## NOTICE AND AKNOWLEDEMENT OF RECIEPT OF SERVICE OF PROCESS
## ORANGE COUNTY SUPERIOR COURT – CIVIL COMPLEX CENTER SANTA ANA

### JUSTIN WRIGHT; JEAN-LAURENT POULIOT; & VINCENT UBERTI v. RANDSTAD US; ROBERT HALF INTERNATIONAL; PROMONTORY FINANCIAL GROUP
### Case Number 30-2013-00644746-CU-OE-CXC

To: Sheryl Skibbe, Attorney for Defendant Randstad

       This summons is served pursuant to Section 415.30 of the California Code of Civil Procedure. Failure to complete this form and return it to the sender within 20 days may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons upon you in any other manner permitted by law. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, this form must be signed in the name of such entity by you or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. Section 415.30 provides that this summons is deemed served on the date of execution of an acknowledgment of receipt of summons.

_____
Signature of Sender

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS

This acknowledges receipt on April 24, 2013 of a copy of the summons and of the complaint at 2029 Century Park East, Suite 3500, Los Angeles ,CA 90067-3021.

Date:     _May 13, 2013_____
         (Date this acknowledgement is executed)

Signature:   _____, Attorney for Randstad_
         (Person acknowledging receipt, and Title)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Brett Szmanda (SBN 288688) 2030 Main Street Suite 1040 Irvine, CA 92614 | |

TELEPHONE NO.: 818-291-3790    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Justin Wright, Jean-Laurent Pouliot & Vince Urbeti

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS:
MAILING ADDRESS: 751 West Santa Ana Blvd.
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: CIVIL COMPLEX CENTER SANTA ANA

| PLAINTIFF/PETITIONER: Justin Wright, Jean-Laurent Pouliot, Vince Urbeti | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Randstad US, Promontory Financial Group, RHI | 30-2013-00644746-CU-OE-CXC |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents):* CIVIL COMPLEX DEPARTMENT GUIDELINES

3. a. Party served *(specify name of party as shown on documents served):*

   Randstad US

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

   Sheryl Skibbe, Attorney for Randstad US

4. Address where the party was served:
   2029 Century Park East, Sutie 3500, Los Angeles ,CA 90067-3021
5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):*                     (2) at *(time):*
   b. ☐ **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*          or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: Justin Wright, Jean-Laurent Pouliot, Vince Urbeti | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Randstad US, Promontory Financial Group, RHI | 30-2013-00644746-CU-OE-CXC |

5.  c.  [✓]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

      (1) on *(date):* April 23rd, 2013       (2) from *(city):* Huntington Beach

      (3) [✓] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

      (4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  [ ]  **by other means** *(specify means of service and authorizing code section):*

      [ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  [ ]  as an individual defendant.
  b.  [ ]  as the person sued under the fictitious name of *(specify):*
  c.  [ ]  as occupant.
  d.  [✓]  On behalf of *(specify):* Randstad US
      under the following Code of Civil Procedure section:

      [✓] 416.10 (corporation)       [ ] 415.95 (business organization, form unknown)
      [ ] 416.20 (defunct corporation)       [ ] 416.60 (minor)
      [ ] 416.30 (joint stock company/association)       [ ] 416.70 (ward or conservatee)
      [ ] 416.40 (association or partnership)       [ ] 416.90 (authorized person)
      [ ] 416.50 (public entity)       [ ] 415.46 (occupant)
                     [ ] other:

7. **Person who served papers**
  a.  Name: Andrew Ackerman
  b.  Address: 401 8th Street Apt. C
  c.  Telephone number: 314-737-2493
  d.  **The fee** for service was:  $ 0.00
  e.  I am:
      (1) [✓] not a registered California process server.
      (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
      (3) [ ] a registered California process server:
          (i) [ ] owner [ ] employee [ ] independent contractor.
          (ii) Registration No.:
          (iii) County:

8. [✓] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. [ ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 04/23/2013

Andrew Ackerman
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

*[signature]*
(SIGNATURE )

# EXHIBIT B

1   SEYFARTH SHAW LLP
    Sheryl L. Skibbe (State Bar No. 199441)
2   2029 Century Park East, Suite 3500
    Los Angeles, California 90067-3063
3   Telephone: (310) 277-7200
    Facsimile: (310) 201-5219
4   E-Mail: sskibbe@seyfarth.com

5   Brian P. Long (State Bar No. 232746)
    John H. Dolan (State Bar No. 244668)
6   333 South Hope Street, Suite 3900
    Los Angeles, California 90071-1406
7   Telephone: (213) 270-9600
    Facsimile: (213) 270-9601
8   E-Mail: bplong@seyfarth.com
            jdolan@seyfarth.com
9
    Attorneys for Defendant
10  RANDSTAD US, LP

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                        COUNTY OF ORANGE

14

15  JUSTIN WRIGHT, JEAN-LAURENT         ) Case No. 30-2013-00644746-CU-OE-CXC
    POULIOT; and VINCENT UBERTI; on     )
16  behalf of themselves and all others similarly ) Hon. Steven L. Park
    situated,                           )
17                                      ) ANSWER OF DEFENDANT RANDSTAD
              Plaintiffs,               ) US TO PLAINTIFF'S UNVERIFIED
18                                      ) COMPLAINT
         v.                             )
19                                      ) Complaint Filed:        04/19/13
    RANDSTAD US; ROBERT HALF            ) Trial Date:             None
20  INTERNATIONAL; PROMONTORY           )
    FINANCIAL GROUP, and DOES 1-100,    )
21  inclusive,                          )
                                        )
22  Defendants.                         )
                                        )

23

24

25

26

27

28

────────────────────────────────────────────────────
    DEFENDANT RANDSTAD US, LP'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

1    Defendant Randstad US, LP (erroneously sued as "Randstad US" and hereafter referred

2    to as "Defendant") hereby answers for itself and no other defendant the unverified Complaint of

3    Plaintiffs Justin Wright, Jean-Laurent Pouliot, and Vincent Uberti (collectively "Plaintiffs") as

4    follows:

5                                **GENERAL DENIAL**

6        Pursuant to the provisions of California Code of Civil Procedure section 431.30(d),

7    Defendant denies, generally and specifically, each and every allegation, statement, matter and

8    purported cause of action contained in the Complaint, and without limiting the generality of the

9    foregoing, denies, generally and specifically, that Plaintiffs and those persons they seek to

10   represent have been damaged in the manner or sums alleged, or in any way at all, by reason of

11   any acts or omissions of Defendant.

12                      **SEPARATE AND AFFIRMATIVE DEFENSES**

13       In further answer to the Complaint, and as separate and distinct affirmative defenses,

14   Defendant alleges the following defenses. In asserting these defenses, Defendant does not

15   assume the burden of proof as to matters that, pursuant to law, are Plaintiffs' burden to prove.

16                           **FIRST AFFIRMATIVE DEFENSE**

17                          **(Failure to State a Cause of Action)**

18       1.    Plaintiffs fail to state facts sufficient to constitute a cause of action against

19   Defendant.

20                          **SECOND AFFIRMATIVE DEFENSE**

21                               **(Statute of Limitations)**

22       2.    The claims of Plaintiffs and any persons whom Plaintiffs purport to represent by

23   this action are barred, in whole or in part, by the applicable statutes of limitations, including,

24   without limitation, those set forth in California Code of Civil Procedure §§ 337, 338.1, 339, 340,

25   and 343 and California Business & Professions Code § 17208.

26                           **THIRD AFFIRMATIVE DEFENSE**

27                                    **(Estoppel)**

28       3.    Defendant is informed and believes and thereon alleges that Plaintiffs and those

---

-2-

DEFENDANT RANDSTAD US, LP'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

1  persons they purport to represent have engaged in conduct by which they are estopped from

2  asserting the causes of action in the Complaint against Defendant.

3  **FOURTH AFFIRMATIVE DEFENSE**

4  **(Unclean Hands)**

5      4.    Defendant is informed and believes and thereon alleges that Plaintiffs and those

6  persons they purport to represent have engaged in conduct that bars the claims for relief in the

7  Complaint, in whole or in part, by the doctrine of unclean hands.

8  **FIFTH AFFIRMATIVE DEFENSE**

9  **(Laches)**

10      5.    Defendant is informed and believes and thereon alleges that Plaintiffs and those

11  persons they purport to represent have engaged in conduct that bars the claims for relief in the

12  Complaint, in whole or in part, by the doctrine of laches.

13  **SIXTH AFFIRMATIVE DEFENSE**

14  **(Good Faith Dispute)**

15      6.    Plaintiffs and those persons Plaintiffs purports to represent by this action are not

16  entitled to Labor Code penalties because a good faith dispute exists as to the monies allegedly

17  owed.

18  **SEVENTH AFFIRMATIVE DEFENSE**

19  **(*De Minimis* Doctrine)**

20      7.    Plaintiffs' claims fail to the extent that even if Plaintiffs or any purportedly

21  similarly situated current or former employee was not paid for any work performed while

22  employed by Defendant, which Defendant denies, such work is *de minimis*.

23  **EIGHTH AFFIRMATIVE DEFENSE**

24  **(Set Off)**

25      8.    To the extent that Plaintiffs and any persons Plaintiffs purport to represent by this

26  action are entitled to damages or penalties, Defendant is entitled to an offset for any overpayment

27  of wages, forgiveness of debt, or other consideration previously provided to those parties.

28

**NINTH AFFIRMATIVE DEFENSE**

**(Res Judicata/Collateral Estoppel)**

9.    Plaintiffs' Complaint is barred by the doctrines of res judicata and collateral estoppel to the extent that Plaintiffs and/or putative class members have asserted any claims as those alleged in the Complaint in a previous adjudication on the merits.

**TENTH AFFIRMATIVE DEFENSE**

**(Release)**

10.    Plaintiffs' Complaint, and each cause of action attempted to be stated therein, is barred by the doctrine of release as to Plaintiffs and/or any putative class member who has given a release in exchange for adequate consideration.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Agreement to Arbitrate)**

11.    Plaintiffs' Complaint, and each cause of action attempted to be stated therein, must be brought in individual arbitration to the extent that Plaintiffs and/or any putative class member has entered into an arbitration agreement with Defendant.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Accord and Satisfaction)**

12.    Defendant alleges that Plaintiffs' claims are barred by the doctrine of accord and satisfaction.  Specifically, Plaintiffs and the putative class were properly and fully compensated for all work performed for Defendant, and acceptance of these payments constituted an accord and satisfaction for all debts, if any, owed by Defendant.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(No Willfulness)**

13.    Plaintiffs' Complaint, and each purported cause of action contained therein, is barred because the alleged conduct of Defendant and its agents was not willful.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust)

14.     Plaintiffs' claims for retaliation are barred because Plaintiffs failed to exhaust their administrative remedies.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Statutory Penalties Unconstitutional)

15.     Plaintiffs' claims for statutory penalties are barred because the provision of California law allowing the award of statutory penalties, and the substantive rules, procedures and standards for determining whether or not to award them, and, if so, in what amount, violate Defendant's rights to due process and equal protection under the United States and California Constitutions.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Excessive Fines)

16.     Plaintiffs' claims for statutory penalties are barred because they constitute an excessive fine in violation of the Eighth Amendment of the United States Constitution.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Workers' Compensation Preemption)

17.     Any and all claims by Plaintiffs based in whole or in part upon any alleged physical or emotional injury or distress, or any disability, are barred and preempted by the exclusivity provision of the California Workers' Compensation Act.  Cal. Lab. Code §§ 132a and 3200 *et seq.*.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Award of Punitive Damages is Unconstitutional)

18.     To the extent that Plaintiffs seek punitive or exemplary damages in their Complaint, they violate the rights of Defendant to protection from "excessive fines" as provided in the Eighth Amendment to the United States Constitution and in Article I, Section 17 of the Constitution of the State of California and the rights of Defendant to procedural and substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution and

1   under the Constitution of the State of California.

2   <center>**NINETEENTH AFFIRMATIVE DEFENSE**</center>

3   <center>**(Failure to Mitigate Damages)**</center>

4        19.    Plaintiffs have failed to mitigate their damages, if any, as required by law.

5   <center>**PRAYER**</center>

6       WHEREFORE, Defendant prays for judgment as follows:

7       1.    That Plaintiffs, on behalf of themselves and any persons whom Plaintiffs purport

8   to represent by this action, take nothing by the unverified Complaint;

9       2.    That judgment be entered in favor of Defendant and against Plaintiffs and all

10   persons Plaintiffs purport to represent by this action on all causes of action;

11       3.    That Defendant be awarded reasonable attorneys' fees according to proof;

12       4.    That Defendant be awarded the costs of suit incurred herein; and

13       5.    That Defendant be awarded such other and further relief as the Court may deem

14   appropriate and proper.

15

16   DATED: May 22, 2013            SEYFARTH SHAW LLP

17

18                               By

19                                  Brian P. Long
                               Attorneys for Defendant

20                                  RANDSTAD US, LP

21

22

23

24

25

26

27

28

DEFENDANT RANDSTAD US, LP'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

1
## PROOF OF SERVICE

2 STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3       I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 333 South Hope Street, Suite

4 3900, Los Angeles, CA 90071-1406.

5       On May 22, 2013, I served the foregoing document, described as **ANSWER OF DEFENDANT RANDSTAD US, LP TO PLAINTIFFS' UNVERIFIED COMPLAINT**, on

6 the interested parties in this action:

7 [xx]  by placing true copies thereof in sealed envelopes, addressed as stated on the following mailing list:

8

9
Brett Szmanda
John C. Rarick
Simon Pancyzk
Steven L. Stern
2030 Main Street Suite 1040
Irvine, CA 92614
Phone: (818) 291-3790

10

11

12 [XX]  **(VIA U.S. MAIL)**

13     As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S.

14 postal service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party

15 served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the day of deposit for mailing identified in the affidavit.

16 [  ]  **FEDERAL EXPRESS -** by placing the document(s) listed above in a sealed **Federal Express** envelope with postage paid on account and deposited with **Federal Express** at

17 Los Angeles, California, addressed as set forth above.

18 [  ]  **FACSIMILE -** I sent such document from **facsimile machine** (213) 270-9601.  I certify that said transmission was completed and that all pages were received and that a report

19 was generated by facsimile machine (213) 270-9601 which confirms said transmission and receipt.  I, thereafter, mailed a copy to the interested party(ies) in this action by

20 placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed above.

21 [XX]  (STATE) I declare under penalty of perjury under the laws of the State of California that

22 the above is true and correct.

23 Executed on May 22, 2013, at Los Angeles, California.

24 Blanca Guerra

25

26

27

28

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
JUSTIN WRIGHT; JEAN-LAURENT POULIOT; and VINCENT UBERTI

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
RANDSTAD US, LP (erroneously sued as "RANDSTAD US")

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Brett Szmanda (SBN 288688), John C. Rarick (SBN 285862)
Simon Panczyk (SBN 287053), Steven L. Stern (SBN43729)
2030 Main Street, Suite 1040
Irvine, CA 92614
TEL: 818-291-3790
FAX: 949-553-7732

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Sheryl L. Skibbe (SBN 199441)
Brian P. Long (SBN 232746)
SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
TEL: (310) 277-7200
FAX: (310) 201-5219

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)
**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No  ☐ **MONEY DEMANDED IN COMPLAINT: $** Not Stated

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §§ 1332(d)(2), 1332(c), and 28 U.S.C. § 1441(a) and 1446. Plaintiffs purport to assert putative class claims and individual claims in violation of Cal. Labor Code, common law, and Unfair Business Practices.

**VII. NATURE OF SUIT** (Place an X in one box only).

OTHER STATUTES: ☐ 375 False Claims Act, ☐ 400 State Reapportionment, ☐ 410 Antitrust, ☐ 430 Banks and Banking, ☐ 450 Commerce/ICC Rates/Etc., ☐ 460 Deportation, ☐ 470 Racketeer Influenced & Corrupt Org., ☐ 480 Consumer Credit, ☐ 490 Cable/Sat TV, ☐ 850 Securities/Commodities/Exchange, ☐ 890 Other Statutory Actions, ☐ 891 Agricultural Acts, ☐ 893 Environmental Matters, ☐ 895 Freedom of Info. Act, ☐ 896 Arbitration, ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision, ☐ 950 Constitutionality of State Statutes

CONTRACT: ☐ 110 Insurance, ☐ 120 Marine, ☐ 130 Miller Act, ☐ 140 Negotiable Instrument, ☐ 150 Recovery of Overpayment & Enforcement of Judgment, ☐ 151 Medicare Act, ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.), ☐ 153 Recovery of Overpayment of Vet. Benefits, ☐ 160 Stockholders' Suits, ☐ 190 Other Contract, ☐ 195 Contract Product Liability, ☐ 196 Franchise
REAL PROPERTY: ☐ 210 Land Condemnation, ☐ 220 Foreclosure, ☐ 230 Rent Lease & Ejectment

REAL PROPERTY CONT.: ☐ 240 Torts to Land, ☐ 245 Tort Product Liability, ☐ 290 All Other Real Property
TORTS PERSONAL INJURY: ☐ 310 Airplane, ☐ 315 Airplane Product Liability, ☐ 320 Assault, Libel & Slander, ☐ 330 Fed. Employers' Liability, ☐ 340 Marine, ☐ 345 Marine Product Liability, ☐ 350 Motor Vehicle, ☐ 355 Motor Vehicle Product Liability, ☐ 360 Other Personal Injury, ☐ 362 Personal Injury-Med Malpractice, ☐ 365 Personal Injury-Product Liability, ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability, ☐ 368 Asbestos Personal Injury Product Liability

IMMIGRATION: ☐ 462 Naturalization Application, ☐ 465 Other Immigration Actions
TORTS PERSONAL PROPERTY: ☐ 370 Other Fraud, ☐ 371 Truth in Lending, ☐ 380 Other Personal Property Damage, ☐ 385 Property Damage Product Liability
BANKRUPTCY: ☐ 422 Appeal 28 USC 158, ☐ 423 Withdrawal 28 USC 157
CIVIL RIGHTS: ☐ 440 Other Civil Rights, ☐ 441 Voting, ☐ 442 Employment, ☐ 443 Housing/Accomodations, ☐ 445 American with Disabilities-Employment, ☐ 446 American with Disabilities-Other, ☐ 448 Education

PRISONER PETITIONS Habeas Corpus: ☐ 463 Alien Detainee, ☐ 510 Motions to Vacate Sentence, ☐ 530 General, ☐ 535 Death Penalty; Other: ☐ 540 Mandamus/Other, ☐ 550 Civil Rights, ☐ 555 Prison Condition, ☐ 560 Civil Detainee Conditions of Confinement
FORFEITURE/PENALTY: ☐ 625 Drug Related Seizure of Property 21 USC 881, ☐ 690 Other
LABOR: ☐ 710 Fair Labor Standards Act, ☐ 720 Labor/Mgmt. Relations, ☐ 740 Railway Labor Act, ☐ 751 Family and Medical Leave Act, ☒ 790 Other Labor Litigation, ☐ 791 Employee Ret. Inc. Security Act

PROPERTY RIGHTS: ☐ 820 Copyrights, ☐ 830 Patent, ☐ 840 Trademark
SOCIAL SECURITY: ☐ 861 HIA (1395ff), ☐ 862 Black Lung (923), ☐ 863 DIWC/DIWW (405 (g)), ☐ 864 SSID Title XVI, ☐ 865 RSI (405 (g))
FEDERAL TAX SUITS: ☐ 870 Taxes (U.S. Plaintiff or Defendant), ☐ 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY: Case Number: **SACV13-00815 CJC (AGRx)**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)   CIVIL COVER SHEET   Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Georgia, California, Washington, D.C. |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _[signature]_      DATE: May 23, 2013

Sheryl L. Skibbe

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

V-71 (02/13)

American LegalNet, Inc.
www.FormsWorkFlow.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney  and the assigned discovery Magistrate Judge is _____.

The case number on all documents filed with the Court should read as follows:

## SACV13− 815 CJC (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [_] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [_] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [_] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.