

1  Brett Szmanda, Esq. (SBN 288688)
   John C. Rarick, Esq. (SBN 285862)
2  Steven L. Stern, Esq. (SBN 43729)
   2030 Main Street, Suite 1040
3  Irvine, CA 92614
   Telephone: (818) 291-3790
4  Facsimile: (949) 553-7732

5  James Kawahito (SBN 234851)
   Email: jkawahito@kswlawyers.com
6  Megan S. Knize (SBN 257970)
   Email: mknize@kswlawyers.com
7  Timothy P. Hennessy (SBN 286317)
   Email: thennessy@kswlawyers.com
8  KAWAHITO SHRAGA & WESTRICK LLP
   1990 South Bundy Drive, Suite 280
9  Los Angeles, California 90025
   Telephone: (310) 746-5300
10 Facsimile: (310) 593-2520

11 Attorneys for Plaintiffs Justin Wright and
   Jean-Laurent Pouliot and Class Members

12
                UNITED STATES DISTRICT COURT
13
          FOR THE CENTRAL DISTRICT OF CALIFORNIA
14

15 JUSTIN WRIGHT et al.,                Case No.:  CV13-cv-00815 CJC (AGR)

16          Plaintiffs,                 **SECOND AMENDED CLASS
                                        ACTION COMPLAINT FOR UNPAID
17    vs.                               WAGES, DAMAGES, RESTITUTION,
                                        INJUNCTIVE AND DECLARATORY
18                                      RELIEF**

19 RANDSTAD US, LP; et al.,             Class Allegations:

20          Defendants.                 1. Failure to Pay Overtime Wages:
                                           California Labor Code §§ 510, 1194
21                                         &1198;
                                        2. Failure to Provide Lawful Wage
22                                         Statements: California Labor Code
                                           § 226 et seq.;
23                                      3. Failure to Pay Wages for Missed
                                           Meal Breaks: California Labor
24                                         Code §§ 510 & 226.7;
                                        4. Failure to Provide Lawful Notice
25                                         Pursuant to California Labor Code
                                           §§ 1400 et seq.;
26                                      5. Waiting Penalties: California Labor
                                           Code § 203;
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6.  Unfair Competition:  California Business and Professions Code §17200 *et seq.*; Individual Allegations
7.  Failure to Provide Records: California Labor Code § 226(c);
8.  Unfair Competition:  California Business and Professions Code §17200 *et seq.*;
9.  Civil Penalties: California Labor Code §2698 *et seq.*

Trial by Jury Demanded by Plaintiffs

Plaintiffs JUSTIN WRIGHT ("WRIGHT") and JEAN-LAURENT POULIOT ("POULIOT") (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, and as representatives of the public, as allowed under the Private Attorney Generals Act ("PAGA"), allege and complain of Defendants herein named, and each of them, as follows:

## I.    SUMMARY OF CAUSES OF ACTION

1.    This action arises out of harm suffered by the Plaintiffs and Proposed Class Members caused by the Defendants' intentional and systematic disregard of California's Wage and Hour Laws, as codified in the California Labor Code and the Industrial Welfare Commission's Wage Orders.

2.    This action is filed on behalf of the Plaintiffs WRIGHT and POULIOT and the proposed PFG Class Members.

**As to Plaintiffs WRIGHT and POULIOT and Members of the Proposed PFG Class:**

3.    The proposed Promontory Financial Group, LLC ("PFG") Class ("PFG Class" or "Class Members") consists of Defendant PFG's non-exempt permanent and temporary employees working on the Independent Foreclosure Review (the "Project") in Orange, California, hired through various temporary employment agencies as "Analyst I" and "Analyst II," and working during the relevant Class Period of four years prior to the filing of Plaintiffs' initial complaint in this action through the date of trial (the "Class Period"). The PFG CLASS also contains a "Randstad Subclass", which is comprised of the PFG CLASS Members placed on the Project through Defendant RANDSTAD.

4.    Class Members performed jobs which include, but are not limited to Input, Validation and Quality Control of client complaints and Quality Assurance. These employees exclusively performed non-exempt repetitive and routine job

1    duties without any significant degree of discretion and/or independent

2    judgment.

3    5.    In executing and completing the Project and discharging WRIGHT and

4        POULIOT and the Class Members, Defendants Randstad US, LP

5        ("RANDSTAD") and PFG (collectively, "Defendants") failed to provide

6        mandatory rest and meal breaks; to provide accurate itemized wage statements;

7        to keep accurate payroll records as prescribed by law; to pay undisputed wages

8        on time and in the full amount owed; to pay discharged employees all of their

9        wages in accordance with the California Labor Code; to provide lawful notice

10       to employees subjected to a mass layoff, as prescribed by the California Labor

11       Code § 1400 *et seq.*; and also committed numerous other violations of the

12       California Labor Code and  IWC Wage Orders pertaining to wages,

13       employment practices and mandatory working conditions.

14   6.    Plaintiffs WRIGHT and POULIOT and the Class Members have suffered

15       financial harm because Defendants failed to follow the California Labor Code

16       and IWC Wage Orders pertaining to wages and mandatory working conditions.

17   7.    PFG Class members are entitled to compensation pursuant to California Labor

18       Code § 558 for Defendants' intentional underpayment of wages.

19   8.    Plaintiffs WRIGHT and POULIOT seek declaratory relief, restitution and

20       compensation for work performed and monies due both to themselves and to

21       the Class Members during the Class Period, based upon information and belief

22       that Defendants are continuing, and will continue, their unlawful practices as

23       described herein.

24   9.    Plaintiffs WRIGHT and POULIOT also seek to serve as representatives of the

25       general public to enforce and uphold California's wage and hour laws as

26       private attorney generals as expressly permitted by California Labor Code §

27

28

Wright v. Randstad                                    SECOND AMENDED COMPLAINT
SACV 8:13-cv-00815-CJC (AGR)

1    2698 *et seq.*, pursuant to the Private Attorneys General Act of 2004 ("PAGA"),

2    and have complied with the required notice provisions.

3    10.    On or about February 16, 2013, Plaintiffs WRIGHT and POULIOT gave

4    written notice to Defendants RANDSTAD and PFG, and to the California

5    Labor and Workforce Development Agency ("LWDA") by certified mail.

6    Plaintiffs waited in excess of 33 days for either RANDSTAD or PFG to take

7    remedial action or for the LWDA to intervene in accordance with California

8    Labor Code §2699.3(c).  True and correct copies of the certified letter and

9    proof of mailing are attached hereto as Exhibit "A." Accordingly, Plaintiffs

10    WRIGHT and POULIOT filed this Class Action Complaint as provided by

11    California Code of Civil Procedure §382 and as specifically permitted by

12    California Labor Code §2699.3(a)(2)(C).

13

14                             **II.    PARTIES**

15    **THE PLAINTIFFS:**

16    11.    At all times herein mentioned, Plaintiffs and the Class Members were residents

17    of the State of California.

18    12.    Plaintiffs WRIGHT and POULIOT were both employees of Defendants

19    RANDSTAD and PFG during the proposed Class Period and are entitled to

20    unpaid wages, including overtime compensation, unpaid bonuses, wage

21    statement penalties, waiting time penalties, compensation for being denied

22    meal and rest periods, back wages pursuant to California Labor Code § 558,

23    and various penalties as provided for in the California Labor Code.  Plaintiffs

24    both regularly performed the functions of "Analyst I" and "Analyst II" while

25    employed on the Project during the Class Period.

26    13.    All positions described herein are uniformly and systematically deemed "non-

27    exempt."

28

-3-

Wright v. Randstad                                    SECOND AMENDED COMPLAINT
SACV 8:13-cv-00815-CJC (AGR)

14.      Plaintiff WRIGHT began working for Defendants on September 26, 2011.

15.      Plaintiff POULIOT began working for Defendants on July 2, 2012.

16.      All of the Class Members are identifiable persons who are or were employed in the State of California by Defendant PFG to work on the Project during the relevant Class period of up to four years prior to the filing of the initial complaint in this action through the date of trial.

**THE DEFENDANTS:**

17.      Defendant PFG is self-described as "a global consulting firm that advises clients on a variety of financial services matters, including regulatory issues, compliance, risk management, liquidity, restructuring, acquisitions, due diligence and internal investigations."   At all times herein mentioned, Defendant PFG conducted business within the state of California, and maintains its corporate headquarters at 801 17th Street, NW, Suite 1100, Washington, DC 20006.

18.      Throughout the relevant Class Period, Defendant PFG was the joint employer of Plaintiffs WRIGHT and POULIOT and the PFG Class Members.  Defendant PFG hired all of the Proposed Randstad Subclass Members through Defendant RANDSTAD and the other Class Members through different temporary agencies.  For the duration of the Class Period, Defendant PFG hired, trained, managed, supervised, and evaluated PFG Class Members while they worked at Defendant PFG's office in Orange, California.  PFG gained a significant benefit from, and in facts its business model is predicated upon, the work provided by these employees.

19.      Defendant RANDSTAD provides office, industrial, technical, creative, and professional staffing services through more than 500 branches across the United States and Canada. At all times herein mentioned, RANDSTAD transacted business through branches throughout the state of California and

-4-

1    within Orange County.  At all times herein mentioned, RANDSTAD was

2    organized under the laws of Delaware, with its principal place of business in

3    the State of Georgia.  During the relevant period in this lawsuit, RANDSTAD

4    was the joint employer of Plaintiffs WRIGHT and POULIOT.  Defendant

5    RANDSTAD recruited, counseled, contacted potential employers, arranged

6    interviews, offered feedback, processed timesheets, coordinated with Defendant

7    PFG to determine the wages of the Class Members, and provided the paychecks

8    to Plaintiffs WRIGHT and POULIOT and the Class Members. RANDSTAD

9    gained a significant benefit from, and in facts its business model is predicated

10   upon, the work provided by its employees.

11  20.   Plaintiffs are informed and believed, and thereon allege, that each and all of the

12        acts and omissions alleged herein were performed by, or are attributable to,

13        Defendants RANDSTAD US, LP, PFG, and DOES 1-100 (collectively

14        "Defendants"), each acting as the agent for the other, with legal authority to act

15        on each other's behalf.  The acts of any and all Defendants were in accordance

16        with, and represent the official policies of, Defendants RANDSTAD US LP,

17        PFG, and DOES 1-100.  At all times mentioned herein, Defendants, and each

18        of them, ratified each and every act or omission complained of herein.  At all

19        times herein mentioned, Defendants, and each of them, aided and abetted the

20        acts and omissions of each and all other Defendants in proximately causing the

21        damages herein alleged.  Because of the level of control exerted over Plaintiffs

22        WRIGHT and POULIOT and the Class Members by Defendants RANDSTAD

23        and PFG, Plaintiffs and the Class Members were jointly employed by

24        Defendants.

25  21.   Plaintiffs are informed and believe and based thereon allege, that at all times

26        herein mentioned, Defendants named herein as defendants DOES 1 through

27        100; inclusive, resided in the State of California.  Plaintiffs are unaware of the

28

- 5 -

1   true names and capacities of the Defendants sued herein as DOES 1 through

2   100; inclusive, and therefore sue those Defendants using said fictitious names,

3   but will amend this Complaint to set forth their true names and capacities when

4   the same has been ascertained.  Plaintiffs are informed and believe, and based

5   thereon allege, that each of the fictitiously named Defendants herein is now,

6   and at all times herein was, acting as the agent or employee, or both, of each

7   and every one of the other Defendants herein named, whether by their true

8   name or their fictitious names, and was at all times herein mentioned acting

9   within the scope of the authority granted to such Defendant as such agent

10   and/or employee.

11

12   ### III. JURISDICTION AND VENUE

13   22.   Venue is proper in this Judicial District and the County of Orange because,

14   upon information and belief, Defendants reside and/or are domiciled in this

15   county and maintain offices and transact business in this county, and work was

16   performed by a substantial portion of the Members of the PFG Class made the

17   subject of this action exclusively in the County of Orange, California.

18

19   ### IV. CLASS ALLEGATIONS

20   23.   Plaintiffs WRIGHT and POULIOT bring this action on behalf of themselves

21   and all other similarly situated persons, as a class action pursuant to Cal. Code

22   of Civ. Proc. § 382.  With the exclusion of the Plaintiffs' attorneys, the Class

23   and Subclasses which Plaintiffs WRIGHT and POULIOT seek to represent are

24   composed of and defined as follows:

       Proposed PFG Class:
       Plaintiffs WRIGHT and POULIOT and all other similarly
       situated current and former non-exempt employees of
       Defendant PFG working on the Project in Orange, California
       during the relevant Class Period of four years prior to the

25

26

27

28

- 6 -

filing of the initial complaint in this action through the date set for trial.

24.    Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify a "Randstad Subclass" that is currently composed of and defined as follows:

> Proposed Randstad Subclass:
> Plaintiffs WRIGHT and POULIOT and all Proposed PFG Class Members hired to work on the Project through Defendant RANDSTAD.

25.    Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify a "Waiting Time Subclass " that is currently composed of and defined as follows:

> Proposed Waiting Time Subclass:
> Plaintiffs WRIGHT and POULIOT and all Proposed PFG Class Members whose employment was voluntarily or involuntarily terminated during the Class Period.

26.    Defendant PFG and RANDSTAD failed to timely pay all wages due, as required by California Labor Code §§ 201-203 and the applicable IWC Wage Orders.  Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify a "Wage Statement Subclass" that is currently composed of and defined as follows:

> Proposed Wage Statement Subclass:
> Plaintiffs WRIGHT and POULIOT and all Proposed Randstad Subclass Members for whom, during the Class Period, Defendants RANDSTAD and PFG provided with inaccurate itemized wage statements, or to whom they failed to provide itemized wage statements, in violation of California Labor Code § 226 *et seq.* and applicable IWC Wage Orders.

27.    Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify a "Meal Break Subclass" that is currently composed of and defined as follows:

- 7 -

> Proposed Meal Break Subclass:
> Plaintiffs WRIGHT and POULIOT and all Proposed PFG Class Members working on the Project that, during the Class Period, worked days in excess of ten hours, but were denied their right to a second thirty-minute meal break for which all work was relieved.

28. Plaintiff POULIOT, on behalf of himself and all others similarly situated, will also seek to certify a "Weighted Overtime Subclass" that is currently composed of and defined as follows:

> Proposed Randstad Weighted Overtime Subclass:
> Plaintiff POULIOT and all Proposed PFG Class Members who were underpaid due to Defendant RANDSTAD's unlawful scheme of paying its employees $4.00 for their initial interview, but intentionally waiting over one month to pay that amount so as to be able to "weight" the $8.00 per hour earned at the interview with the Weighted Overtime Subclass Members' regular rate of pay when calculating the overtime rate of pay.

29. Plaintiffs WRIGHT and POULIOT, on behalf of themselves and all others similarly situated, will also seek to certify an "Randstad Adjusted Overtime Subclass" that is currently composed of and defined as follows:

> Proposed Randstad Adjusted Overtime Subclass:
> Plaintiffs WRIGHT and POULIOT, and all Proposed PFG Class Members working on the Project that Defendants PFG and RANDSTAD intentionally paid an amount less than what the proposed Subclass Members earned in adjusted overtime wages attributable to their Weekend, Completion, and Incentive Bonuses.

30. **Ascertainable Class**: The proposed Class and each proposed Subclass are ascertainable in that their members can be identified and located using information contained in Defendants' payroll and personnel records.

31. **Numerosity**: The potential quantity of members of the Class and Subclasses as defined is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The quantity of members of the Class and Subclasses is unknown to Plaintiffs at this time; however, it is estimated to be

- 8 -

1    at least in the hundreds, and is readily ascertainable via inspection of

2    Defendants' records.

3    32.    **Commonality**:  Common questions of law and fact exist as to members of

4    the Class and Subclasses, including, but not limited to, the following:

5

6            a. Whether Defendants failed to timely pay Plaintiffs WRIGHT and

7            POULIOT and the Class Members, whose employment with Defendants

8            was voluntarily or involuntarily terminated during the Class Period, all

9            wages due as required by California Labor Code §§ 201-203 and/or

10           applicable IWC Wage Orders.

11

12           b. Whether Defendants provided the Plaintiffs and the Class

13           Members with inaccurate itemized wage statements in violation of

14           California Labor Code § 226 *et seq.* and the applicable IWC Wage

15           Orders.

16

17           c. Whether Defendants failed to provide Plaintiffs WRIGHT and

18           POULIOT and Proposed Meal Break Subclass Members second thirty-

19           minute meal breaks for the days in which over ten hours was worked via

20           a policy of uniformly denying all employees with their right to a second

21           thirty-minute meal break in violation of Lab. Code §§ 218.5, 226.7, &

22           512, and IWC Wage Order No. 4-2001.

23

24           d. Whether Defendant RANDSTAD's policy of withholding payment of

25           Plaintiff POULIOT and the RANDSTAD Weighted Overtime Subclass

26           Members' initial interview wages until a time that allowed Defendant

27           RANDSTAD to perpetuate their scheme of combining the Plaintiff's and

28

-9-

Subclass Members' regular rate of pay with the $8.00 per hour initial interview rate of pay, so as to come up with a "weighted overtime" is in violation of the CA Lab. Code and the applicable IWC Wage Orders.

33.  **Typicality**: The claims of Plaintiffs WRIGHT and POULIOT for unpaid wages, penalties, damages, restitution, declaratory and injunctive relief, interest, and attorneys' fees are typical of the claims of all members of the Classes and Subclasses mentioned herein because all members of the Classes and Subclasses were employed in the same capacities and sustained similar injuries and damages arising out of Defendants' common course of conduct in violation of law.  The injuries and damages of all Members of the Classes and Subclasses were caused by Defendants' wrongful conduct in violation of law, as alleged herein.

34.  **Adequate Representation**:  The Plaintiffs will fairly and adequately represent and protect the interests of the Proposed Plaintiff Class and Subclasses.  Plaintiffs have retained counsel competent and experienced in class actions and state labor and employment litigation.

35.  Class certification is appropriate because questions of law and fact common to the Plaintiffs and the Proposed Plaintiff Class and Subclasses predominate over any questions affecting only individual members of the Proposed Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Defendants' common, non-individualized and uniform policies and practices have created unlawful working conditions for the Plaintiffs and the Members of the Proposed Classes and Subclasses and have deprived them of receiving full compensation for their earned wages.  The damages suffered by individual Proposed Class and Subclass Members are small in comparison to the expense and burden of individual prosecution of this litigation.  Additionally, a class action is superior

- 10 -

1   because it will obviate the need for unduly duplicative litigation that might

2   result in inconsistent judgments.

3   36.   Plaintiffs request that the Court direct Defendants to send notice to all members

4         of the proposed Class and Subclasses, as Defendants can readily contact all

5         members of the Proposed Class, all of whom work in California and whose

6         contact information is in the possession of Defendants.

7

8                    **V.  GENERAL ALLEGATIONS**

9   37.   During all, or a portion, of the Class Period, Plaintiffs WRIGHT and POULIOT

10        and each of the Class Members were employed by Defendant PFG through

11        various temporary employment agencies in the State of California.  Defendant

12        PFG controlled the hiring, training, supervision, and evaluation of candidates

13        provided by Defendant RANDSTAD and other temporary agencies.

14  38.   Defendant PFG made the ultimate hiring decision regarding candidates,

15        including Plaintiffs WRIGHT and POULIOT and the Class Members provided

16        by Defendant RANDSTAD and other temporary agencies.

17  39.   Defendant PFG required all new hires, including Plaintiffs WRIGHT and

18        POULIOT and the Class Members, to sign Promontory's Securities Trading

19        Policy as a condition of hiring.

20  40.   Defendant PFG selected the starting dates for new hires, including Plaintiffs

21        WRIGHT and POULIOT and the Class Members.

22  41.   Defendant PFG provided a comprehensive training program for new hires,

23        including Plaintiffs WRIGHT and POULIOT and the Class Members.

24        Defendant PFG provided the written training materials that explained how to

25        provide services according to Defendant PFG's specific protocols. Class

26        Members were at all times required to strictly follow PFG's policies and

27        protocols regarding every aspect of performing their jobs.

28

- 11 -

42.  Class Members completed the training program at Defendant PFG's office in Orange, California. Defendant PFG provided its key cards for Class Members to access the parking garage and office building.  Defendant PFG required the Class Members to participate in their computer training program and paired Class Members with PFG supervisors who taught Class Members to use Defendant PFG's software.

43.  Defendant PFG retained sole discretion to decide when Plaintiffs WRIGHT and POULIOT and Class Members had sufficiently completed their training curriculum and could then access data on PFG's servers.

44.  Defendant PFG assigned, at its sole discretion, Plaintiffs WRIGHT and POULIOT and Class Members to teams to complete various tasks, such as input, validation, quality control, and quality assurance.  PFG controlled all aspects of the manner, method, and mode of work of the PFG Class Members, and Class Members were required to follow PFG's protocols in fulfilling their job duties.  PFG represented to Class Members that PFG would pay them bonuses for cases closed while working on those teams.

45.  Defendant PFG provided Class Members with work stations, computers, copies of Policies and Procedures and other protocols. PFG also provided Class Members with Defendant PFG's e-mail addresses ending in "@promontory.com," which they were required to use for all work related matters.

46.  Defendant PFG also provided support staff, such as information technology specialists, to help Plaintiffs WRIGHT and POULIOT and the Class Members with computer or software problems.

47.  Defendant PFG negotiated and set the pay rates for Plaintiffs WRIGHT and POULIOT and the Class Members.

- 12 -

48. Defendant PFG set the work schedules for Plaintiffs WRIGHT and POULIOT and the Class Members. If the Class Members planned to arrive at Defendant PFG's office late, or take a longer lunch, they were instructed by Defendant PFG to directly inform their PFG supervisors.

49. Defendant PFG provided their timesheet forms to Class Members and required them to record their time worked on those sheets. PFG shared policies and procedures regarding payment and collaborated with RANDSTAD to issue paystubs to Class Members.

50. Defendant PFG, through its supervisors and managers, led weekly and monthly progress meetings with Class Members, which Class Members were required to attend.

51. Defendant PFG, through its supervisors and managers, communicated changes to PFG's Policies and Procedures as well as announced its incentive bonus program to meet year-end production goals to Class Members.

52. Defendant PFG conducted an orientation with Class Members upon announcing its bonus program. Defendant PFG made information about the bonus program available on its servers.

53. Defendant PFG established the bonus program as follows:

    a. Defendant PFG promised Class Members three non-discretionary bonuses: the Completion Bonus, the Incentive Bonus, and the Weekend Bonus.

    b. Each bonus was promised to Class Members by Defendant PFG at the time of hiring (Completion Bonus) or upon fulfillment of certain other tasks (Incentive Bonus) or for working certain weekends (Weekend Bonus).

    c. Defendant PFG then changed the conditions for earning certain bonuses, failed to itemize wages earned from the bonuses, or failed to

- 13 -

1         pay the bonus altogether. The bonus program is discussed in detail in

2         Exhibit A.

3  54.    Defendant PFG withheld bonuses until Class Members signed certain

4         documents and returned them to PFG.

5  55.    Defendant PFG determined who was eligible to work overtime and set the work

6         schedules and assignments for Class Members.  Defendant PFG had the

7         authority to fire workers if it did not believe they were performing according to

8         PFG's standards or following PFG's workplace rules.

9  56.    Defendant PFG determined which Class Members would be promoted or

10       transferred within teams on the Project.  Defendant PFG also provided

11       feedback on performance for the Class Members.

12  57.   Defendant PFG ultimately determined that the Project would end January 7,

13       2013, and communicated this termination to Class Members.

14  58.   Defendant RANDSTAD is one of the temporary employment agencies utilized

15       by Defendant PFG for its staffing needs on the Project.  During the period from

16       September 12, 2011, through January 7, 2013, the start and end dates of the

17       Project, Defendant RANDSTAD employed approximately 357 persons who

18       performed work as Analysts on the Project.

19  59.   Defendant RANDSTAD recruited Plaintiffs WRIGHT and POULIOT and the

20       RANDSTAD Class Members for positions at Defendant PFG.

21  60.    Defendant RANDSTAD conducted pre-screening interviews with Proposed

22       Class Members, made adjustments to resumes to show that the potential

23       candidates would be a good fit for Defendant PFG and organized the interviews

24       for Class Members.

25  61.   Defendant RANDSTAD negotiated and set Proposed Class Members' rates of

26       pay.

27

28

62.    Once Class Members were hired by Defendant PFG, Defendant RANDSTAD maintained timesheets, payroll records, and recorded sick days or vacation days for Proposed Class Members.

63.    Defendant RANDSTAD also communicated certain of Defendant PFG's bonus policies with Plaintiffs WRIGHT and POULIOT and the RANDSTAD Class Members. Defendants RANDSTAD and PFG coordinated the terms, conditions, and manner of payment of wages earned by the RANDSTAD Class Members.

64.    Plaintiffs and each of the Proposed Class and Subclass Members were non-exempt employees covered under one or more IWC Wage Orders, including Wage Order 4-2000, 4-2001 ("Wage Orders"), California Labor Code § 510, and/or other applicable wage orders, regulations and statutes.

65.    Each of the Members of the Proposed Class and Subclasses were not subject to an exemption for computer, executive, administrative or professional employees, which imposed an obligation on the part of the Defendants to pay Plaintiffs and members of the proposed Classes lawful overtime and to provide mandatory meal and rest breaks.

**As to the Meal Period Subclass:**

66.    During the Class Period, the Defendants were obligated to provide their employees working over ten hours in one day with a second thirty-minute meal break during which class members were to be relieved of all duty.

67.    Plaintiffs WRIGHT and POULIOT and Members of the Meal Break Subclass regularly worked in excess of ten hours per day but were denied the opportunity to take their second thirty-minute meal break.

68.    Defendants PFG and RANDSTAD employed a uniform and consistent policy of not providing Plaintiffs and the Class Members with second meal periods due to use of record keeping systems that did not allow for the recording of

- 15 -

1    second meal periods, coupled with instructions from Defendant PFG that time

2    recorded on employees' time sheets was to match exactly the time recorded on

3    Defendant RANDSTAD's time trackers, subject to the penalty of late payment

4    of wages.  As a result, Plaintiffs believed they had no opportunity to take

5    second meal periods, and did not do so.  This was consistent with Defendants'

6    uniform and consistent policy of failing to make Plaintiffs and the Class

7    Members aware that they had any right to a second meal period.

8    69.   Defendants paid no meal period premium pay to Plaintiffs or the Class

9    Members as a result of missing their second meal periods on days in which they

10    worked ten hours or more.

11   **As to the Weighted Overtime Subclass:**

12   70.   During the Class Period, Defendants RANDSTAD and PFG were obligated by

13    California Labor Code § 201.3 to provide their employees with payment for

14    wages no later than the pay period following the week in which the wages were

15    earned.

16   71.   Defendants PFG and RANDSTAD failed to properly account for and pay

17    wages timely on multiple occasions.  Defendants PFG and RANDSTAD's first

18    violation of California Labor Code § 201.3 affected Plaintiff POULIOT and

19    was the result of a policy enacted by Defendant RANDSTAD to underpay

20    overtime compensation to Plaintiff POULIOT and Members of the Weighted

21    Overtime Subclass.

22   72.   The scheme was set up and perpetuated in the following manner:

23        a. Defendant RANDSTAD, without informing Plaintiff POULIOT or

24        Weighted Overtime Subclass Members, provided compensation to them

25        at a rate of $8.00 per hour for the one-half hour spent interviewing for a

26        position on the Project, but only paid those RANDSTAD employees that

27        were hired to work on the project.

28

- 16 -

1              b. Defendant RANDSTAD employed a policy of "waiting four to five

2          weeks" before paying the $4.00 earned by Plaintiff POULIOT and the

3          Weighted Overtime Subclass Members for the interview.

4              c. Defendant RANDSTAD withheld the payment of the $4.00 interview

5          wages until a time when Plaintiff POULIOT and Weighted Overtime

6          Subclass Members were eligible for working almost certain overtime

7          hours.

8              d. Defendant RANDSTAD used the $4.00 payment to calculate

9          "weighted overtime" by combining Plaintiff POULIOT and Weighted

10        Overtime Subclass Members' pay rates ($8.00 per hour and $37.00 per

11        hour in the case of Plaintiff POULIOT) to calculate a "Weighted

12        Overtime" rate, which was less than the lawful overtime rate of pay.

13            e. Defendant RANDSTAD then applied the insufficient Weighted

14        Overtime rate to Plaintiff POULIOT's and Weighted Overtime Subclass

15        Members' weekly overtime hours, resulting in Plaintiff POULIOT and

16        Weighted Overtime Subclass Members being paid a lesser amount for

17        that week than they would have if the initial interview wages had been

18        paid during the first pay week, as they should have been pursuant to

19        California Labor Code § 201.3.

20  73.    Plaintiff POULIOT received his paycheck for the week ending on August 19,

21       2012.

22  74.    The wage statement indicated that his overtime was being paid at the lower

23       Weighted Overtime rate.  Additionally, it listed an additional employer, listed

24       as "RNA_CAL_Interview Dummy Acct." with an address of "Dummy

25       Worksite."

26  75.    On or around August 27, 2012, RANDSTAD Messenger Bruce Troupe came

27       into the office and explained to Plaintiff POULIOT and Members of the

28

Wright v. Randstad                             SECOND AMENDED COMPLAINT
SACV 8:13-cv-00815-CJC (AGR)

1    Weighted Overtime Subclass the calculation of the Weighted Overtime rate.

2    Their overtime had been weighted because they had been paid at two different

3    rates for that week, $8.00 per hour for the initial interview and their regular rate

4    of pay for the hours worked the previous week.

5    76.    Messenger Bruce Troupe also informed Plaintiff POULIOT and other Members

6    of the Weighted Overtime Subclass that for this event and pay period alone,

7    forty-two employees were affected by the Weighted Overtime scheme.

8    **As to the Waiting Time Subclass:**

9    77.    Plaintiffs WRIGHT and POULIOT and Proposed PFG Class Members ended

10    their employment with the Defendants during the Class Period, but they were

11    not paid all of their wages due upon the termination of their employment as

12    required by California Labor Code §§201-203.

13    78.    Plaintiffs are informed and believe, and based thereon allege, that the

14    Defendants' failure to pay its discharged employees all of their wages due was

15    willful and systematic, and that it affected all Members of the Proposed Class

16    working on the Project, entitling them to penalties as provided by California

17    Labor Code section 203.

18    **As to the Adjusted Overtime Subclass:**

19    79.    Plaintiffs WRIGHT and POULIOT and Proposed PFG Class Members were

20    not paid all of their wages based on Defendant PFG's and RANDSTAD's

21    failure to calculate overtime to incorporate the bonus amounts that Class

22    Members should have received during the Class Period. Plaintiffs are entitled to

23    recover liquidated damages in an amount equal to the unpaid minimum wage

24    pursuant to California Labor Code § 1194.2.

25

26

27    ///

28

- 18 -

# VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Failure to Pay Wages in Violation of Lab. Code §§ 510, 1194, 1197 & 1198;**

**(Against Defendants PFG, RANDSTAD, and DOES 1-100; and on Behalf of the**

**Plaintiffs WRIGHT and POULIOT and Members of the "Weighted Overtime"**

**and "Adjusted Overtime" Subclasses)**

80.    Plaintiffs incorporate the allegations contained in paragraphs 1-79 of this
Complaint as if fully alleged herein.

81.    Plaintiffs WRIGHT and POULIOT are informed and believe, and based
thereon allege that Defendants PFG and RANDSTAD's systematic
underpayment of wages earned pursuant to the Weekend, Completion, and
Incentive Bonuses, their failure to accurately calculate the overtime attributable
to the Bonuses at the lawful overtime rate of one and a half times the regular
rate of pay, and the perpetuation of their weighted overtime scheme has
resulted in the Plaintiffs WRIGHT and POULIOT and Members of the
Weighted Overtime and Adjusted Overtime Subclasses receiving overtime
compensation at less than the lawful rate pursuant to IWC Wage Order 4-2001
§3, and California Labor Code §§ 510, 1194(a), 1197, and 1198.

82.    Plaintiffs WRIGHT and POULIOT and Members of the Adjusted Overtime
Subclass were all entitled to payment of the adjusted overtime attributable to
the Weekend, Completion and Incentive Bonuses; based upon the calculation
enforced under the Division of Labor Standards Enforcement, Enforcement
Policies and Interpretation Manual ("DLSE Manual").

83.    As of the date of the filing of this action Plaintiffs WRIGHT and POULIOT
and Members of the Adjusted Overtime Subclass had not been paid the full
amount of their adjusted overtime wages calculated in accordance with the

- 19 -

1    DLSE Manual.  Any payments made for adjusted overtime were not made for

2    the full amount of overtime owed and contained no explanation of the basis of

3    the calculations used to arrive at the amounts paid.

4    84.    Plaintiffs POULIOT and WRIGHT and Members of the Weighted Overtime

5    and Adjusted Overtime Subclasses are entitled to compensation for overtime

6    work performed for the Defendants at the lawful rate of one and a half times

7    the regular rate of pay, in an amount according to proof.

8    85.    As a direct and proximate result of Defendant RANDSTAD and PFG's

9    conduct in violation of California Labor Code §§ 510 and 1194, Plaintiffs

10    WRIGHT and POULIOT and Members of the Weighted Overtime, Adjusted

11    Overtime, and Unpaid Wages Subclasses have suffered, and continue to suffer,

12    losses related to the use and enjoyment of wages and lost interest on such

13    wages all to their damage in amounts according to proof at trial.

14    86.    As a direct and proximate result of Defendants' conduct in violation of

15    California Labor Code § 1194, Plaintiffs WRIGHT and POULIOT and

16    Members of the Weighted Overtime, Adjusted Overtime and Unpaid Wages

17    Subclasses are entitled to recover liquidated damages pursuant to California

18    Labor Code § 1194.2, in an amount equal to the unpaid minimum wages

19    according to proof at trial.

20    87.    Pursuant to California Labor Code § 1194(a), Plaintiffs WRIGHT and

21    POULIOT seek the payment of all unpaid wages, including overtime

22    compensation, which they earned and accrued, including overtime attributable

23    to the three non-discretionary bonuses, the amount of which will be shown at

24    trial.

- 20 -

## SECOND CAUSE OF ACTION

**Failure to Provide Accurate Wage Statements:  California Labor Code § 226 et seq.;**

**(Against Defendants PFG and RANDSTAD and DOES 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT and Members of the RANDSTAD Wage Statement Subclass)**

88.  Plaintiffs incorporate paragraphs 1-87 of this Complaint as if fully alleged herein.

89.  Defendants PFG and RANDSTAD failed to provide Plaintiffs WRIGHT and POULIOT and Members of the RANDSTAD Wage Statement Subclass with accurate wage statements for all hours worked, as required by California Labor Code § 226(a).

90.  Plaintiffs WRIGHT and POULIOT and Members of the Wage Statement Subclass were entitled to receipt of accurate wage statements no later than one week after the end of the week in which the wage was earned.

91.  Defendants PFG and RANDSTAD provided to Plaintiff POULIOT and affected Wage Statement Subclass Members, such as the wage statement for the pay period ending on August 19, 2012, that failed to meet the requirements of California Labor Code §226(a). The wage statements inaccurately reported the employees' overtime rate of pay and other crucial data pertaining to the amount of wages earned for that week and the total amount of wages earned for the year.

92.  Defendants PFG and RANDSTAD collaborated in failing to correct the inaccuracies on the then current and subsequent wage statements.

93.  Defendants PFG and RANDSTAD's collective, cooperative and intentional failure to correct Plaintiff POULIOT and affected Members of the Wage

- 21 -

Statement Subclass's wage statements violates the requirements of California Labor Code § 226(a), because the information on the wage statements did not accurately document, among other wage information, the employees' overtime rate of pay, and total wages earned for the week and year.

94. As a result of their discharge from the Project, Plaintiffs POULIOT and WRIGHT and Members of the Wage Statement Subclass were entitled to the payment of all earned, undisputed, and adjusted wages on or before the statutory deadline under California Labor Code ¶ 201.3(b)(1), which is January 18, 2013, including the payment of the three Bonuses and adjusted overtime attributable to each bonus.

95. The Plaintiffs WRIGHT and POULIOT and Members of the Wage Statement Subclass received a wage statement for the pay period ending January 13, 2013 that omitted earned and undisputed "adjusted overtime wages."

96. The wage statements provided by Defendant RANDSTAD and PFG to Plaintiffs WRIGHT and POULIOT and Members of the Wage Statement Subclass for the pay period ending January 13, 2013 were inaccurate because, among other items, the Defendants PFG and RANDSTAD failed to account for and pay the three Bonuses and overtime adjustments in the week following that in which they were earned.

97. Defendants PFG and RANDSTAD's collective, cooperative and intentional failure to pay the three Bonuses as described in Exhibit A, and overtime adjustments in the week following that in which they were earned resulted in the Plaintiffs WRIGHT and POULIOT and Members of the Wage Statement Subclass being provided with wage statements that failed to meet the requirements of California Labor Code § 226(a).

98. The wage statements for the bonuses and overtime adjustments that were provided to Plaintiffs WRIGHT and POULIOT and Members of the Wage

Wright v. Randstad
SACV 8:13-cv-00815-CJC (AGR)                          SECOND AMENDED COMPLAINT

1    Statement Subclass failed to provide the inclusive dates of the period for which

2    the employee was paid and failed to provide all applicable hourly rates in effect

3    during the pay period and the corresponding number of hours worked at each

4    hourly rate by the employee, as required by California Labor Code § 226(a)(6)

5    and § 226(a)(9).

6    99.    Plaintiffs WRIGHT and POULIOT and Members of the Wage Statement

7    Subclass have all suffered injury as defined in California Labor Code

8    § 226(e)(2)(B)(i).

9    100.    The full extent of the harm suffered by Plaintiffs WRIGHT and POULIOT and

10    Members of the Wage Statement Subclass from Defendants PFG and

11    RANDSTAD's failure to comply with California Labor Code § 226 will be

12    shown at the time of trial.

13    101.    Pursuant to California Labor Code § 226(e), Plaintiffs WRIGHT and

14    POULIOT and Members of the Wage Statement Subclass are entitled to and

15    seek penalties and injunctive relief pursuant to California Labor Code § 226

16    (e).

17    102.    Pursuant to California Labor Code § 226(g), Plaintiffs WRIGHT and

18    POULIOT are entitled to injunctive relief to ensure Defendants RANDSTAD's

19    compliance with California Labor Code § 226.

20    103.    Plaintiffs are also entitled to and seek reasonable attorneys' fees and costs as

21    provided for in California Labor Code § 226(h), as well as prejudgment

22    interest, according to proof.

23

24

25

26

27    ///

28

Wright v. Randstad                                    SECOND AMENDED COMPLAINT
SACV 8:13-cv-00815-CJC (AGR)

# THIRD CAUSE OF ACTION

## Failure to Provide Mandatory Meal Beaks Pursuant to California Labor Code
### §§ 512, 226.7 & IWC Wage Order No. 4-2001

## (Against Defendants PFG, RANDSTAD, and DOES 1-100 and on Behalf of the Plaintiffs WRIGHT and POULIOT and Members of the Meal Break Subclass)

104. Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-103 of this Complaint as if fully alleged herein.

105. Plaintiffs WRIGHT and POULIOT and Members of the Meal Break Subclass were entitled under California Labor Code § 512 and IWC Wage Order No. 4-2001 to a second thirty-minute unpaid meal break relieving them of all responsibilities for each day in which over ten hours were worked.

106. Defendants PFG and RANDSTAD failed to post information at the Project site in a place reasonably likely to be seen by the employees. Defendants also failed to inform Plaintiffs WRIGHT and POULIOT and Meal Break Subclass Members through initiation, training, meetings or other means of communication regarding their rights under California Labor Code § 512 and IWC Wage Order No. 4-2001.

107. Defendants PFG and RANDSTAD's time keeping system only provided Plaintiffs WRIGHT and POULIOT and Proposed Meal Break Subclass Members sufficient space on the computerized and hard-copy time-cards to enter one meal break per day. Defendants then required that the time entered into the system be entered onto Plaintiffs' and Proposed Subclass Members' timesheets, which were used for the purposes of payment, on penalty of late payment of wages. Accordingly, Plaintiffs and the Subclass Members were unable to record a second meal period and did not believe that they had the right to take same.

1   108.   By failing to provide to Plaintiffs WRIGHT and POULIOT and Randstad Meal

2          Break Subclass Members timely meal breaks, Defendants PFG and

3          RANDSTAD have violated California Labor Code § 226.7(a).

4   109.   Plaintiffs WRIGHT and POULIOT and Proposed Meal Break Subclass

5          Members are entitled to wages pursuant to Lab. Code § 226.7(b).

6

7                        **FOURTH CAUSE OF ACTION**

8   **Failure to Provide Lawful Notice Pursuant to California Labor Code §§ 1400 et**

9                                    **seq.**

10  **(Against Defendants PFG and DOES 1-100; and on Behalf of Plaintiffs**

11      **WRIGHT and POULIOT and Members of the PFG Class)**

12

13  110.   Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-109 of this

14         Complaint as if fully alleged herein.

15  111.   Defendant PFG conducted the Project between approximately September 2011

16         and January 7, 2013 at 1100 Town and Country Road, in Orange, California.

17  112.   Defendant PFG directly and/or indirectly owned and operated the facility in

18         which Defendant PFG conducted the Project.

19  113.   Defendant PFG employed more than seventy-five people at its industrial or

20         commercial facility at 1100 Town and Country Road in Orange, California,

21         within the twelve months preceding the January 7, 2013, layoff.

22  114.   Defendant PFG employed Plaintiffs WRIGHT and POULIOT and the

23         Members of the Proposed PFG Class for at least six of the twelve months

24         preceding the January 7, 2013, layoff.

25  115.   In December of 2012, several news articles were published regarding a

26         potential settlement among the banks participating in the Independent

27         Foreclosure Review, which would put an end to the Project.

28

Wright v. Randstad                                    SECOND AMENDED COMPLAINT
SACV 8:13-cv-00815-CJC (AGR)

116. On multiple occasions between December 2012 and January 7, 2013, Plaintiffs WRIGHT, POULIOT, and Members of the PFG Class were all assured by Defendants PFG and RANDSTAD, through their Officers and Directors, that, even if a settlement were reached, their jobs would be secure through at least June of 2013.

117. On January 7, 2013, Defendant PFG sent an email to all of the proposed PFG Class Members informing them that the banks had reached a settlement and that the Project was being terminated. Defendant PFG informed all PFG Class Members that January 7, 2013, would be their last day of employment, but that they would be paid through the rest of the week. Plaintiffs are informed and believe, and based thereon allege that this resulted in over 500 PFG employees being laid off as of January 7, 2013.

118. Defendant PFG, by employing over seventy-five people in the twelve months preceding the mass layoff that took place on January 7, 2013, conducted the Project at a "covered establishment" as defined by California Labor Code § 1400(a). This "covered establishment" is an "industrial or commercial facility" located at 1100 Town and Country Rd., in Orange, California.

119. Defendant PFG directly and/or indirectly owned and operated the covered establishment, and thus also meets the definition of "employer" under California Labor Code § 1400(b). Defendant PFG's "layoff" of more than 500 employees, separating them from a position for a lack of funds or lack of work, resulted in a "Mass Layoff," pursuant to California Labor Code § 1400(c), that took place without the requisite notice being sent at least sixty days prior to Plaintiff WRIGHT, POULIOT, and PFG Class Members' being laid off on January 7, 2013.

120. Plaintiffs and PFG Class Members had been working for six months when the layoff was announced on January 7, 2013. Pursuant to California Labor Code §

- 26 -

1400 *et seq.*, once Plaintiffs and Class Members were employed for six months
with PFG, they were entitled to the statutory sixty day notice before being laid
off.

121.  By conducting a Mass Layoff without providing the requisite notice pursuant to
California Labor Code § 1400 *et seq.*, Defendant PFG will be liable to
Plaintiffs WRIGHT and POULIOT and PFG Class Members for back pay for a
total of 56 days, which is the maximum sixty days, minus the four days of
wages already paid.  Plaintiffs WRIGHT and POULIOT are entitled to costs of
bringing this action, along with reasonable attorneys' fees and lawful interest
pursuant to California Labor Code § 1404.

## FIFTH CAUSE OF ACTION
### Waiting Time Penalties Pursuant to California Labor Code § 203
### (Against Defendants PFG, RANDSTAD and DOES 1-100; and on Behalf of
### Plaintiffs WRIGHT and POULIOT and Members of the "Waiting Time
### Subclass")

122.  Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-121 of this
Complaint as if fully alleged herein.

123.  Defendants PFG and RANDSTAD are jointly responsible for the payment of
full and accurate wages.  They coordinated with each other to determine the
amounts owed to Class Members and to make provision of payment.  They
intentionally and systematically failed to provide Plaintiffs WRIGHT and
POULIOT and members of the Randstad Waiting Time Subclass all of their
wages earned.  Plaintiffs WRIGHT and POULIOT are informed and believe,
and allege based thereon that Defendants PFG and RANDSTAD intentionally
acted in this manner in order to secure for themselves a financial gain.

- 27 -

1    124.    At the time of discharge, Defendants RANDSTAD owed Plaintiffs WRIGHT

2            and POULIOT and Waiting Time Subclass Members all earned wages,

3            bonuses, and adjusted overtime wages. As soon as the statutory "grace period"

4            for paying under California Labor Code § 201.3 expired, Defendant PFG owed

5            Plaintiffs WRIGHT and POULIOT and Waiting Time Subclass Members all

6            earned wages, bonuses, and adjusted Overtime Wages.

7    125.    Defendants PFG and RANDSTAD did not pay all undisputed wages to

8            Plaintiffs WRIGHT and POULIOT and Randstad Waiting Time Subclass

9            Members by the statutory due date of January 18, 2013.

10   126.    Defendants PFG and RANDSTAD have acted in bad faith in conducting their

11           unlawful actions, and as such, are precluded from asserting that a good faith

12           dispute exists that no wages were or are owed to Plaintiffs WRIGHT and

13           POULIOT and Members of the Waiting Time Subclass at the time of

14           discharge.

15   127.    Plaintiffs WRIGHT and POULIOT and Members of the Waiting Time Subclass

16           are entitled to and seek penalties provided by California Labor Code § 203.

17   128.    Plaintiffs WRIGHT and POULIOT are also entitled to and seek reasonable

18           attorneys' fees and costs of this action pursuant to California Labor Code §

19           218.5, as well as prejudgment interest pursuant to California Labor Code §

20           218.6, according to proof, as well as any statutory penalties under the

21           California Labor Code.

22

23

24

25

26

27           ///

28

- 28 -

## SIXTH CAUSE OF ACTION

### Violations of Business and Professions Code §17200 et seq.;

### (Against Defendants PFG, RANDSTAD and DOES 1-100, and on Behalf of

### Plaintiffs WRIGHT and POULIOT and Members of the PFG Class)

129.  Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-128 of this Complaint as if fully alleged herein.

130.  The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200 *et seq.* Section 17200 prohibits unfair competition by prohibiting, *inter alia*, any unlawful, fraudulent or unfair business acts or practices.

131.  Beginning at a date unknown to the Plaintiffs, but at least as long ago as the relevant Class Period, Defendants PFG and RANDSTAD committed, and continue to commit, acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein. Defendants PFG and RANDSTAD's conduct as herein alleged has injured Plaintiffs and Members of the PFG Class by wrongfully denying them earned wages, and therefore was substantially injurious to the Plaintiffs and Members of the PFG Class and Subclasses.

132.  Defendants PFG and RANDSTAD each engaged in unfair competition in violation of the UCL by violating, *inter alia*, each of the following laws. Violations of each of these laws constitutes an independent and separate violation of the UCL:

   a. Failure to pay their employees all earned wages, including overtime and/or double-time on regularly scheduled paydays in violation of California Labor Code § 204;

- 29 -

b. Payment to employees of less than the state required minimum wage in violation of California Labor Code § 1197, and applicable IWC Orders, including IWC Wage Order No. 4-2001, subdivision 4;

c. Failure to pay employees overtime pay as required by California Labor Code §§ 510 and 1198, and applicable IWC Orders, including but not limited to IWC Wage Order No. 4-2001, subdivision 3;

d. Failure to pay employees wages earned and owing at the time of their separation from employment as required by California Labor Code §§ 201 and 202;

e. failure to provide employees with itemized wage statements reflecting their gross wages, the number of hours the employee worked, piece-rate earnings, the applicable piece rate, all deductions taken, net wage earned, the inclusive dates of the pay period, the name of the employee and his or her social security number, and the hourly rate in effect during the pay period, as required by California Labor Code § 226;

f. requiring employees to work during meal breaks in violation of California Labor Code § 226.7 and applicable IWC Orders including but not limited to IWC Wage Order No. 52001, subdivisions 11(A) -(C) and 12; and,

- 30 -

g. failing to provide lawful notice prior to conducting a

"Mass Layoff" as defined by California Labor Code §§ 1400 *et seq.*

133. Defendants PFG and RANDSTAD's course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants PFG and RANDSTAD's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

134. The unlawful and unfair business practices and acts of Defendants PFG and RANDSTAD described above, have injured the Plaintiffs WRIGHT and POULIOT and PFG Class Members in that they were wrongfully denied the payment of earned bonus and overtime wages and denied mandatory meal and rest breaks.

135. Plaintiffs seek injunctive relief, pursuant to California Business and Professions Code §17203, ordering Defendants, their successors, agents, representatives, employees and all persons acting in concert with Defendants be enjoined from committing acts of unfair competition as alleged in this Complaint; enjoining the Defendants from engaging in the unlawful, unfair and fraudulent business acts as described herein.

136. The Plaintiffs, on behalf themselves and PFG Class Members, seek recovery of attorneys' fees and costs of this action, as well as prejudgment interest, according to proof, to be paid by Defendants PFG and RANDSTAD as provided by the UCL and California Labor Code §§ 1194(a) and 1197.

137. By successfully bringing this action, Plaintiffs have bestowed upon the public a great benefit, and as such are entitled to reasonable attorney's fees as provided under California Code of Civil Procedure § 1021.5.

- 31 -

138.   The Plaintiffs, on behalf of themselves and Members of the PFG Class, seek full restitution in the amount of the respective unpaid wages, including those earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, or eight hours in a day, and double the regular rate of pay for work performed in excess of twelve hours per day, for the entire span of the relevant Class Period.

**SEVENTH CAUSE OF ACTION**

**Failure to Allow Inspection of Records after Request:  California Labor Code § 226(c)**

**(Against Defendants PFG, RANDSTAD and DOES 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT)**

139.   Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-138 of this Complaint as if fully alleged herein.

140.   On January 25, 2013, Plaintiff POULIOT alerted Defendants PFG and RANDSTAD, through RANDSTAD Messenger Bruce Troupe, to a discrepancy in the amount he was paid on January 25, 2013 and Mr. Troupe, in turn, referred Plaintiff POULIOT directly to Sheri Passerino from Defendant PFG's human resources department.  Plaintiff POULIOT asked for an accounting of all earned wages, bonuses, and adjusted overtime and received a response that same day from Ms. Passerino stating that she would look into the matter. Plaintiff POULIOT has sent three follow-up emails without a response, and sent a final request for the basis of Defendants PFG and RANDSTAD'S calculations on February 11, 2013.  However, Defendants PFG and RANDSTAD have failed to provide Plaintiff POULIOT with any transparency to how his wages were calculated.

141.  Plaintiff WRIGHT requested information pertaining to his progress on the Incentive Bonus on a weekly basis from around the beginning of November 2012, through the end of the Project.  Although Defendants PFG and RANDSTAD said that they would give weekly progress reports as to the Incentive Bonus, no information was ever provided to Plaintiff WRIGHT in response to his multiple requests.

142.  Pursuant to California Labor Code § 226(f), Plaintiffs are entitled to recover a seven-hundred-fifty-dollar ($750.00) penalty from Defendants PFG and RANDSTAD for each failure to allow Plaintiffs WRIGHT and POULIOT to inspect records after a reasonable request.

143.  Plaintiffs WRIGHT and POULIOT also seek injunctive relief to ensure Defendants RANDSTAD's and Defendant PFG's compliance with California Labor Code § 226, along with reasonable attorneys' fees and costs, as provided for in California Labor Code § 226(h).

144.  Plaintiffs are also seek costs of bringing this action and interest, according to proof.

## EIGHTH CAUSE OF ACTION

### Unfair Competition:  California Business and Professions Code § 17200 et seq.

### (Against Defendants PFG, RANDSTAD and DOES 1-100; and on Behalf of Plaintiffs WRIGHT and POULIOT)

145.  Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-144 of this Complaint as if fully alleged herein.

146.  Beginning at a date unknown to Plaintiffs WRIGHT and POULIOT, but at least as long ago as four years before the filing of this action, Defendants PFG and RANDSTAD committed, and continue to commit, acts of unfair competition,

- 33 -

1    as defined by the UCL, by, among other things, engaging in the acts and

2    practices described herein.

3    147.   Defendants PFG and RANDSTAD engaged in additional unfair competition in

4    violation of the UCL by violating, *inter alia*, California Labor Code §§ 1197

5    and 558. Violations of each of these laws constitutes an independent and

6    separate violation of the UCL.

7    148.   Defendants PFG and RANDSTAD's course of conduct, acts, and practices in

8    violation of the California laws mentioned in the above paragraph constitute a

9    separate and independent violation of the UCL. Defendants PFG and

10   RANDSTAD's conduct described herein violates the policy and spirit of such

11   laws or otherwise significantly threatens or harms competition.

12   149.   Plaintiffs WRIGHT and POULIOT seek injunctive relief pursuant to California

13   Business and Professions Code § 17203 enjoining the Defendants PFG and

14   RANDSTAD from engaging in each of the unlawful, unfair and fraudulent

15   business acts as described herein.

16   150.   The Plaintiffs WRIGHT and POULIOT seek recovery of attorneys' fees and

17   costs of this action to be paid by Defendants PFG and RANDSTAD as

18   provided by Cal. Civ. Code §§ 1021.5, 1194(a), and 1197 *et seq.*

19

20                          **NINTH CAUSE OF ACTION**

21          **Civil Penalties Pursuant to the Private Attorneys General Act:**

22                    **California Labor Code § 2698 et seq.**

23          **(Against Defendants PFG and RANDSTAD; and on Behalf of Plaintiffs**

24          **WRIGHT and POULIOT as Representatives of the General Public)**

25

26   151.   Plaintiffs WRIGHT and POULIOT incorporate paragraphs 1-150 of this

27   Complaint as if fully alleged herein., as well as those contained in Plaintiff

28

- 34 -

1 WRIGHT's and POULIOT's PAGA Notification Letter, attached to this

2 complaint as Exhibit A.

3 152. On or around February 16, 2013, Plaintiffs WRIGHT and POULIOT complied

4 with PAGA's administrative requirement in the manner prescribed in

5 California Labor Code § 2699.3, including providing notice as set forth in

6 California Labor Code § 2699.3(a)(1).  Thirty-three days have elapsed since the

7 postmark date of the notice provided by Plaintiffs WRIGHT and POULIOT

8 pursuant to California Labor Code § 2699.3(a)(1).  Evidence of Plaintiff's

9 compliance with California Labor Code § 2699.3 is attached herein as Exhibit

10 A.

11 153. Plaintiffs WRIGHT and POULIOT, by virtue of their employment with

12 Defendants RANDSTAD and PFG and the Defendants' failure to pay all

13 earned wages and unlawful retaliation scheme, are aggrieved employees with

14 standing to bring an action under the PAGA. Plaintiffs WRIGHT and

15 POULIOT by virtue of Exhibit A, have satisfied all prerequisites to serve as a

16 representative of the general public to enforce California's labor laws,

17 including, without limitation, the penalty provisions identified in California

18 Labor Code § 2699.5.  Since the LWDA took no steps within the time period

19 required to intervene and because Defendants PFG, and RANDSTAD, took no

20 corrective action to remedy the allegations set forth above, Plaintiffs WRIGHT

21 and POULIOT, as representatives of the people of the State of California, will

22 seek any and all penalties otherwise capable of being collected by the Labor

23 Commission and/or the Department of Labor Standards Enforcement (DLSE).

24 154. Plaintiffs WRIGHT and POULIOT allege, on behalf of the general public and

25 acting as private attorneys generals, that Defendants PFG and RANDSTAD,

26 have violated California Labor Code § 558 and additional provisions of the

27 California Labor Code which entitle the State of California to a seventy-five

28

percent share of the recovery of penalties otherwise only capable of being collected by state agencies.  Since the LWDA took no steps within the time period required to intervene and because Defendants PFG and RANDSTAD, took no corrective action to remedy the allegations set forth above, Plaintiffs WRIGHT and POULIOT, as representatives of the people of the State of California, will seek any and all penalties otherwise capable of being collected by the Labor Commission and/or the DLSE. This includes any of the applicable statutes as set forth in California Labor Code § 2699.5, and includes penalty provisions, without limitation, based on the following sections:

155.  201 (¶¶ 26, 32, *supra*) 201.3 (¶¶ 70-72, 77, 124, 132, *supra*), 202, 203 (¶¶ 26, 32, 77-78, 122-28, *supra*), 203.1 (same), 203.5 (same), 204 , 204.1, 206 (¶¶ 80-98, *supra*), 208 (¶¶ 80-98, *supra*) and 212(¶¶ 80-84, *supra*), 213(d) (¶¶ 80-98), sections 221 (¶¶ 80-98), 222.5 (¶¶ 80-98, *supra*), 223 (¶¶ 80-98, *supra*), 224 (¶¶ 80-98, *supra*), section 226(a) (¶¶ 80-98, *supra*), sections 226.7 (same), 230 (same), 230.1 (same), 230.2 (same), 230.3 (same), 230.4 (same), 230.7 (same), 230.8 (same), and 231 (same), 232 (same), 232(c) (same), 232.5 (c) (same), 510 (same), 511, 512 (¶¶ 105-107), and  513 (¶¶ 80-98, *supra*).

156.  Plaintiffs WRIGHT and POULIOT are informed and believe, and allege based thereon that Defendants PFG and RANDSTAD, and each of them, have violated and continue to violate provisions of the California Labor Code related to the payment of overtime wages, the failure to provide meal and rest periods to the affected group of employees, the failure to provide accurate itemized wage statements, and have and continued to knowingly and intentionally fail to pay all wages due in a timely fashion for all employees whose employment is or has been terminated during the statutory period. Plaintiffs, as representatives of the general public, seek to recover said penalties, damages, back wages and all relief that, in addition to their individual interests, could only be obtained by

- 36 -

1  the DLSE, the California DIR, the IWC and/or the Labor Commissioner of the

2  State of California.

3  157.  In addition to restitution, the recovery of unpaid back wages and the recovery

4  of premium pay for unpaid overtime, and violations of the applicable Wage

5  Orders relating thereto, Plaintiffs WRIGHT and POULIOT, as personal

6  representatives of the general public, will and do seek to recover any and all

7  penalties for each and every violation shown to exist or to have occurred during

8  the proposed period, in an amount according to proof.  Said funds recovered

9  will be distributed in accordance with the PAGA, with at least seventy-five

10  percent of said PAGA penalty recovery being reimbursed to the State of

11  California and the LWDA.

12  158.  Plaintiffs WRIGHT and POULIOT also seek reasonable attorneys' fees as

13  provide for in the Private Attorney General Act.

## VII. PRAYER FOR RELIEF

15  WHEREFORE Plaintiffs pray for judgment against Defendants, and each

16  of them, as follows:

17  159.  That the Court issue an Order pursuant to Code of Civil Procedure § 382

18  certifying the proposed PFG Class and Subclasses proposed herein, appointing

19  Plaintiffs WRIGHT and POULIOT as the representatives of all others similarly

20  situated and appointing Plaintiffs' attorneys as class counsel, and that Plaintiffs

21  WRIGHT and POULIOT be appointed as representatives of the general public

22  under the PAGA;

23  160.  For restitution of overtime pay by Defendants and/or disgorgement of unpaid

24  wages, the amount of which will be shown at trial;

25  161.  For liquidated damages pursuant to California Labor Code §§1194.2 and

26  1197.1, in an amount equal to the unpaid wages, and interest, according to

27  proof at trial.

28

Wright v. Randstad
SACV 8:13-cv-00815-CJC (AGR)                                    SECOND AMENDED COMPLAINT

162. For penalties as authorized by California Labor Code § 226(e);

163. For injunctive relief to ensure all Defendants' compliance with California Labor Code § 226 pursuant to California Labor Code § 226(g);

164. For restitution in the form of one hour's pay at the regular rate of pay for each day that a required thirty minute meal break was not provided, the amount of which will be shown at trial, according to proof;

165. For liquidated damages pursuant to California Labor Code §§ 1194.2 and 1197.1, in an amount equal to the unpaid wages, the amount of which will be shown at trial, according to proof;

166. Back pay at the average regular rate of compensation received by the employee during the last three years of his or her employment, or the employee's final rate of compensation, whichever is higher, for a maximum of sixty days;

167. The value of the cost of any benefits to which the employee would have been entitled had his or her employment not been lost, including the cost of any medical expenses incurred by the employee that would have been covered under an employee benefit plan;

168. Waiting time penalties pursuant to California Labor Code § 203, according to proof;

169. Pursuant to California Business and Professions Code § 17203, that all Defendants make full restitution to all employees of Defendants working in California during the Class Period of four years prior to the date which this complaint was filed up through the date of trial, and to restore all monies owing the said employees acquired by all Defendants as a result of the violations of Bus. & Prof. Code §§ 17200 *et seq.* alleged in this Complaint; the amount of which will be shown at trial, according to proof;

- 38 -

170. Pursuant to Bus. & Prof. Code § 17203, that all Defendants, their successors, agents, representatives, employees and all persons acting in concert with defendants be enjoined from committing acts of unfair competition as alleged in this complaint;

171. Pursuant to California Business and Professions Code § 17206, that the Court assess a civil penalty of two thousand five hundred dollars ($2,500) against all Defendants and each of them for each violation of California Business and Professions Code §§ 17200 *et seq.*, as proved at trial;

172. For an award of a seven-hundred-fifty-dollar ($750) penalty from Defendants PFG and RANDSTAD, for each violation of California Labor Code § 226(c), pursuant to Lab. Code § 226(f);

173. For all civil penalties which normally would only be able to be pursued by the Labor Commissioner, including all penalties as provided, per violation, under the Private Attorney General Act (PAGA) California Labor Code § 2698 *et seq.*, and back wages as provided by California Labor Code § 558, and distributed in accordance with the Act;

174. For an award of costs and reasonable attorneys' fees;

175. For an award of interest, according to proof;

176. For any other relief deemed appropriate by this Court.


Dated:  October 15, 2013
Respectfully submitted,




Brett Szmanda, Esq.
Megan S. Knize
Attorney for Plaintiffs

- 39 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

Wright v. Randstad
SACV 8:13-cv-00815-CJC (AGR)

SECOND AMENDED COMPLAINT

1
2
3

**Brett Szmanda Esq.**
**401 8th Street Suite C**
**Huntington Beach, CA 92648**
**Tel.: (818)291-3790 · Fax: (949)553-7732**
**[ e-mail:Bszmanda@gmail.com ]**

4

**February 14th, 2013**

5

6     **VIA CERTIFIED MAIL**

7

8     California Labor & Workforce Development Agency ("Agency")
800 Capitol Mall, MIC-55
Sacramento, CA 95814

9

10    Re:     <u>Notice to pursue civil penalties through civil action under the Private Attorney General Act.</u>

11          Pursuant to the California Labor Code Private Attorneys General Act of 2004, California

12    Labor Code § 2698 et. seq. ("PAGA"), Justin Wright and Jean-Laurent Pouliot ("Aggrieved

13    Employees" or "AEs"), through their legal representatives allege and hereby give notice to the
California Labor & Workforce Development Agency ("Agency") of the alleged California Labor

14    Code violations and the facts and theories that support the alleged code violations committed by
Promontory Financial Group LLC and Randstad USA, (the "Employers").

15          This action arises out of harm suffered by the AEs, and the public as a whole, caused by the

16    Employers' intentional and systematic disregard of California's Wage and Hour Laws, as codified in

17    the California Labor Code and the Industrial Welfare Commission's Wage Orders. AEs have each
suffered harm as a result of Employers' intentional failure to provide mandatory rest and meal breaks;

18    to pay all wages on time and provide accurate wage statements as proscribed by law; Employers'

19    unlawful conduct against AEs in retaliation for engaging in protected activities, failure to pay

20    discharged employees all of their wages due in accordance with the California Labor Code; and
numerous other violations of the provisions of the California Labor Code and Wage Orders pertaining
to mandatory working conditions.

21          AEs were all hired by Promontory Financial Group ("PFG") as temporary workers through

22    Randstad as "complaint review analysts" for the Independent Foreclosure Review (the "Project").
PFG was the independent consultant to three of the mortgage servicers under review: Bank of

23    America, Wells Fargo, and PNC Bank. The AEs were all hired to work on the review of Wells

24    Fargo's foreclosure files, which was authorized by the Office of the Currency Comptroller Consent
Order. The AEs continued to work on the assignment until the program was cancelled on January

25    7th, 2013, due to the program's ineffectiveness.

26          Based upon AE's information and belief, the Employer has unlawfully denied the AEs their

27    full non-discretionary bonus compensation, failed to pay the AEs their full overtime adjustments,
failed and continue to fail to pay the AEs all of their earned wages pursuant to California Labor

28

- 41 -

Code 201.3, failed to provide meal the AEs with a second 30 minute meal break for all work in excess of ten (10) hours in a day pursuant to the California Labor Code and related Industrial Welfare Commission's Wage Orders, failed to pay wages for all hours worked, failed to pay one hours pay for each day that a meal and/or period was not provided, failed to provide accurate information pursuant to California Labor Code 226(a) on each and every one of the AEs wage statements, as well as other actions taken by the employer and against AE and similarly situated employees in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq., and the California Labor Code, the Industrial Welfare Commissions Wage Orders, and other related regulations, which include, at a minimum, Cal. California Labor Code §§ 201, 202, 203, 204, 226, 510, 1102.5, 1174.5, and 1194, Cal. Wage Order No. 4-2001.

Facts supporting the non-payment of the AEs full non-discretionary bonus compensation include the Employers' failure to honor the terms of promised bonuses. There were three non-discretionary bonuses promised by the Employers. The first bonus was a $4,000.00 completion bonus, which was promised to all AEs upon their hiring. AE Pouliot was hired in the beginning of July, 2012. At the time of his hiring, he was promised a completion bonus in the amount of $4,000.00, and the only requirement was to stay on the project until its completion. An email was sent to all employees on Jan. 7th, 2013, which informed all employees that the project was being terminated, and the PFG was considering the project as being successfully completed. A group meeting was then held by PFG where the employees were all told that they would be getting paid all of the bonuses that were promised to them. However, the following week Randstad unilaterally altered the terms of the bonus by instituting a requirement that, in order to qualify for the full $4,000.00, the employees had to have been working on the project for over one year. Employees working on the project for less than one year would receive a pro-rated bonus. Thus, all employees on the project for less than one year were denied payment of their full compensation.

The second non-discretionary bonus which the Employers failed to pay was an incentive bonus which was implemented on October 1st, 2012. The incentive bonus provided all validation analysts and input analysts with $15.00 for each closed case upon which they worked. The Employers failed to pay the incentive bonus on time, failed to keep accurate records of how many cases each analyst closed and prevented the AEs from keeping personal records of their incentive bonus earned. Employers also failed to provide itemized wage statements to the AEs showing how the incentive bonus was calculated, and refused to provide the AEs with an accounting of how the incentive bonus was calculated when requested by the AEs to do so.

The third non-discretionary bonus which the Employers failed to pay on time and in accordance with its stated terms was a $200.00 "weekend bonus". All PFG employees working on the project were told that if they worked a combined sixteen (16) hours over the weekends of December 15th, 22nd, and 29th, then they would be getting paid an additional $200.00. However, the Employers once again unilaterally altered the terms of the bonus after the AEs had already fully performed. The Employers changed the three weekends that counted towards the weekend bonus, and now contend that the bonus counted towards the last two weekends in December and the first weekend in January. However, the facts simply do not support the Employers' new contentions for two main reasons. First, the bonus was instituted in an effort for PFG to meet "year-end goals",

- 42 -

thus, it makes no sense for the Employers to incentivize the first weekend in January because the production would not count towards PFG's year-end goals. The second reason is because of the fact that PFG was not opened for business on Saturday, January 5th, and only open to a select few analysts that were invited by PFG to come in and work on Sunday, January 6th.

By not honoring the terms of the non-discretionary bonuses, the Employers' have failed to and continue to fail to pay the AEs all of the wages that they are owed, including the adjusted overtime. In addition to triggering the Waiting Time Penalties provided for in California Labor Code 203, the failure to pay the AEs all of their wages has also resulted in violations of a multitude of other California Labor Code sections, as listed below.

Facts supporting the Employers' failure to provide accurate information on the AEs' wage statements include the Employers' policy of paying all employees four dollars ($4.00) for their initial interview with PFG, but waiting five weeks until paying the employees. AEs are informed and believe, and allege based thereon, that Employers intentionally withheld payment of the $4.00 interview wages for five weeks because the Employers knew that five weeks is the time that the AEs become eligible to work overtime. By waiting until the AEs are approved for overtime, the Employers believe that they are able to combine the $4.00 with the regular overtime rate to come up with a "weighted overtime" rate. This withholding of wages scheme results in the AEs being paid significantly less in overtime compensation, as well as resulting in each and every one of the AEs wage statements containing inaccurate information. The first four wage statements are inaccurate for not including the ½ hour of pay for the initial interview, and every other wage statement from the fifth week on are inaccurate for containing inaccurate overtime calculations.

Facts supporting the Employers' systematic failure to provide a second thirty (30) minute meal break to all employees who work in excess of ten (10) hours in a single day all pertain to the Employers' failure to have any policy in place whatsoever providing the employees with the second meal break. The AEs have no recollection of ever seeing the required posting anywhere within the PFG offices, neither PFG nor Randstad, or any of their agents, ever informed the AEs of their right to a second thirty (30) minute meal break for all work in excess of ten (10) hours in a day, PFG's internal time keeping sheets only provided space to mark one thirty (30) minute meal break, and Randstad's computerized time keeping system also only provided space for one thirty (30) minute meal break. The Employers' failure to enact any policy providing the AEs with a second thirty (30) minute meal break has the same effect as denying all employees of their right to take their second thirty (30) minute meal break.

Justin Wright and Jean-Laurent Pouliot will pursue violations under California Labor Code §2698 et. seq., on behalf of themselves and as representatives of the people of the State of California, and will seek any and all penalties otherwise capable of being collected by the Labor Commission and/or the Department of Labor Standards Enforcement (DLSE). This includes the penalty provisions provided in California Labor Code § 2699(a) and § 2699(f), as well as any of the applicable statutes as is set forth in California Labor Code Section 2699.5. and includes the penalty provisions, without limitation, based on the following sections: 201, 201.3, 201.5, 201.7, 202, 203,

- 43 -

1  203.1, 203.5, 204, 204a, 204b, 204.1, 204.2, 205, 205.5, 206, 206.5, 208, 209, and 212, subdivision

(d) of Section 213, Sections 221, 222, 222.5, 223, and 224, subdivision (a) of Section 226, Sections

2  226.3, 226.7, 227, 227.3, 230, 230.1, 230.2, 230.3, 230.4, 230.7, 230.8, and 231, subdivision (c) of

3  Section 232, subdivision (c) of Section 232.5, and California Labor Code sections 233, 510, 511,

512,  513 & 1102.5., should the Agency not notify the AEs through its legal representative

4  according to California Labor Code §2698.3.

5

6                                    Kind regards,

7

8                                    _____

Brett Szmanda Esq.

9                                    CA State Bar #288688

Attorney for AEs

10                                   818-291-3790

Bszmanda@gmail.com

11

February 14th, 2013

12

13

14

15

16

17  cc

18  Promontory Financial Group

Randstad USA

19

20

21

22

23

24

25

26

27

28

Wright v. Randstad                                      SECOND AMENDED COMPLAINT
SACV 8:13-cv-00815-CJC (AGR)

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19



20
21
22
23
24
25
26
27



28

- 45 -

Wright v. Randstad
SACV 8:13-cv-00815-CJC (AGR)

SECOND AMENDED COMPLAINT

1    **PROOF OF SERVICE**

2    I am employed in the **County of Los Angeles**, **State of California**.  I am over the age of 18 and not a party to this action; my current business address is **1990 S. Bundy Dr., Ste. 280 Los Angeles, Ca 90025**

3

4    On **October 15, 2013**, I served the foregoing document(s) described as:

5    **SECOND AMENDED CLASS ACTION COMPLAINT FOR UNPAID WAGES, DAMAGES, RESTITUTION, INJUNCTIVE AND DECLARATORY RELIEF**

6

7    on the interested parties in this action as follows:

8    <u>X</u>     BY THE FOLLOWING MEANS:
          I placed an original enclosed in sealed envelope(s) addressed as follows:

9

10   Sheryl L Skibbe                                    J Andrew Keyes
     Seyfarth Shaw LLP                                 Williams and Connolly LLP
     2029 Century Park East Suite 3500                725 Twelfth Street NW

11   Los Angeles, CA 90067-3021                       Washington, DC 20005

12   Thomas H Petrides
     K&L Gates LLP

13   10100 Santa Monica Blvd, 7th Floor
     Los Angeles, CA 90067

14

15   <u>x</u>     BY MAIL

16         <u>x</u>     I placed the envelope(s) with postage thereon fully prepaid in the United States mail, at **Los Angeles, California**.

17         <u>x</u>     I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service; the firm

18                deposits the collected correspondence with the United States Postal Service that same day, in the ordinary course of business, with postage thereon fully prepaid,

19                at **Los Angeles, California**.  I placed the envelope(s) for collection and mailing on the above date following ordinary business practices.

20

21   <u>x</u>     Executed on **October 15, 2013**, at **Los Angeles, California**.

22   <u>x</u>     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23   <u>x</u>     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

24

25

26   _____
                 Sebastian Burnside

27

28