# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| JUSTIN WRIGHT and JEAN-LAURENT POULIOT, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>RANDSTAD US, LP, PROMONTORY FINANCIAL GROUP, LLC,<br><br>　　　　Defendants. | Case No.: SACV 13-00815-CJC(AGRx)<br><br>**ORDER GRANTING DEFENDANT RANDSTAD US, LP'S MOTION TO COMPEL ARBITRATION** |

## I. INTRODUCTION

This is a purported class action brought by Plaintiffs Justin Wright and Jean-Laurent Pouliot (together, "Plaintiffs") asserting claims for violation of the California Labor Code against Defendants Randstad US, LP ("Randstad") and Promontory Financial Group ("Promontory," and together with Randstad, "Defendants"). Randstad now moves to compel arbitration of Mr. Pouliot's claims

pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2−4, and an arbitration agreement entered into between Randstad and Mr. Pouliot. (Dkt. No. 92 ["Mot. Compel Arbitration"].) Because Mr. Pouliot's arbitration agreement covers his claims in this action, the Court GRANTS Randstad's motion. Further, because Mr. Pouliot's claims against Randstad substantially overlap with Mr. Wright's claims against Randstad, as well as the claims of both Plaintiffs against Promontory, the Court stays this action pending completion of the arbitration.

## II. BACKGROUND

Mr. Pouliot entered into an Agreement to Arbitrate (the "Agreement") with Randstad on February 1, 2013. (*See* Dkt. No. 92-3 ["Sprague Decl."] ¶ 7.) The first paragraph of the Agreement states in relevant part:

> As consideration for accepting or continuing my employment with Randstad, Randstad and I agree to use binding arbitration, instead of going to court, for any "covered claims" that arise between me and Randstad, its related companies, and/or their current or former employees. "Covered claims" are any legal claims that relate to my recruitment, hire, employment, and/or termination including, but not limited to, those concerning wages or compensation . . . .

(Sprague Decl. Ex. A ["Agreement"] at 1.)

At the time he signed the Agreement, Mr. Pouliot had already been hired as a temporary employee by Randstad and had completed work on an Independent Foreclosure Review Project for Promontory (the "PFG Project"). (*See* Dkt. No. 95 ["Fourth Am. Compl."] ¶¶ 12, 57.) Mr. Pouliot's work on the PFG Project began on June 28, 2012 and ended on January 7, 2013, when Promontory ended the project. (*Id.* ¶ 55; Dkt. No. 94-2 ["Pouliot Decl."] ¶ 2.)

//

1  Less than three weeks after the PFG Project ended, Karen Burrola called Mr. Pouliot to discuss a possible new assignment with OneWest Bank, set to begin in mid-February. (Pouliot Decl. ¶¶ 9−10.) Ms. Burrola asked Mr. Pouliot to meet with her to sign onboarding paperwork in connection with this new project. (*Id.* ¶ 11.) Mr. Pouliot asked if signing such paperwork was necessary, considering that he had previously worked on the PFG Project. (*Id.*) Ms. Burrola responded that it was. (*Id.*)

Mr. Pouliot attempted to find Ms. Burrola at a Randstad office in Irvine, California to sign the onboarding paperwork. (*Id.* ¶ 12.) He was informed that she was waiting for him at another location, however, so he met with Whitney Sprague, another Randstad employee, who offered to help him with the paperwork. (*Id.* ¶¶ 12−13.) Ms. Sprague did not realize that Mr. Pouliot was a current Randstad employee; as a result, she had him fill out a complete package of paperwork, including new hire documents. (Sprague Decl. ¶ 4.) The Agreement. however, was being "rolled out" to both current and new employees at the time Mr. Pouliot signed it. (Sprague Decl. ¶ 7.) According to Randstad's personnel files, Mr. Pouliot remained an active Randstad employee during the entire time between conclusion of the PFG Project and his execution of the Agreement. (*See* Dkt. No. 100-1 ["Troupe Decl."] ¶¶ 5−7, Ex. A ["Pouliot Personnel File"].)

Mr. Pouliot signed the Agreement on February 1, 2013, the same day he met with Ms. Sprague in the Irvine office. (Sprague Decl. ¶ 7; Agreement at 2.) Mr. Pouliot had time to review the Agreement, and he did not ask any questions about the Agreement. (Sprague Decl. ¶ 7.) Mr. Pouliot is an attorney licensed to practice law in California. (*See* Mot. Compel Arbitration at 1.) Mr. Pouliot began his assignment for OneWest Bank on February 11, 2013. (*Id.* ¶ 8; Pouliot Personnel File at 1.) He then sent Randstad a copy of his Private Attorney General Act letter

on February 14, 2013 and filed this action against Randstad on April 19, 2013. (Pouliot Decl. ¶ 22.)

## III. ANALYSIS

### A. Motion to Compel Arbitration

The FAA provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration."). Prior rulings of the United States Supreme Court have established that "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *Concepcion*, 131 S. Ct. at 1748–49 (internal citations omitted).

In deciding whether to enforce an arbitration agreement, the court must determine "(1) whether a valid agreement to arbitration exists and, if it does, (2) whether the agreement encompasses the dispute." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also* 9 U.S.C. § 2. If the answer to both of these questions is in the affirmative, the court must order the

//

parties to arbitration in accordance with the terms of their agreement.  *See* 9 U.S.C. § 4.

Here, Mr. Pouliot does not dispute that he signed the Agreement and that the Agreement is valid and enforceable.  (*See* Dkt. No. 94 ["Pls.' Opp'n"] at 4 (noting that "a valid arbitration agreement exists").)  Rather, he argues that the Agreement does not encompass the dispute because Randstad's alleged Labor Code violations occurred before he signed the Agreement.  The Court disagrees, and finds that the Agreement is retroactive under its plain terms.

The Agreement requires arbitration of "any 'covered claims' that arise between [Mr. Pouliot] and Randstad." (Agreement at 1.)  Without more, the Court agrees that this language could be interpreted to apply to claims that arise after execution of the agreement, not before.[1]  Nevertheless, the Agreement continues to define the term "covered claims" to mean "any legal claims that relate to [Mr. Pouliot's] *recruitment*, *hire*, employment, and/or termination." (Agreement at 1 (emphasis added).)  Moreover, the Agreement states that Mr. Pouliot agrees to submit to binding arbitration "[a]s consideration for accepting *or continuing* [his] employment with Randstad." (*Id.* (emphasis added).)  Reading the Agreement's language that Randstad's counterparty may be a "continuing" employee together with the Agreement's definition of "covered claims," which encompasses actions arising from the continuing employee's recruitment and hire — events that necessarily occurred in the past — the Court concludes that the Agreement may apply retroactively.

---

[1] *See Morse v. Servicemaster Global Holdings, Inc.*, No. C10-00628 SI, 2012 WL 4755035, at *3−5 (N.D. Cal. Oct. 4, 2012) (holding that arbitration clause was not retroactive where it covered "any and all" claims and had no language to suggest retroactive effect).

Of course, if Randstad had formally terminated Mr. Pouliot's employment before he signed the Agreement, Mr. Pouliot would not be a "continuing" employee. But that is not the case here — the circumstances, objectively viewed, show that Mr. Pouliot was not terminated as a Randstad employee prior to his execution of the Agreement. According to Randstad's personnel records, Mr. Pouliot remained an active Randstad employee during the entire period between completion of the PFG Project and the execution of the Agreement on February 1, 2013. (*See* Troupe Decl. ¶¶ 5−7; Pouliot Personnel File.) Randstad's personnel files detail when an employee is hired, when an employee is sent out on an assignment, when assignments end, and when the employee's employment with Randstad is terminated. (Troupe Decl. ¶ 5.) According to Bruce Troupe, a Randstad employee who is familiar with Randstad's personnel file recordkeeping systems, when an employee is terminated, Randstad's personnel files contain a specific entry showing the date of termination as well as "termination" in the section of the file entitled "Employment Activity." (*Id.*) In addition, Randstad's personnel files show that Mr. Pouliot was submitted for consideration for another assignment with Promontory on January 25, 2013, one week before he signed the Agreement. (*Id.* ¶ 7.) According to Mr. Troupe, Randstad employees can only be submitted as candidates for additional assignments if they are active Randstad employees. (*Id.*)

Mr. Pouliot contends that he is not bound by the Agreement because he "believed he was reapplying to work for his former employer." (Pl.'s Opp'n at 10.) But the Court must interpret the Agreement according to the objective circumstances, not the parties' subjective beliefs. Mr. Pouliot has offered no evidence that he was formally terminated from employment with Randstad prior to February 1, 2013. And to the extent Mr. Pouliot believed that the end of his assignment with Promontory constituted a discharge, that belief was inconsistent

with California law, which clearly distinguishes the end of a temporary employee's assignment from the discharge of such an employee by the employee's temporary services employer. *Compare* Cal. Lab. Code § 201.3(b)(1) (describing wage payment requirements upon the end of an assignment) *with id.* § 201.3(b)(4) (describing wage payment requirements upon discharge by the temporary services employer). Although Ms. Sprague may have mistakenly given Mr. Pouliot additional "new hire" paperwork, there is no evidence that the Agreement is intended only for new hires. To the contrary, by its own terms it applies to continuing employees. (Agreement at 1.) And, moreover, Randstad was in the process of rolling out the Agreement to its new *and current* employees. (Sprague Decl. ¶ 7.)

Because the evidence shows that Mr. Pouliot was a continuing employee at the time he signed the Agreement, the Agreement's plain terms require that the Agreement apply from the date that Mr. Pouliot was recruited and hired to work for Randstad, not from the date the Agreement was executed. Accordingly, Mr. Pouliot's claims against Randstad are subject to arbitration.

### B.  Motion to Stay Pending Arbitration

The FAA authorizes federal courts to stay proceedings pending arbitration. 9 U.S.C. § 3. Where some litigants are not parties to the arbitration agreement, the court may nonetheless stay the entire action if "questions of fact common to all would be involved in both the litigation and the arbitration." *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002); *see also Lake Commc'ns, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984) (noting that a district court may appropriately stay nonarbitrable counterclaims in light of their "interdependence with claims properly referred to arbitration"). Here, although Mr. Pouliot asserts

some claims that are not brought by Mr. Wright, all of Mr. Wright's claims are asserted by Mr. Pouliot and will thus overlap with the claims in arbitration.

There is also substantial factual overlap between Mr. Pouliot's arbitrable claims against Randstad and Plaintiffs' claims against Promontory. Plaintiffs claim that Randstad and Promontory were joint employers; the claims against them are thus not only overlapping but interdependent. Moreover, permitting Mr. Pouliot to simultaneously litigate his claims against Promontory in this Court and his claims against Randstad in arbitration would likely result in unnecessary duplication of efforts and possible inconsistent results. The Court finds that a stay of the entire action is warranted.

## IV. CONCLUSION

For the foregoing reasons, Randstad's motion to compel arbitration is GRANTED. This action shall be stayed pending completion of the arbitration.

DATED: February 24, 2014

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE